COPY                                    FILED

1   **POOLE & SHAFFERY, LLP**
2   David S. Poole (SBN 94690)
      dpoole@pooleshaffery.com
3   Brian E. Koegle (SBN 218800)
      bkoegle@pooleshaffery.com
4   Samuel R.W. Price (SBN 255611)
      sprice@pooleshaffery.com
5   400 South Hope Street, Suite 1100
    Los Angeles, CA 90071
6   Telephone: (213) 439-5390
7   Facsimile:  (213) 439-0183

8   Attorneys for Plaintiff
    GILSULATE INTERNATIONAL, INC.
9

2013 FEB 12   AM 11: 22

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

BY FAX

10              **UNITED STATES DISTRICT COURT**
11             **CENTRAL DISTRICT OF CALIFORNIA**
12                    **WESTERN DIVISION**

13  GILSULATE INTERNATIONAL,        Case No: **CV13-01012** -RSWL
    INC., a California corporation,                         (JPRx)
14
15                   Plaintiff,        **COMPLAINT FOR:**
                                        (1) **VIOLATIONS OF THE**
16      vs.                                **LANHAM ACT;**
                                        (2) **TRADE LIBEL;**
17                                      (3) **INTENTIONAL**
18  DRITHERM INTERNATIONAL, INC.,          **INTERFERENCE WITH A**
    a New Jersey corporation; JARED        **PROSPECTIVE ECONOMIC**
19  SANDMAN, an individual; and DOES       **ADVANTAGE;**
    1 through 10, inclusive,            (4) **VIOLATIONS OF CAL. BUS. &**
20                                          **PROF. CODE §§ 17200 ET**
21                   Defendants.            **SEQ.; AND**
                                        (5) **VIOLATIONS OF CAL. BUS. &**
22                                          **PROF. CODE §§ 17500 ET SEQ.**

23                                      [*Federal Question Jurisdiction*
24                                      *pursuant to 28 U.S.C. §§ 1331, 1338,*
                                        *and 1367(a), and 15 U.S.C. § 1121*]
25      COMES NOW Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate"
26  or "Plaintiff") and, for its Complaint against Defendants DRITHERM
27  INTERNATIONAL, INC., a New Jersey corporation ("DTI"), JARED SANDMAN,
28  an individual ("Sandman"), and DOES 1 through 10, inclusive ("Doe Defendants");

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

DTI, Sandman, and Doe Defendants are sometimes referred to collectively as "Defendants"), complains and alleges as follows:

## PARTIES

1.     Plaintiff is a California corporation with its principal place of business in the state of California.

2.     Upon information and belief, Defendant DTI, formerly known as "Dritherm, Inc.," is a New Jersey corporation with its principal place of business in the state of New Jersey.

3.     Upon information and belief, Defendant Sandman is a citizen of the State of New York and is an owner, shareholder, officer, director, manager, representative, and/or agent of Defendant DTI.

4.     Plaintiff is currently unaware of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names ("Doe Defendants"). Plaintiff will seek leave to amend its complaint to allege the true names and capacities of these Doe Defendants when ascertained.

5.     Plaintiff is informed and believes and upon such information and belief alleges, that at all times mentioned herein, Defendants, and each of them, were and are the agent, servants, employees, parents, subsidiaries, and/or co-conspirators of each other, and were and are acting within the scope of such agency or employment, parent ownership, or subsidiary ownership.

6.     Plaintiff is further informed and believes and upon such information and belief alleges, that at all times mentioned herein, Sandman and the Doe Defendants are liable for the acts of DTI alleged in this complaint as the alter egos of DTI.  Recognition of the privilege of separate existence would promote injustice because Sandman and the Doe Defendants, have acted in bad faith to dominate and control DTI.  Sandman and the Doe Defendants, as the alter egos of DTI, are, and have been, conducting, managing, and controlling the affairs of the corporation, as

POOLE ■ SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

though it were such defendants' own business, and have used DTI for the purpose of avoiding personal liability for the wrongful acts complained of herein.

## JURISDICTION AND VENUE

7.      Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121, because Plaintiff's claims for relief arise under the laws of the United States, namely 15 U.S.C. §§ 1051, *et seq.* (the "Lanham Act"). Additionally, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the other claims for relief asserted herein because such claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.

