POOLE & SHAFFERY, LLP
David S. Poole (SBN 94690)
 dpoole@pooleshaffery.com
Samuel R.W. Price (SBN 255611)
 sprice@pooleshaffery.com
400 South Hope Street, Suite 1100
Los Angeles, CA 90071
Telephone: (213) 439-5390
Facsimile:  (213) 439-0183

Attorneys for Plaintiff
GILSULATE INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:13-cv-01012-RSWL-JPR<br><br>Judge:   Hon. Ronald S.W. Lew<br><br>**PLAINTIFF GILSULATE INTERNATIONAL, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pretrial Conference:   June 3, 2014<br>Trial Date:              June 17, 2014 |

Pursuant to Local Rule 16-4.1, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff"), a California corporation, respectfully submits this Memorandum of Contentions of Fact and Law.

**I.     Introduction**

Gilsulate and Defendant DRITHERM INTERNATIONAL, INC. ("DTI") are competitors in the market for insulation and corrosion protection products, which are used to provide thermal insulation and corrosion protection for underground

1
**PLAINTIFF GILSULATE INTERNATIONAL, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

piping systems, geothermal distribution, storage tanks, and other metal structures. In contrast to other methods of insulating and protecting underground structures, such as affixing insulating material directly to the pipe or purchasing pre-insulated materials, Gilsulate and DTI sell "pour-in-place" products that consist of a material which is poured directly into the ground – and around the structure or container to be protected – so that, when properly installed, a prescribed amount of the material completely envelops the structure or container and provides thermal insulation and corrosion protection. The market for underground pour-in-place insulation consists largely of governmental or public entities, including municipalities, medical centers, and prisons, as well as military installations, public and private colleges and universities, and some larger private companies.

Gilsulate's product is marketed and sold under the trade name Gilsulate®500XR. The formula for Gilsulate®500XR is a proprietary blend of coated calcium carbonate and other industrial minerals that are specially selected, processed, and treated. This previously patented formula was invented and engineered to create a controlled density fill that offers thermal insulation and corrosion protection, as well as load-bearing capabilities that are unavailable from coated calcium carbonate alone.

DTI's product, "DriTherm," is comprised exclusively of coated calcium carbonate. DTI does not manufacture DriTherm but has agreements with third-party calcium carbonate producers to package coated calcium carbonate in DriTherm labelled bags.

Gilsulate®500XR and DriTherm comprise nearly the entire pour-in-place underground insulation market. Although the products are visually similar and are applied in a similar manner, Gilsulate®500XR is physically and chemically distinct from DriTherm.

///

///

## II. Summary Statement of Plaintiff's Claims

Gilsulate contends that DTI and its Owner and President, Jared Sandman (collectively, "Defendants"), in order to compete with Gilsulate®500XR and to promote acceptance of DriTherm as an equivalent or interchangeable alternative to Gilsulate®500XR, have engaged in false advertising regarding the DTI product and disparagement of the Gilsulate product by disseminating false, deceptive, and misleading information into the underground pipe insulation marketplace. Such false and misleading claims have appeared on DTI websites, in printed marketing materials, including data sheets and other documents purporting to state the performance properties of DriTherm, and in materials purporting to directly compare DriTherm and Gilsulate®500XR. Plaintiff has claims against Defendants under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), for Trade Libel, Intentional Interference with Prospective Economic Advantage, §17200 of the California Business and Professions Code, and §17500 of the California Business and Professions Code.

## III. Elements Required To Establish Plaintiff's Claims

### A. Lanham Act- Section 43(a)(1)(a)

Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) forbids any person from using false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, or qualities of such person's or another person's goods or cause confusion or mistake as to sponsorship or approval of such person's goods.

A false advertising claim under the Lanham Act requires: (1) a false statement of fact about the plaintiff's or defendant's product in connection with its advertising; (2) deception of or a tendency to deceive a substantial segment of the advertisement's audience; (3) deception that is material, *i.e.,* likely to influence a purchasing decision; (4) defendant's introduction of its false statement into interstate commerce; and (5) injury or likely injury to the plaintiff as a result of the false

statement. See *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ("*Southland Sod*"). Here, the third and fourth elements are not at issue: the representations are material in that they pertain to the very nature of the DriTherm product (see *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002)) and they are clearly introduced into interstate commerce through distribution to national and international customers, as well as posting on DTI's website. See *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 n.3 (9th Cir. 2011) (introduction into interstate commerce "is virtually automatic for websites").

