1 | **POOLE & SHAFFERY, LLP**
David S. Poole (SBN 94690)
2 | dpoole@pooleshaffery.com
Samuel R.W. Price (SBN 255611)
3 | sprice@pooleshaffery.com
400 South Hope Street, Suite 1100
4 | Los Angeles, California 90071
Telephone: (213) 439-5390
5 | Facsimile: (213) 439-0183

6 | Attorneys for Plaintiff
GILSULATE INTERNATIONAL, INC.
7 |

8 | **LECLAIR RYAN LLP**
James C. Potepan (SBN 107370)
9 | james.potepan@leclairryan.com
James C. Hildebrand (SBN 150319)
10 | james.hildebrand@leclairryan.com
725 S. Figueroa Street, Suite 350
11 | Los Angeles, CA 90017
Telephone: (213) 488-0503
12 | Facsimile: (213) 624-3755

13 | Attorneys for Defendants
DRITHERM INTERNATIONAL, INC. and
14 | JARED SANDMAN

15 |

16 | UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

17 |

18 |

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC. a California corporation, | CASE NO. CV 13-01012 RSWL (JPRx) |
| Plaintiff, | Judge: Hon. Ronald S.W. Lew<br>Complaint Filed: February 12, 2013 |
| v. | **STIPULATION FOR ENTRY OF JUDGMENT FOR PERMANENT INJUNCTION** |
| DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |

26 |

27 | / / /

28 | / / /

13068814       - 1 -       CV 13-01012 RSWL (JPRx)

STIPULATION FOR ENTRY OF JUDGMENT FOR PERMANENT INJUNCTION

1    This stipulation is entered into by and among plaintiff Gilsulate International,

2  Inc. ("Plaintiff") and defendants Dritherm International, Inc. and Jared Sandman,

3  individually, ("Defendants"), by and through their respective counsel, with

4  reference to the following:

5    WHEREAS, this action was commenced on February 12, 2013 when

6  Plaintiff filed a complaint against Defendants for false advertising under section

7  43(a) of the Lanham Act, trade libel, intentional interference with economic

8  advantage, and for violations of California Business and Professions Code §§

9  17200 and 17500;

10    WHEREAS, Plaintiff and Defendants have entered into a separate written

11  Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

12    WHEREAS, the Settlement Agreement provides, among other things, that

13  Plaintiff and Defendants shall stipulate that the Court may enter a Judgment For

14  Stipulated Permanent Injunction against Defendants in a form similar in all material

15  respects to the Judgment For Stipulated Permanent Injunction attached hereto as

16  Exhibit A (the "Stipulated Injunction"); and

17    WHEREAS, Plaintiffs and Defendants have agreed in their Settlement

18  Agreement that their respective counsel of record in this action may execute this

19  Stipulation and submit the Stipulation to the Court requesting that the Court enter

20  the Judgment For Stipulated Permanent Injunction in this action.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

13068814                                    - 2 -                          CV 13-01012 RSWL (JPRx)

STIPULATION FOR ENTRY OF JUDGMENT FOR PERMANENT INJUNCTION

1  WHEREFORE, it is hereby stipulated, by and among Plaintiff and

2  Defendants, through their respective counsel of record, that the Court may enter a

3  judgment for permanent injunction in this action in a form similar in all material

4  respects to the Judgment For Stipulated Permanent Injunction attached hereto as

5  Exhibit A.

6

7  Dated: **5/23** , 2014          POOLE & SHAFFERY, LLP

8

9                                         By:_____

10                                              David S. Poole
                                                Samuel R.W. Price
11                                           Attorney for Plaintiff GILSULATE
                                             INTERNATIONAL, INC
12

13

14  Dated: **5/23** , 2014          LeClairRyan LLP

15

16                                         By_____

17                                              James C. Potepan
                                                James C. Hildebrand
18                                           Attorney for Defendants DRITHERM
                                             INTERNATIONAL, INC. and
19                                           JARED SANDMAN

20

21

22

23

24

25

26

27

28

13068814                              - 3 -                        CV 13-01012 RSWL (JPRx)
STIPULATION FOR ENTRY OF JUDGMENT FOR PERMANENT INJUNCTION

# EXHIBIT A

# JUDGMENT FOR STIPULATED
# PERMANENT INJUNCTION

13064180

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

GILSULATE INTERNATIONAL, INC., a California corporation,

Plaintiff,

vs.

DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:13-cv-01012-RSWL-JPR
Judge:  Hon. Ronald S.W. Lew

[PROPOSED]
JUDGMENT FOR STIPULATED
PERMANENT INJUNCTION

Plaintiff Gilsulate International, Inc. and defendants Dritherm International, Inc. and Jared Sandman consent as follows:

WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") is a California corporation with its principal place of business in the State of California;

WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a New Jersey corporation with its principal place of business in the state of New Jersey;

1  WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the

2  State of New York and is an owner, shareholder, officer, director, manager,

3  representative, and/or agent of Defendant DTI;

4  WHEREAS, Gilsulate and DTI are competitors in the market for insulation

5  and corrosion protection products, which are used to provide thermal insulation and

6  corrosion protection for underground piping systems, geothermal distribution,

7  storage tanks, and other metal structures;

8  WHEREAS, Gilsulate manufactures a product that is marketed and sold under

9  the name "Gilsulate®500XR";

10  WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

11  WHEREAS, on February 12, 2013, Plaintiff commenced this action in which

12  it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade

13  libel, intentional interference with economic advantage, and for violations of

14  California Business and Professions Code §§ 17200 and 17500 against Defendants;

15  WHEREAS, Plaintiff alleges in the action that Defendants have, among other

16  things, made representations regarding the nature, character, and quality of

17  DriTherm, including disseminating information regarding the product's technical

18  specifications and performance capabilities, which are unsupported by valid testing;

19  WHEREAS, Defendants have advertised that the installed density of

20  DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that

21  installed densities of DriTherm are greater than the value advertised;

22  WHEREAS, Defendants have advertised that the thermal conductivity of

23  DriTherm is K = 0.58 at 100°F and K = 0.68 at 300°F, but expert analysis in this

24  case has determined that thermal conductivity of DriTherm is greater than the value

25  advertised;

26  WHEREAS, Defendants have made other statements in their advertising

27  materials and elsewhere about DriTherm and Gilsulate products that are not

28  supported by the evidence in this case;

WHEREAS, Plaintiff and Defendants have entered into a separate written Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

WHEREAS, the parties' Settlement Agreement provides, among other things, that the Court may enter a permanent injunction against Defendants in a form similar in all material respects to the form of injunction attached as an exhibit to the parties' Stipulation for Entry of Judgment For Permanent Injunction filed in this action; and

WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable harm:

Now therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this Court has jurisdiction over the subject matter of this action and over the parties hereto and ORDERS as follows:

1. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about DTI and the DriTherm product:

    a. Any INSTALLED DENSITY for DriTherm unless the specifications are supported by APPROPRIATE DENSITY TESTING.

    As used herein, INSTALLED DENSITY shall mean the density of DriTherm after installation and compaction under a minimum load of 400 pounds per square foot ("psf"), whether identified as "installed," "compacted," "in-use," "in-place," "in-situ," or any similar terminology.

    As used herein, APPROPRIATE DENSITY TESTING shall mean all of the following:

i.    Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

    1.    Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

    2.    Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard 0.1 $\text{ft}^3$ mold. The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

    3.    Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

ii.    Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b.    Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c.    Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

-    Quincy, IL:              76 $\text{lb/ft}^3$

4

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

- Marble Falls, TX:        80 lb/ft$^3$
- Marblehill, GA:          80 lb/ft$^3$
- Adams, MA:               80 lb/ft$^3$
- Lucerne Valley, CA:      80 lb/ft$^3$

d. The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e. Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

i. Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

ii. Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

f. Unless APPROPRIATE THERMAL CONDUCTIVITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for THERMAL CONDUCTIVITY of DriTherm shall be as follows:

- Quincy, IL:      $0.87$ Btu-in/hr-ft$^2$°F at 100°F

                      $1.25$ Btu-in/hr-ft$^2$°F at 300°F

- Marble Falls, TX:     $0.99$ Btu-in/hr-ft$^2$°F at 100°F

                      $1.36$ Btu-in/hr-ft$^2$°F at 300°F

- Marblehill, GA:      $0.99$ Btu-in/hr-ft$^2$°F at 100°F

                      $1.36$ Btu-in/hr-ft$^2$°F at 300°F

- Adams, MA:        $0.99$ Btu-in/hr-ft$^2$°F at 100°F

                      $1.36$ Btu-in/hr-ft$^2$°F at 300°F

- Lucerne Valley, CA:   $0.99$ Btu-in/hr-ft$^2$°F at 100°F

                      $1.36$ Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal conductivity values determined by standard reference guides, based on APPROPRIATE DENSITY TESTING.

g. The complete, unabridged reports from any testing used to support representations of THERMAL CONDUCTIVITY shall be in writing, and provided to GILSULATE within thirty (30) days of making any representations of THERMAL CONDUCTIVITY. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

h. Any product performance characteristics for DriTherm that are not determined through valid, appropriate testing, using a test methodology established by a recognized testing agency or body, provided that such a standardized testing methodology exists, and performed by an independent, third party testing laboratory.

i. That DriTherm is to be load bearing, unless supported by appropriate testing performed by an independent, third party laboratory.

j. That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

k. That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

l. That DriTherm is certified to be 100% hydrophobic.

m. That DriTherm is the most hydrophobic loose-fill product on the market.

n. That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

o. That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

q. That DriTherm is the only product of its kind rated for soils in below freezing conditions.

r. That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

s. That DriTherm provides or creates a positive vapor barrier.

t. That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

8

i.   That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

j.   False or misleading statements regarding the composition of Gilsulate®500XR.

k.   That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

l.   That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

m.  That delivery times for Gilsulate®500XR are or may be an issue.

n.   That Gilsulate®500XR has a large carbon footprint.

o.   That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p.   That the installed density of Gilsulate®500XR is not 40-42 $lb/ft^3$.

3.   IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

a.   That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b.   That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4. IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5. The Court shall retain jurisdiction to enforce the terms of this Order.

IT IS SO ORDERED.

DATED: _____          _____
                                      HON. RONALD S.W. LEW
                                      Senior, U.S. District Court Judge

CONSENTS

The undersigned hereby consent to the entry of a Stipulated Injunction in the above-captioned action in a form similar in all material respects to the foregoing form.

DRITHERM INTERNATIONAL, INC.

Print Name: ___Jared Sandman___

Title: ___President___

Date: ___05/23/14___

JARED SANDMAN

Date: ___05/23/14___

11
JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

**PROOF OF SERVICE**
(F.R.Civ.P. Rule 5(b); U.S.D.C., C.D. Cal., L.R. 5-3; C.C.P. §§ 1013a, 2015.5)

**<u>Gilsulate International, Inc., v. Dritherm International, Inc.</u>**
United States District Court Case No. 2:13-CV-01012-RSWL-JPR

   I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to the within action; my business address is 400 S. Hope Street, Suite 1100, Los Angeles, CA 90071.

   On May 23, 2014, I served the foregoing document described as: **STIPULATION FOR ENTRY OF JUDGMENT FOR PERMANENT INJUNCTION; PROPOSED JUDGMENT FOR STIPULATED PERMANT INJUNCTION** on the interested parties in said action in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

☐ By Mail [Federal]  I placed such envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California.

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed below

☐ I caused said document(s) to be transmitted by email to each addressee set forth below on this date. The transmission of this document was complete and without error.

☐ I caused such envelope to delivered via overnight delivery to the party(ies) listed on the attached mailing list.

   Executed on May 23, 2014, at Los Angeles, California.

☐ [State]  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ [Federal]  I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

     __/S/ Silvia Abrignani_____
     Silvia Abrignani, Declarant

POOLE ▪ SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390  FACSIMILE: (213) 439-0183

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SERVICE LIST

**Gilsulate International, Inc., v. Dritherm International, Inc.**
United States District Court Case No. 2:13-CV-01012-RSWL-JPR

James C. Potepan, Esq.
James C. Hildebrand, Esq.
LeClair Ryan, LLP
725 S. Figueroa Street, Suite 350
Los Angeles, CA 90017
T:       213-488-0503
F:       213-624-3755
Email:  james.potepan@leclairryan.com
         james.hildebrand@leclairryan.com

POOLE▪SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390  FACSIMILE: (213) 439-0183

**PROOF OF SERVICE**