8.      Furthermore, jurisdiction of this Court is proper under 28 U.S.C. § 1332(a), because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over DTI pursuant to California's long-arm statute, California Code of Civil Procedure Section 410.10, and Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Upon information and belief, DTI has engaged in substantial, continuous, and systematic activities within California, including without limitation, the solicitation and processing of sales from California residents through its active websites, its employees, and its agents, and deliveries of goods to California residents.  Further, Plaintiff's claims arise out of and relate to the contacts that DTI and/or its agents have had with California, among other places. Additionally, DTI products are sourced from California, specifically within this Court's jurisdiction, and are distributed through interstate commerce. Therefore, DTI has purposefully availed itself of the privilege of conducting business within California and the exercise of jurisdiction over DTI is reasonable.

10.      Upon information and belief, Defendant Sandman has personally directed the activities of DTI complained of herein.  Additionally, Sandman has

POOLE■■SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1  purposefully availed himself of the privilege of conducting business within

2  California and the exercise of jurisdiction over Sandman is reasonable.

3       11.    Plaintiff is informed and believes and thereupon alleges that venue is

4  proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the

5  events giving rise to the claims occurred in this District, including without

6  limitation, the dissemination of disparaging statements and false advertising to

7  individuals in this District through DTI's active websites and otherwise.

8  **GENERAL ALLEGATIONS**

9       12.    Gilsulate and DTI are competitors in the market for insulation and

10  corrosion protection products, which are used to provide thermal insulation and

11  corrosion protection for underground piping systems, geothermal distribution,

12  storage tanks, and other metal structures.  In contrast to other methods of insulating

13  and protecting underground structures, such as affixing insulating material directly

14  to the pipe or purchasing pre-insulated materials, Gilsulate and DTI sell "pour-in-

15  place" products that consist of a material which is poured directly into the ground –

16  and around the structure or container to be protected – so that, when properly

17  installed, a prescribed amount of the material completely envelops the structure or

18  container and provides thermal insulation and corrosion protection.

19       13.    In the mid-1970's, a proprietary, engineered pour-in-place product was

20  invented and offered for sale as an insulation and corrosion protection system.  The

21  product, which was awarded a patent in 1980 (pat. no. 4,231,884), eventually

22  became known as Gilsulate®500XR.  Gilsulate is the proprietor of the patent for,

23  and manufacturer of, Gilsulate®500XR.  Although the formula for

24  Gilsulate®500XR is patented and proprietary, one of the components is coated

25  calcium carbonate.  To this Gilsulate adds other industrial minerals that are specially

26  selected, processed, and treated to manufacture and produce Gilsulate®500XR.

27  This patented formula was invented and engineered to create a controlled density fill

28

POOLE::SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1 that offers superior thermal insulation and corrosion protection, as well as excellent

2 load-bearing capabilities that are unavailable from coated calcium carbonate alone.

3      14.   Plaintiff is informed and believes that on January 1, 1991, DriTherm,

4 Inc., predecessor-in-interest to DTI, began to sell a product called "DriTherm,"

5 which was, and still is, comprised exclusively of coated calcium carbonate. DTI is

6 not a manufacturer. Instead, DTI has agreements with third-party calcium carbonate

7 producers to package a portion of their supply of coated calcium carbonate supply in

8 DriTherm bags.

9      15.   Gilsulate®500XR and DriTherm are, by far, the two most prominent

10 pour-in-place products in the underground insulation marketplace. Although the

11 products are visually similar and are applied in a similar manner, Gilsulate®500XR

12 is physically and chemically distinct from DriTherm. Unlike DriTherm, which is

13 merely a trade name created by DTI for a chemically-treated mineral that has a wide

14 range of uses across many industries, Gilsulate®500XR is a patented pour-in-place

15 product that has been specifically engineered to provide thermal insulation,

16 corrosion protection, and load support for underground installations.

17      16.   As a result of Gilsulate®500XR's unique, patented formulation and

18 proven success in the market, it has often been identified as the exclusive product,

19 "no known equal" or "sole source," for many underground projects.

20      17.   In order to compete with Gilsulate®500XR, DTI has engaged in a

21 campaign of false advertising and disparagement, disseminating false, deceptive,

22 and misleading information into the underground pipe insulation marketplace

23 through, among other things:

24     • Publishing false technical specifications for the DriTherm product;

25     • Misrepresenting DriTherm's performance characteristics and understating

26       the quantity of DriTherm material required for proper installation and

27       corresponding thermal properties;

28

POOLE■■SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

- Promoting DriTherm as the only pour-in-place insulation product to pass an "industry standard test" that was wholly fabricated by DTI, is neither an actual industry standard nor consistent with other industry testing standards, and to which no other pour-in-place insulation product has been or can be subjected;
- Fabricating fictitious approvals of DriTherm from various governmental agencies (despite receipt of numerous and repeated demands from several of those agencies to cease and desist from advertising such fictitious approvals);
- Falsifying or misrepresenting endorsements and testimonials regarding the performance of the DriTherm product (also in spite of repeated demands that DTI cease and desist from doing so);
- Publishing falsified information regarding Gilsulate®500XR's capabilities and specifications, including results from tests that have never been performed;
- Disseminating fictitious information regarding the history and patented formulation of Gilsulate®500XR; and
- Disparaging Gilsulate and Gilsulate®500XR to clients and potential clients by fabricating and disseminating false customer complaints.