As to the second element – likelihood to deceive – no determination of such likelihood is necessary where the advertisements at issue are literally false, as the court assumes that false statements actually mislead consumers. *Southland Sod*, *supra*, 108 F.3d at 1146; *U-Haul Intl, Inc. v. Jartran, Inc.*, 793 F. 2d 1034 (9th Cir. 1986) ("*U-Haul*"); *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F. 2d 197, 209 (9th Cir. 1989) ("*Harper House*") (even in non-comparative advertising case, no need for actual evidence of consumer deception where defendant engaged in intentional deception).

Therefore, Plaintiff contends that the only pertinent inquiries are the falsity of the advertisements at issue and the injury to Plaintiff.

### B. Trade Libel

Plaintiff claims that Defendants harmed Gilsulate by making statements that disparaged Plaintiff and the Gilsulate®500XR product. To establish this claim, Plaintiff must prove all of the following:

1. That Defendants made a statement that disparaged Plaintiff and the quality of the Gilsulate®500XR product;
2. That the statement was made to a person other than Plaintiff;
3. That the statement was untrue;

4. That Defendants knew that the statement was untrue or acted with reckless disregard of the truth or falsity of the statement;

5. That Defendants knew or should have recognized that someone else might act in reliance on the statement, causing Plaintiff financial loss;

6. That Plaintiff suffered direct financial harm because someone else acted in reliance on the statement; and

7. That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

*See* Judicial Council of California Civil Jury Instructions (CACI) 1731 Trade Libel—Essential Factual Elements.

## C. Intentional Interference with Prospective Economic Advantage

Plaintiff claims that Defendants intentionally interfered with an economic relationship between it and certain third parties that probably would have resulted in an economic benefit to Plaintiff. To establish this claim, Gilsulate must prove all of the following:

1. That Plaintiff and certain third parties were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff;

2. That Defendants knew of the relationship;

3. That Defendants engaged in conduct determined by the court to be wrongful;

4. That by engaging in this conduct, Defendants intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur;

5. That the relationship was disrupted;

6. That Plaintiff was harmed; and

7. That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

*See* Judicial Council of California Civil Jury Instructions (CACI) 2202 Intentional Interference with Prospective Economic Advantage—Essential Factual Elements.

**D. Sections 17200 and 17500 of the California Business and Professions Code**

Plaintiff claims that Defendants engaged in unfair business practices pursuant to §17200 and §17500 of the California Business and Professions Code. Pursuant to §17200, unfair competition means and includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with §17500) of Part 3 of Division 7 of the Business and Professions Code. Pursuant to §17500:

> "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly … to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .."

**IV.   Description Of Key Evidence To Support Plaintiff's Claims**

**A. Lanham Act - Section 43(a)(1)(a)**

**i.   False Advertising About DriTherm**

Gilsulate contends that Defendants have misrepresented the nature, character, and quality of DriTherm, including information regarding the product's technical specifications and performance capabilities, the quantity of material required for proper installation of the product (resulting in unfair competition in the marketplace

and short-selling the end user), as well as advertising false approvals and endorsements of the product.

1. <u>Publishing False Technical Specifications for DriTherm</u>

Plaintiff will offer multiple documents (including technical data sheets, bid packages, marketing materials, correspondence, and DTI related websites) in which Defendants published technical information regarding DriTherm that Plaintiff's expert will testify is false or misleading as follows:

a. *Installed density*

DTI has misrepresented the extent that the DriTherm product compacts after installation, which negatively impacts the product's thermal and other performance characteristics, and directly correlates to the quantity of DriTherm actually required for each project (thereby creating an unfair advantage in bid proposals by improperly stating the quantity of material required). Defendants' have repeatedly asserted that the installed and compacted density of DriTherm is 60-62 pounds per cubic foot (lbs/cf). Plaintiff's expert is expected to testify that the actual in use density is in excess of 80 lbs/cf. Consequently, the amount of material after it has been installed is dramatically less – at least 1/3 less – than the amount actually required to form an insulation envelope of the dimensions called for by DriTherm's specifications and technical data sheets.