18.   The foregoing misrepresentations have been disseminated by DTI in various advertising materials created and published by DTI, including documents entitled, "DRITHERM FEATURES COMPARED TO GILSULATE 500" and "IMPORTANT CONSIDERATIONS: DriTherm vs Gilsulate 500," as well as a table entitled, "Comparison of Underground Pipe Insulation Products."

19.   Plaintiff is informed and believes that the aforementioned campaign of false advertising and disparagement has been undertaken by DTI with the intent to win contracts for underground piping projects by depicting DriTherm as a superior, lower cost alternative to Gilsulate®500XR.

1

## FALSE ADVERTISING ABOUT DRITHERM

2      20.    DTI has misrepresented the nature, character, and quality of DriTherm,

3  including disseminating misrepresentations regarding the product's technical

4  specifications and performance capabilities, as well as claiming and publishing false

5  approvals and endorsements of the product.

6      ### *Publishing False Technical Specifications for DriTherm*

7      21.    DTI has repeatedly advertised technical specifications and performance

8  characteristics of DriTherm that are not supported by valid scientific or industry-

9  accepted testing, and are wholly inconsistent with the product's performance in real

10  world installations.  Additionally, despite persistent claims that the DriTherm

11  product has remained unchanged since 1967 (despite the fact that the company has

12  only been in business since 1991), DTI has repeatedly revised DriTherm's technical

13  specifications and product literature to reflect claimed increases and improvements

14  in the performance characteristics of the (purportedly unchanged) product despite

15  the lack of testing or evidence to support any such revisions.

16      a.    Material compaction: DTI misrepresents the extent that the

17  DriTherm product compacts after installation, which directly correlates to the

18  quantity of DriTherm actually required for each project, as well as the product's

19  thermal and performance characteristics.  Throughout DTI's marketing materials,

20  the company has repeatedly asserted that the compacted density of DriTherm is 60-

21  62 pounds per cubic foot (lbs/cf), while, in support of its bid for certain specific

22  projects, DTI has variously assured installed densities under the backfill varying

23  from 58 to 68 lbs/cf.  Notwithstanding these claims, DTI's own data has confirmed

24  compacted densities of DriTherm "under the anticipated field loading conditions"

25  that exceed 84 lbs/cf, meaning that proper installation of DriTherm can require in

26  excess of 40 percent more product than advertised by DTI.

27      b.    Load bearing capabilities: Although the company has historically

28  claimed that large diameter pipes should never be supported by pour-in-place

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1    products alone, and although the product has purportedly remained unchanged since

2    1967, DTI now claims that "DriTherm is specifically designed with load bearing

3    characteristics to support underground piping without the need for permanent

4    supports…." DTI has offered no evidence or testing to confirm this and Plaintiff is

5    informed and believes that this claim is false.

6            c.      Thermal insulation:  DTI has also advertised claims purporting to

7    demonstrate that DriTherm has superior thermal insulating properties to

8    Gilsulate®500XR, despite valid, published testing data that proves otherwise.

9    Furthermore, Plaintiff is informed and believes that DTI misrepresents the

10   DriTherm performance characteristics by misleadingly publishing DriTherm's

11   uncompacted properties rather than the product's performance when installed and

12   compacted.

13                    ***Advancing a Fabricated "10-Foot Head of Water Test"***

14           22.     On information and belief, DTI commissioned a test of DriTherm,

15   referred to by DTI as the "10-Foot Head of Water Test."  Despite DTI's frequent

16   claims that this "test" was devised and performed by the Army Corps of Engineers,

17   it was not developed by, and is not recognized by, the Army Corps of Engineers or

18   any testing standards body, and no products other than DriTherm were ever

19   subjected to it.  Nevertheless, DTI has widely proclaimed throughout the

20   marketplace that DriTherm is the superior pour-in-place insulation product because

21   it was the only product to pass this "test."  Plaintiff is informed and believes that,

22   with the knowledge that no other product had been or could be subjected to the 10-

23   Foot Head of Water Test, DTI has prepared "Sample Specifications" to assist

24   engineers in preparing requirements for bid proposals which mandate that passage

25   of the "Army Corps of Engineers 10-Foot Head of Water Test" is a prerequisite for

26   any pour-in-place insulation product.  Thus, although this test was fabricated at the

27   direction of DTI, is of questionable scientific value, and is not an actual industry

28   standard, DTI had effectively created a mythical prerequisite that it alone could

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439.5390   FACSIMILE: (213) 439-0183

1   meet.  Nevertheless, as a direct result of DTI's claim of passing this non-existent

2   test, DTI has successfully won contracts away from Plaintiff.