b. *Thermal insulation*

By publishing DriTherm's performance values at an erroneous installed density, rather than its installed and compacted density, Defendants have also misrepresented the true insulating properties of DriTherm. Compounding the problem of an insulation envelope that is substantially smaller than necessary (and, therefore, one that provides less insulation than advertised by Defendants), is the fact that as the density of the material increases, so too does its thermal conductivity. Thus, as Plaintiff's expert is expected to opine, DriTherm's thermal conductivity is estimated to be more than 110% higher than advertised by Defendants. The increase

in thermal conductivity directly equates to heat loss (or gain in the case of cold temperature systems), which in turn equates to increased inefficiency, and increased energy loss for the end user. Ultimately, the financial impact of Defendants' false thermal conductivity claims is likely to far outweigh the costs of the underground insulation material.

### 2. Publishing False Claims of Governmental Compliance

Defendants advertise that DriTherm meets the applicable standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) set forth in the Unified Facilities Guide Specifications (UFGS), which was created by a joint effort of the engineering arms of certain U.S. military branches and NASA to establish uniform construction requirements. However, Gilsulate's expert will testify that DriTherm does not meet the UFGS requirements. Defendants have additionally claimed that DriTherm is in compliance with various other standards and classifications that are non-existent, obsolete, or have been abandoned.

### 3. Publishing False Claims of Governmental Approval

Plaintiff contends that Defendants have repeatedly made the false or misleading representations that DriTherm is "the only product of [its] type that is approved by the Corps of Engineers for new construction on Department of Defense facilities…" and "the only loose fill insulation brand approved by the Federal Government for underground pipelines on Military Installations and VA Hospital Centers…" among others. DriTherm has not been granted any such blanket approval, as demonstrated by a cease and desist letter from the Army Corps of Engineers on January 27, 2012.

### 4. Falsifying Product Endorsements

Defendants have included among the "references" for their product a testimonial from the National Aeronautic and Space Administration (NASA), which consisted of a mere portion of a letter sent not to DTI, but to another company unrelated to DTI. In order to claim the NASA testimonial as its own, DTI omitted

all references to the actual insulation product that was used and to the material that was installed to protect the insulation. Ultimately, this published "testimonial" falsely implied that NASA was attesting to the insulation qualities of DriTherm.

That the NASA "testimonial" was false, misleading, and unauthorized was clearly explained to Defendants in no fewer than three (3) separate letters from NASA's legal counsel between April and December 2011 advising Defendants that they were in violation of the National Aeronautics and Space Act (51 U.S.C. § 20141), which prohibits the use of NASA's name in connection with any product in a manner that falsely suggests such product has the authorization, support, or endorsement of NASA, or is used by NASA. The letters from NASA's counsel demanded that DTI cease and desist from disseminating all false and misleading statements regarding an association between DTI or DriTherm and NASA, and halt the use of the NASA name in each and every form of communication made to the public.

### ii. False Advertising About Gilsulate®500XR

Defendants have also disparaged the performance capabilities of Gilsulate®500XR in the marketplace.

Defendants have disseminated the false claims that "Gilsulate is not waterproof and relies on the heat of the piping system to remain dry...." Furthermore, DTI has also published the misleading claim that, when subjected to testing (including tests for which it had never been subjected), Gilsulate®500XR "has been reported to gain up to 4.54% moisture…." In fact, testing commissioned by Defendants specifically disproves such claim and Plaintiff's expert will so testify.

Additionally, Defendants have disseminated false claims about the composition and quality of Gilsulate®500XR, including the false representation that customers have no way of knowing what product they would receive from Gilsulate "or whether it was invented the day before." In fact, the Gilsulate®500XR formula has remained unchanged since 1976. Defendants have also misrepresented product

safety aspects of Gilsulate®500XR by falsely implying that the DTI product is safer than Gilsulate®500XR and that "Gilsulate MSDS [Material Safety Data Sheet] sheets are difficult to come by…." The Gilsulate®500XR MSDS has, at all times relevant, been readily available including but not limited to on the Gilsulate website.