3       23.     In contrast, a standard that is fully accepted in the industry is that set

4   forth in the Unified Facilities Guide Specifications (UFGS), which is the result of a

5   joint effort of the engineering arms of certain U.S. military branches and NASA to

6   establish uniform construction requirements.  DTI widely advertises that DriTherm

7   meets the applicable UFGS standard for Pre-Engineered Underground Heat

8   Distribution Systems (33.61.13).  Plaintiff is informed and believes that DriTherm

9   *does not* meet the UFGS requirements.  Gilsulate®500XR, however, does meet the

10  UFGS requirements.

### ***Fabricating Fictitious Claims of Governmental Approval***

12      24.     On DTI's websites, in its various printed marketing materials, and in

13  communications with customers and potential customers, DTI has repeatedly made

14  the false representations that DriTherm is:

15  • "the only product of [its] type that is approved by the Corps of

16      Engineers for new construction on Department of Defense

17      facilities…";

18  • "APPROVED BY DEPARTMENT OF DEFENSE FOR NEW

19      CONSTRUCTION – DriTherm is the only loose-fill product which

20      has achieved this prestigious recognition from the Department of

21      Defense and Federal Government…";

22  • "product is approved by U.S. Army Corps of Engineers"

23  • "the only loose fill insulation brand approved by the Federal

24      Government for underground pipelines on Military Installations and

25      VA Hospital Centers…"; and

26  • "the only field installed insulation that has military approval…."

27      25.     DriTherm has not been granted any such blanket approval, and the

28  Army Corps of Engineers has demanded that DTI cease and desist from

POOLE·SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

disseminating any statements that reflect or imply either endorsement or approval of DriTherm by the Corps.  Plaintiff is informed and believes that DTI continues to disseminate the same improper claims of approval and endorsement in its marketing materials today.

### *Falsifying Product Endorsements*

26.    Additionally, DTI has also included among its "references" a testimonial from the National Aeronautic and Space Administration (NASA), which was a portion of a letter sent not to DTI, but to another company unrelated to DTI.  In order to claim the NASA testimonial as its own, DTI completely omitted all references to the actual insulation product that was used or to the material that was installed to protect the insulation.  Ultimately, DTI's published "testimonial" falsely implied that NASA was attesting to the insulation qualities of DriTherm.

27.    That the NASA "testimonial" was false, misleading, and unauthorized was clearly explained to DTI in no fewer than three (3) separate letters from NASA's legal counsel to DTI between April and December 2011 in which NASA advised DTI that it was in violation of the National Aeronautics and Space Act (51 U.S.C. § 20141), which prohibits the use of NASA's name in connection with any product in a manner that falsely suggests such product has the authorization, support, or endorsement of NASA, or is used by NASA.  The letters from NASA's counsel demanded that DTI cease and desist from disseminating all false and misleading statements regarding an association between DTI or DriTherm and NASA, and halt the use of the NASA name in each and every form of communication made to the public.  Plaintiff is informed and believed that DTI is continuing to use this false and misleading testimonial to market DriTherm.

### **FALSE ADVERTISING ABOUT GILSULATE®500XR**

28.    Concurrent with its dissemination of false claims regarding DriTherm, DTI has also disparaged the quality and capabilities of Gilsulate®500XR in the marketplace.

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1 *Publishing Falsified Information and Specifications for Gilsulate®500XR*

2     29.    DTI has disseminated the false claims that "Gilsulate is not waterproof

3 and relies on the heat of the piping system to remain dry...."  Furthermore, DTI has

4 also falsely claimed that, when subjected to testing such as the mythical "Corps of

5 Engineers 10-Foot Head of Water Test," Gilsulate®500XR "has been reported to

6 gain up to 4.54% moisture...."

7 *Disseminating False Information Regarding the Gilsulate®500XR Formula*

8     30.    Throughout its advertising and marketing materials, DTI has

9 disseminated false claims about the composition and quality of Gilsulate®500XR,

10 including the false representation that

11     "[t]he Gilsulate product has been marketed for approximately 15 years

12     and has changed formula in that time frame.  Customers do not have any

13     way on [sic] knowing the track record of the Gilsulate *'blend'* they

14     receive, or whether it was invented the day before" (emphasis in original).