Furthermore, Defendants also fabricated and disseminated false customer complaints about Gilsulate®500XR including in connection with bidding for a large project at Texas A&M University, where representatives were falsely advised by DTI representatives that another university, Georgia Tech, was disappointed with Gilsulate®500XR and would be utilizing DriTherm for future projects. There had been no such complaint by Georgia Tech representatives.

### iii.  Damages Caused by Defendants' Conduct

Plaintiff's president, Laura Duncan, will testify as to the impact of the false publications described above including lost sales with specific potential customers and the adverse impact on the pour-in-place market generally. Plaintiff's economist will testify as to damages in excess of $5 million, representing Plaintiff's net lost profits and disgorgement of Defendants' unjust enrichment. The evidence of damages generally will break down as follows:

<u>Plaintiff's Lost Profits</u>

Plaintiff lost sales in connection with projects that had been specifically designed for Gilsulate®500XR, but for which DriTherm was purchased and installed. A primary emphasis of Defendants' advertising was an effort to promote DriTherm as being comparable or equal (if not superior) to Gilsulate®500XR and, therefore, interchangeable with Gilsulate®500XR. Based on Defendants' false representations, Defendants were able to win projects in competition against Gilsulate®500XR, including projects that had been designed and specified for Gilsulate®500XR. But for these false representations regarding DriTherm, said sales would have gone to Plaintiff.

On other projects, Plaintiff was prohibited from bidding because the project specifications required documentation to prove completion of DTI's fictitious "10-Foot Head of Water Test." Finally, on certain projects Plaintiff was required to reduce the price for its product to compete against DriTherm, which competition was solely the result of Defendants' false representations.

Plaintiff's net lost profits total approximately $2.54 million.

<u>Loss of Goodwill and Injury to Business Reputation</u>

Plaintiff will testify how Defendants have succeeded in convincing many in the underground pipe insulation marketplace that the DriTherm and Gilsulate®500XR products are the same. As a result, to the extent that DriTherm has or will fail to perform to the specifications advertised by Defendants, such failures falsely reflect on the reputation of all pour-in-place products, especially Gilsulate®500XR.

<u>Expenses Incurred to Prevent or Mitigate Deception</u>

Plaintiff has expended a significant amount of time, energy, and resources in attempting to prevent or mitigate the harm being caused by DriTherm.

<u>Costs of Future Corrective Advertising</u>

Plaintiff will seek an award of the costs of corrective advertising. Such damage awards are intended to make the plaintiff whole by allowing the plaintiff to recover the cost of advertising undertaken to restore the value of Plaintiff's trademark and reputation. See *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995).

### iv. **Other Remedies**

<u>Costs of Litigation</u>

11 U.S.C. 1117(a) also provides for a recovery of costs incurred in prosecuting the action in certain cases – which Plaintiff contends is appropriate here.

///

///

<u>Disgorgement of Defendants' Unjust Enrichment</u>

Section 1117(a) expressly provides for an award of "defendant's profits," "subject to the principles of equity." 15 U.S.C. § 1117(a). Under this theory, proof of actual injury is not needed to recover defendant's profits. See *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000); *Southland Sod*, 108 F.3d at 1146 (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1410-11 (9th Cir. 1992)); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968) ("*Maier Brewing*"). The Ninth Circuit has recognized three justifications for awarding a defendant's profits: (1) as a means of compensating the plaintiff for diverted sales; (2) to prevent unjust enrichment; and (3) to serve a deterrence policy. See *Maier Brewing*, *supra*, 390 F.2d at 123. To determine whether the interests of justice support an award of a defendant's profits, the court may consider evidence of willfulness and bad faith by the defendant. See *Truck Equip. Serv. Co. v. Fruehauf*, 536 F.2d 1210, 1222-23 (8th Cir. 1976) (considerations of willfulness and bad faith justify awarding all of defendant's profits to plaintiff). Such willfulness and bad faith is clear when the defendant engages in intentional misconduct by continuing to advertise claims after learning of their falsity. See *Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d. 1131, 1135 (D. Minn. 2005) (willfulness found where defendant continued to publish claims of effectiveness and superiority even though testing commissioned by defendant did not support claims).