15 Gilsulate®500XR is a patented formula that has remained unchanged since 1976.

16     31.    DTI has misrepresented product safety aspects of Gilsulate®500XR by

17 falsely implying that the DTI product is safer and that "Gilsulate MSDS [Material

18 Safety Data Sheet] sheets are difficult to come by...."  The Gilsulate MSDS has, at

19 all times relevant, been readily available including but not limited to on the Gilsulate

20 website.

21 *Fabricating False Customer Complaints*

22     32.    DTI has fabricated and disseminated false customer complaints about

23 Gilsulate®500XR.  Upon information and belief, this occurred in connection with

24 bidding for a large project at Texas A&M University, where representatives were

25 advised by DTI that another university, Georgia Tech, was disappointed with

26 Gilsulate®500XR and would be utilizing DriTherm for future projects.  There had

27 been no such complaint.

28

POOLE■SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5300   FACSIMILE: (213) 439-0183

**DAMAGES**

33.    As a direct and proximate result of Defendants' actions and misrepresentations as described herein, Plaintiff has suffered damage in the form of direct financial loss through lost contracts and economic opportunities and forced reductions to its bid proposals, as well as indirect damage to Plaintiff's reputation and the reputation of pour-in-place products as a viable alternative option for underground insulation.

34.    Plaintiff is informed and believes that, as a direct and proximate result of Defendants' misrepresentations regarding the performance of both DriTherm and Gilsulate®500XR, Plaintiff has lost at least one contract to DTI where Gilsulate®500XR had been specifically identified as the "sole source" for underground pipe insulation by the engineer of record.  Plaintiff is further informed and believes that Plaintiff has lost other contracts through DTI's interference, and has obligated to reduce the price of Gilsualte®500XR in its bid proposals to compete with DTI's misrepresentations regarding the required quantity and thermal properties of DriTherm.

35.    Plaintiff is informed and believes that DTI's campaign of false advertising and disparagement has conflated and confused the DriTherm and Gilsulate®500XR products in the underground pipe insulation marketplace.  Consequently, to the extent that DriTherm has or will fail to perform to the specifications advertised by DTI, Plaintiff is informed and believes that such failures have and will falsely reflect on the reputation of all pour-in-place products, especially Gilsulate®500XR.  Plaintiff is further informed and believes that such DriTherm failures have already resulted in significant injury to Gilsulate®500XR's reputation as an effective underground insulation and corrosion protection system and have cast doubt on Gilsulate®500XR's ability to perform as documented.

36.    Plaintiff is informed and believes that Defendants are not or may not be capable of satisfying any judgment that may be awarded to compensate Plaintiff for

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1  the harm committed by Defendant, and therefore a monetary judgment alone would

2  not afford Plaintiff adequate relief.  Additionally, unless Defendants' actions and

3  statements as described herein are enjoined by the Court, Plaintiff will sustain

4  irreparable harm to its goodwill in, and share of, the market.

5  ### FIRST CAUSE OF ACTION

6  (Violations of the Lanham Act)

7  (Against All Defendants)

8      37.    Plaintiff incorporates by reference all of the foregoing allegations as if

9  fully set forth herein.

10      38.    In violation of Section 43(a)(1)(a) of the Lanham Act (15 U.S.C. §

11  1125(a)(1)), Defendants have made false or misleading descriptions and

12  representations of alleged fact in commercial advertisements which are likely to

13  deceive as to the affiliation, connection, or association of DTI's product and third

14  parties, and/or approval of DTI's product by third parties, as described herein above,

15  each of which in and of itself is sufficient to constitute a violation.

16      39.    Additionally, in violation of Section 43(a)(1)(b) of the Lanham Act (15

17  U.S.C. § 1125(a)(1)), Defendants have made false or misleading descriptions and

18  representations of alleged fact in commercial advertisements about, among other

19  things, the nature, characteristics, and qualities of DTI's product and Plaintiff's

20  product, as described herein above, each of which in and of itself is sufficient to

21  constitute a violation.

22      40.    Defendants' statements have actually deceived or have the tendency to

23  deceive a substantial segment of potential customers and have been or would have

24  been material to customers' purchasing decisions because they go to the nature,

25  character, and quality of Plaintiff's product and the nature, character, and quality of

26  DTI's product. Defendants caused the statements described herein to enter interstate

27  commerce through Defendants' commercial advertising and promotion, such as on

28

POOLE ☰ SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1  DTI's website(s), in its printed marketing materials, and in communications with

2  customers or potential customers.