Plaintiff contends that all three bases for awarding Defendants' profits are present. First, whereas they are direct competitors that together represent virtually the entirety of the market, it is reasonably certain that sales of DriTherm represent sales that would have otherwise gone to Plaintiff. Accordingly, a recovery of Defendants' profits is appropriate to compensate Plaintiff for diverted sales. Cf. *Harper House*, *supra*, 889 F.2d at 209 (9th Cir. 1989) ("[W]hen advertising does not directly compare defendant's and plaintiff's products, when numerous competitors participate in a market, or when the products are aimed at different market

segments, injury to a particular competitor may be a small fraction of the defendant's sales, profits, or advertising expenses.").

Second, notwithstanding the numerous false representations made about Gilsulate®500XR by Defendants, for the simple fact that DriTherm's actual performance is so grossly disparate from that advertised, Plaintiff contends that Defendants would not have made any sales if they advertised DriTherm's true performance characteristics. Indeed, as Plaintiff's expert is expected to testify, if potential buyers knew the actual performance characteristics of DriTherm, none would ever buy it. Accordingly, all profits attained by Defendants are unjust.

Third, the need for a measure of deterrence is obvious. Plaintiff contends that Defendants have demonstrated an unrepentant disregard for advertising laws and intellectual property rights in addition to the willful and deliberate actions already described. Although the financial records produced by Defendants are less than ideal, they do appear to indicate that DTI's gross income during the period from 2009 through 2013 (representing the four-year limitations period for false advertising as set forth in Cal. Bus. & Prof. Code § 17208) was approximately $6.7 million; accounting for the cost of goods, Defendants apparently realized a gross profit of approximately $2.27 million. Plaintiff contends that it is entitled to this amount.

Enhanced (Treble) Damages

"In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 11 U.S.C. 1117(a). Enhanced damages are appropriate in the event that compensatory damages are inadequate to deter future wrongful conduct. See *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999); see also *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir. 1994). Here, given the extensive harm to the industry that has been caused by Defendants' willful and deliberate conduct – in effect, Defendants'

poisoning of the well – actual damages will not adequately compensate Plaintiff for the harm it has suffered, nor will such damages adequately deter Defendants' future wrongful conduct.  Accordingly, Plaintiff contends that an enhanced damages award is appropriate.

Injunctive Relief

Plaintiff is seeking a permanent injunction prohibiting the further dissemination of false and misleading claims regarding DriTherm and Gilsulate®500XR.

**B. Trade Libel**

The evidence supporting the California common law trade libel claim involves similar proof as for the Lanham Act claim outlined above and is, therefore, incorporated here by reference.

**C. Intentional Interference with Prospective Economic Advantage**

The evidence supporting the California common law Intentional Interference with Prospective Economic Advantage claim involves similar proof as for the Lanham Act claim outlined above and is, therefore, incorporated here by reference.

**D. California Business and Professions Code §17200**

The evidence supporting the California Business and Professions Code §17200 claim involves similar proof as for the Lanham Act claim outlined above and is, therefore, incorporated here by reference.

**E. California Business and Professions Code §17500**

The evidence supporting the California Business and Professions Code §17500 claim involves similar proof as for the Lanham Act claim outlined above and is, therefore, incorporated here by reference.

**V.    Summary Statement of Defendants' Affirmative Defenses**

Defendants have asserted fourteen affirmative defenses as follows: (1) failure to state a claim; (2) improper venue; (3) inconvenient venue; (4) laches; (5) estoppel; (6) waiver; (7) statutes of limitation; (8) competition privilege or

14
**PLAINTIFF GILSULATE INTERNATIONAL, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

justification; (9) truth and absence of falsity; (10) absence of malice; (11) privilege under California Civil Code 47.1; (12) puffing; (13) rights of free speech and (14) failure to mitigate damages. It is Plaintiff's understanding that Defendants have abandoned affirmative defenses (1), (2) and (3).

### VI. Description of Key Evidence to Be Relied on in Opposition to Defendants' Affirmative Defenses

The only affirmative defenses that defendants have indicated that they will continue to assert at trial (beyond those related to damages) are those that go to the truth or falsity of the representations: (8) competition privilege or justification; (9) truth and absence of falsity; (10) absence of malice; (11) privilege under California Civil Code 47.1; (12) puffing; and (13) rights of free speech.