3      41.    The disparaging statements and false advertising by Defendants

4  described herein have harmed Plaintiff by causing Plaintiff to lose sales and

5  goodwill associated with Plaintiff and Plaintiff's product in an amount to be

6  determined at trial.  Further, the disparaging statements and false advertising have

7  harmed and continue to harm Plaintiff's reputation in the underground pipe

8  insulation industry.

9      42.    Defendants' conduct threatens Plaintiff with further injury for which

10  Plaintiff has no adequate remedy at law.

11     43.    On information and belief, Plaintiff believes that Defendants have

12  published and disseminated the misrepresentations described herein with the

13  specific intent to cause existing or potential users of Plaintiff's product to use DTI's

14  product instead of Plaintiff's product.  Defendants' acts are willful, wanton and

15  calculated to deceive, and are undertaken in bad faith, making this an exceptional

16  case entitling Plaintiff to recover treble damages and reasonable attorneys' fees

17  pursuant to 15 U.S.C. § 1117.

18     44.    Defendants are liable to Plaintiff, jointly and severally, for the

19  violations of 15 U.S.C. § 1125(a)(1).

20              **SECOND CAUSE OF ACTION**

21                   (Trade Libel)

22              (Against All Defendants)

23     45.    Plaintiff incorporates by reference all of the foregoing allegations as if

24  fully set forth herein.

25     46.    Defendants' have intentionally disparaged the quality of Plaintiff's

26  product through the creation, publication, and dissemination of the false information

27  described herein, including the verbal statements of disparagement, each of which in

28  and of itself has sufficiently disparaged and damaged Plaintiff to constitute trade

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1   libel.  These activities and statements by Defendants have been undertaken with the

2   specific intent to cause existing or potential users of Plaintiff's product to use DTI's

3   product instead of Plaintiff's product, or with reckless disregard as to the

4   consequences of such actions.

5       47.    DTI's activities and statements have resulted in pecuniary harm to

6   Plaintiff through lost sales and loss of goodwill in an amount to be determined at

7   trial but which Plaintiff is informed and believes and thereupon alleges is greater

8   than $75,000. Further, DTI's intentional disparagement of Plaintiff's product

9   threatens Plaintiff with further injury for which Plaintiff has no adequate remedy at

10  law.

## THIRD CAUSE OF ACTION

(Intentional Interference with Prospective Economic Advantage)

(Against All Defendants)

14      48.    Plaintiff incorporates by reference all of the foregoing allegations as if

15  fully set forth herein.

16      49.    Defendants' creation, publication, and dissemination of the above-

17  described misrepresentations regarding the DriTherm and Gilsulate®500XR

18  products and verbal statements of disparagement regarding Plaintiff and Plaintiff's

19  product have each interfered with the probability of Plaintiff's future economic

20  benefit through sales of Gilsulate®500XR to third parties with whom Plaintiff had

21  economic relationships.

22      50.    Despite Defendants' knowledge of Plaintiff's relationships with said

23  third parties, Defendants have engaged in the above-described activities and

24  statements with the specific intent to cause Plaintiff's existing or potential customers

25  to use DTI's product instead, or to reduce Plaintiff's share in the underground pipe

26  insulation marketplace.  Defendants' activities and statements fall outside the

27  boundaries of fair competition, and violate several statutes and laws, including

28  without limitation, the Lanham Act, California's Unfair Competition Law (Cal. Bus.

POOLE SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1  & Prof. Code §§ 17200, *et seq.*), and California's False Advertising Law (Cal. Bus.
2  & Prof. Code §§ 17500, *et seq.*).

3      51.    Defendants' activities and statements have caused Plaintiff to suffer
4  pecuniary harm through lost sales and loss of goodwill in an amount to be
5  determined at trial but which Plaintiff is informed and believes and thereupon
6  alleges is greater than $75,000. Further, Defendants' activities and statements
7  threaten Plaintiff with further injury for which Plaintiff has no adequate remedy at
8  law.

9      **FOURTH CAUSE OF ACTION**

10  (Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

11  (Against All Defendants)

12      52.    Plaintiff incorporates by reference all of the foregoing allegations as if
13  fully set forth herein.