The evidence as to truth or falsity will primarily be that which is described above – documents of Defendants and third parties, and the testimony of experts, Plaintiff's president, Plaintiff's chief technical employee, and Defendant Jared Sandman, president of DTI.

### VII. Anticipated Evidentiary Issues

### A. Exclusion of Defense Expert Fox

Plaintiff anticipates moving to exclude defense expert Patrick J. Fox. Pursuant to Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: … (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Rule 702, since its amendment in 2000, is consistent with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the many cases applying *Daubert,* including *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167 (1999). Rule 702 provides that all types of expert testimony present questions of admissibility for the trial court, which must decide whether the evidence is reliable and helpful.

Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See *Bourjaily v. United States*, 483 U.S. 171 (1987).

Plaintiff will seek to exclude defense expert Patrick J. Fox because the manner in which he has selectively excluded and included data and his starting assumptions regarding density among other issues are not based upon reasonably supported facts or assumptions which, therefore, render his opinion inherently unreliable by any measure.

### VIII. Bifurcation of Issues

Plaintiff does not anticipate seeking bifurcation of any issues.

### IX. Jury Trial

Plaintiff timely demanded a jury and is entitled to a jury on its Lanham Act claims. California law does not provide for a jury on the state unfair competition claims (Business and Professions Code sections 17200 and 17500). The Court will address the question of injunctive relief and the scope of any such relief.

### X. Attorneys' Fees

The Lanham Act provides that a Plaintiff may recover its attorneys' fees in "exceptional cases," which has been defined as one that contemplates conduct that is malicious, fraudulent, deliberate, or willful. *Int'l Olympic Committee v. San Francisco Arts & Athletics*, 781 F.2d 733, 738 (9th Cir. 1986). Courts have held that conduct is willful or deliberate when a defendant continues to publish false claims after learning of their falsity. See *Pom Wonderful LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS 55426, 6-7 (C.D. Cal. 2008); see also *Neuros Co. v. Kturbo, Inc.*, 698 F.3d 514, 519, 521 (7th Cir. 2012) (holding that where a defendant persists in publishing false representations despite warnings from not only the aggrieved party, but also disinterested sources, and after a suit had been filed and compelling evidence presented to demonstrate that such representations were false, such

1 conduct is "not only disreputable but reprehensible" and is grounds for an award of
2 attorneys' fees). Plaintiff contends that this is an exceptional case justifying the
3 award of attorneys' fees.

5 DATED: May 13, 2014                    **POOLE & SHAFFERY, LLP**


8                               By: /s/ David S. Poole
                                  David S. Poole
9                                   Samuel R.W. Price
10                        Attorneys for Plaintiff
                       GILSULATE INTERNATIONAL, INC.

## PROOF OF SERVICE
(F.R.Civ.P. Rule 5(b); U.S.D.C., C.D. Cal., L.R. 5-3; C.C.P. §§ 1013a, 2015.5)

**Gilsulate International, Inc., v. Dritherm International, Inc.**
United States District Court Case No. 2:13-CV-01012-RSWL-JPR

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to the within action; my business address is 400 S. Hope Street, Suite 1100, Los Angeles, CA 90071.

On May 13, 2014, I served the foregoing document described as: **PLAINTIFF GILSULATE INTERNATIONAL, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on the interested parties in said action in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

By Mail [Federal]  I placed such envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California.

(BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed below

I caused said document(s) to be transmitted by email to each addressee set forth below on this date. The transmission of this document was complete and without error.

I caused such envelope to delivered via overnight delivery to the party(ies) listed on the attached mailing list.

Executed on May 13, 2014, at Los Angeles, California.

[State]  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[Federal]  I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

/s/ Samuel R.W. Price
Samuel R.W. Price, Declarant

## **SERVICE LIST**

**Gilsulate International, Inc., v. Dritherm International, Inc.**
United States District Court Case No. 2:13-CV-01012-RSWL-JPR

James C. Potepan, Esq.
James C. Hildebrand, Esq.
LeClair Ryan, LLP
725 S. Figueroa Street, Suite 350
Los Angeles, CA 90017
T:       213-488-0503
F:       213-624-3755
Email:  james.potepan@leclairryan.com
            james.hildebrand@leclairryan.com

**PLAINTIFF GILSULATE INTERNATIONAL, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**