14      53.    Defendants' activities and statements, including the creation,
15  publication, and dissemination of misrepresentations regarding DriTherm and
16  Gilsulate®500XR and the verbal statements disparaging Gilsulate and its product
17  constitute unfair competition, as defined by California Business and Professions
18  Code Section 17200, *et seq.* Each of the acts and practices described in the
19  foregoing paragraphs constitutes: (a) unlawful, unfair, or fraudulent business acts or
20  practices; (b) unfair, deceptive, untrue, or misleading advertising; and/or (c) an act
21  prohibited by California Business and Professions Code Section 17500, *et seq.*

22      54.    The general public is likely to be misled, deceived, and confused by
23  Defendants' activities and statements regarding DriTherm, including without
24  limitation: (a) misrepresenting DriTherm's technical specifications, properties, and
25  performance characteristics, and understating the quantity of DriTherm material
26  required for installation; (b) promoting DriTherm as the only pour-in-place
27  insulation product to pass a fabricated "industry standard test;" and (c) publishing
28  fictitious approvals and endorsements of DriTherm from various governmental

POOLE■SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1    agencies.  The general public is also likely to be misled, deceived, and confused by

2    Defendants' activities and statements regarding Gilsulate®500XR, including

3    without limitation: (a) publishing falsified information regarding

4    Gilsulate®500XR's capabilities and specifications; (b) disseminating fictitious

5    information regarding the patented formulation of Gilsulate®500XR; and (c)

6    fabricating and publishing fictitious customer complaints.

7            55.     Plaintiff is informed and believes and thereupon alleges that, as

8    demonstrated by DTI's willful disregard for numerous cease and desist demands

9    from multiple government agencies, including the Army Corps of Engineers and

10   NASA, Defendants' unfair competition and unlawful, unfair, and fraudulent

11   business practices will continue unless enjoined by the Court.  Further, Defendants

12   have been unjustly enriched through the receipt of sales from customers who would

13   have purchased Plaintiff's product but for Defendants' unfair competition.

14   Defendants should be disgorged of all profits resulting from Defendants' unfair

15   competition, and Plaintiff is entitled to recover such ill-gotten profits.

16                              **FIFTH CAUSE OF ACTION**

17               (Violations of Cal. Bus. & Prof. Code §§17500, *et seq*.)

18                            (Against All Defendants)

19           56.     Plaintiff incorporates by reference all of the foregoing allegations as if

20   fully set forth herein.

21           57.     Plaintiff brings this cause of action pursuant to Cal. Bus. & Prof. Code

22   § 17535 in an individual capacity and not on behalf of the general public.

23           58.     Cal. Bus. & Prof. Code § 17508, subd. (a) provides, in pertinent part:

24           "It shall be unlawful for any person doing business in California and

25           advertising to consumers in California to make any false or

26           misleading advertising claim, including claims that (1) purport to be

27           based on factual, objective, or clinical evidence, (2) compare the

28

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

POOLE ▪▪▪ SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

1  product's effectiveness or safety to that of other brands or products, or

2  that (3) purport to be based on any fact."

3      59.    Defendants' activities and statements as described herein including

4  without limitation: (a) misrepresenting DriTherm's technical specifications,

5  properties, performance characteristics, and understating the quantity of DriTherm

6  material required for installation and thermal properties; (b) promoting DriTherm as

7  the only pour-in-place insulation product to pass a fabricated "industry standard

8  test;" (c) publishing fictitious approvals and endorsements of DriTherm from

9  various governmental agencies; (d) publishing falsified information regarding

10 Gilsulate®500XR's capabilities and specifications; (e) disseminating fictitious

11 information regarding the patented formulation of Gilsulate®500XR; and (f)

12 fabricating and publishing fictitious customer complaints about Plaintiff and

13 Plaintiff's product constitute false advertising, as defined by California Business and

14 Professions Code Section 17500, *et seq.*

15     60.    Defendants' misrepresentations are or were available on DTI's

16 website(s) and/or in DTI's printed marketing materials, which advertise for and

17 actively solicit sales of DTI's products, and/or have been made to customers and

18 potential customers in commercial settings or pursuant to an actual or potential

19 commercial transaction.

20     61.    Defendants knew or should have known that the information contained

21 in the statements and materials created, published, and disseminated by Defendants

22 is false or misleading, as described in the foregoing paragraphs, and is likely to

23 deceive a reasonable consumer.

24     62.    Plaintiff is informed and believes and thereupon alleges that, as

25 demonstrated by DTI's willful disregard for numerous cease and desist demands

26 from multiple government agencies, including the Army Corps of Engineers and

27 NASA, Defendants' false advertising will continue unless enjoined by the Court.

28 Further, Defendants' have been unjustly enriched through the receipt of sales from

1 | customers who would have purchased Plaintiff's product but for Defendants' false
2 | advertising. Defendants should be disgorged of all profits resulting from
3 | Defendants' false advertising, and Plaintiff is entitled to recover such ill-gotten
4 | profits.

6 | ### PRAYER

7 | WHEREFORE, on the basis of the foregoing Complaint, Plaintiff respectfully
8 | requests a judgment against Defendants, and each of them, as follows:

9 | On Its First Cause of Action for Violation of the Lanham Act:

10 | 1.    A temporary restraining order, preliminary injunction, and permanent
11 | injunction prohibiting DTI, Sandman, and the Doe Defendants, and their respective
12 | or collective representatives and agents, from publishing or disseminating, and
13 | directing the retraction of, all false and misleading information regarding DriTherm
14 | and Gilsulate®500XR, and prohibiting any other conduct or statements found to
15 | violate the Lanham Act;

16 | 2.    Compensatory damages in an amount to be determined at trial;

17 | 3.    Treble damages pursuant to 15 U.S.C. § 1117; and

18 | 4.    An award of Plaintiffs reasonable attorneys' fees based upon a finding
19 | that this is an "exceptional" case pursuant to 15 U.S.C. § 1117(a).

20 | On Its Second Cause of Action for Trade Libel:

21 | 5.    A temporary restraining order, preliminary injunction, and permanent
22 | injunction prohibiting DTI, Sandman, and the Doe Defendants, and their respective
23 | or collective representatives and agents, from publishing or disseminating, and
24 | directing the retraction of, all false and misleading information regarding DriTherm
25 | and Gilsulate®500XR, and prohibiting any other conduct or statements found to
26 | constitute trade libel; and

27 | 6.    Compensatory damages in an amount to be determined at trial.

28

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

<u>On Its Third Cause of Action for Intentional Interference with Prospective Economic Advantage</u>:

7.     A temporary restraining order, preliminary injunction, and permanent injunction prohibiting DTI, Sandman, and the Doe Defendants, and their respective or collective representatives and agents, from publishing or disseminating, and directing the retraction of, all false and misleading information regarding DriTherm and Gilsulate®500XR, and prohibiting any other conduct or statements found to constitute interference with prospective economic advantage; and

8.     Compensatory damages in an amount to be determined at trial.

<u>On Its Fourth Cause of Action for Unfair Competition</u>:

9.     A temporary restraining order, preliminary injunction, and permanent injunction prohibiting DTI, Sandman, and the Doe Defendants, and their respective or collective representatives and agents, from publishing or disseminating, and directing the retraction of, all false and misleading information regarding DriTherm and Gilsulate®500XR, and prohibiting any other conduct or statements found to constitute unfair competition; and

10.     Restitutionary relief for Plaintiff to restore any money which may have been acquired by means of Defendants' unfair competition.

<u>On Its Fifth Cause of Action for False Advertising</u>:

11.     A temporary restraining order, preliminary injunction, and permanent injunction prohibiting DTI, Sandman, and the Doe Defendants, and their respective or collective representatives and agents, from publishing or disseminating, and directing the retraction of, all false and misleading information regarding DriTherm and Gilsulate®500XR, and prohibiting any other conduct or statements found to constitute false advertising; and

12.     Restitutionary relief in the form of disgorgement of profits obtained by Defendants as a result of Defendants' false advertising.

1  <u>On All Causes of Action</u>:

2      13.   Declaring, adjudicating, and decreeing that Defendants are liable to

3  Plaintiff for each cause of action brought against them, jointly and severally;

4      14.   For Plaintiff's costs and reasonable attorneys' fees; and

5      15.   For such other and further relief as the Court may deem just and proper.

6

7  DATED: February 11, 2013          **POOLE & SHAFFERY, LLP**

8

9

10                                 By: /s/ Brian E. Koegle
                                        David S. Poole
11                                      Brian E. Koegle
                                        Samuel R.W. Price
12                                 Attorneys for Plaintiff
13                                 GILSULATE INTERNATIONAL, INC.

14

15              **DEMAND FOR JURY TRIAL**

16      Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule

17  38-1, Plaintiff GILSULATE INTERNATIONAL, INC. hereby demands trial by jury

18  in this action for all claims and issue so triable.

19

20  DATED: February 11, 2013          **POOLE & SHAFFERY, LLP**

21

22                                 By: /s/ Brian E. Koegle
23                                      David S. Poole
                                        Brian E. Koegle
24                                      Samuel R.W. Price
25                                 Attorneys for Plaintiff
                                   GILSULATE INTERNATIONAL, INC.
26

27

28

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

21
**COMPLAINT**