**POOLE & SHAFFERY, LLP**
David S. Poole (SBN 94690)
  dpoole@pooleshaffery.com
Samuel R.W. Price (SBN 255611)
  sprice@pooleshaffery.com
400 South Hope Street, Suite 1100
Los Angeles, CA 90071
Telephone: (213) 439-5390
Facsimile:  (213) 439-0183

Attorneys for Plaintiff
GILSULATE INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:13-cv-01012-RSWL-JPR<br><br>Judge:   Hon. Ronald S.W. Lew<br>Complaint filed:  February 12, 2013<br><br>**DECLARATION OF SAMUEL R.W. PRICE IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO CONTEMPT ORDER**<br><br>**(RELATED TO DKT. # 86)**<br><br>[FILED CONCURRENTLY WITH APPLICATION FOR AWARD OF ATTORNEYS' FEES; [PROPOSED] ORDER]<br><br>Date:        October 13, 2015<br>Time:        10:00 a.m.<br>Location:   Ctrm. 21<br>Judge:      Hon. Ronald S.W. Lew |

*(Left margin, vertical text:)* POOLE ▪ SHAFFERY — 400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071 — TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

DECLARATION OF SAMUEL R.W. PRICE IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO CONTEMPT ORDER

## DECLARATION OF SAMUEL R.W. PRICE

1.      I am attorney with the law firm of Poole & Shaffery, LLP, counsel of record for Plaintiff Gilsulate International, Inc. ("Plaintiff") is this action, and am licensed to practice before this Court.  I have personal knowledge of the facts stated herein except as to those matters where I indicate that I am relying on information and belief.  If called and sworn as a witness, I could and would testify competently as to each of the matters set forth herein.

2.      On June 20, 2014, after allowing time for Defendants' distributors to comply with the terms of the Injunction, Plaintiff's counsel submitted cease and desist notices to several of the distributors identified by Defendants.  True and correct copies of the June 20, 2014, cease and desist notices are attached hereto as **Exhibit 1**.

3.      On July 3, 2014, I subsequently submitted correspondence to Defendants' counsel in the litigation to advise of ongoing problems with distributors' and representatives' websites that contained information about DriTherm or Gilsulate in violation of the Injunction.  A true and correct copy of my July 3, 2014, correspondence to Defendants' counsel is attached hereto as **Exhibit 2**.

4.      On July 25, 2014, Defendants' distributors had still not fully complied with the terms of the Injunction.  Accordingly, pursuant to paragraph 3.b. of the Injunction, because such distributors, representatives, or sales persons were not in full compliance with the Injunction, Plaintiff requested written confirmation that Defendants were not, and would not be, selling DriTherm to or through such persons or entities.  A true and correct copy of the July 25, 2014, correspondence to Defendants' counsel (which has been redacted to remove references to information previously identified as confidential by Defendants and does not include the attachments to the original letter) is attached hereto as **Exhibit 3**.  This document was previously attached to the Compendium of Exhibits Filed Under Seal in Support of the Motion for Contempt Order as Exhibit 30.

POOLE **■** SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

5. On May 27, 2015, in response to correspondence providing a notice of violation and intention to file the Motion for Contempt Order, Defendants' counsel stated that the "[t]hird-parties who may purchase DriTherm are all independent of DTI … and DTI did not agree or consent to do anything more with respect to third-party customers than provide the notification as provided [sic] Section 3." A true and correct copy of the May 27, 2015, correspondence is attached hereto as **Exhibit 4**. It was also previously attached to the Compendium of Exhibits in Support of the Motion for Contempt Order as Exhibit 45 (Page ID ## 1185-1187).

6. Only as a result of Defendants' persistent refusal to comply with the provisions of Paragraph 3 of the Injunction, by ensuring that they were not selling DriTherm to or through distributors, representatives, or sales personnel that were in violation of the Injunction, it was necessary to file the Motion for Contempt Order.

7. The two primary attorneys representing Plaintiff in this action are David S. Poole and Samuel R.W. Price.

8. Mr. Poole's biography is attached hereto as **Exhibit 5**. Mr. Poole's hourly rate for legal services in this matter is $425 per hour, which is commensurate with rates of attorneys with similar experience (35 years) in the Los Angeles area.

9. Mr. Price's biography is attached hereto as Exhibit 6. Mr. Price's hourly rate for legal services in this matter is $325 per hour, which is commensurate with rates of attorneys with similar experience (10 years) in the Los Angeles area.

10. Plaintiff's Application for an Award of Attorneys' Fees Pursuant to Contempt Order seeks recovery for the following attorneys' fees incurred in connection with initial efforts to obtain Defendants' compliance with Paragraph 3 of the Injunction, and does not seek attorneys' fees for any other issues pertaining to compliance with the Injunction, including alleged violations of Paragraph 1:

DECLARATION OF SAMUEL R.W. PRICE IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO CONTEMPT ORDER

POOLE ■ SHAFFERY
400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

| Month | Mr. Poole | Mr. Price |
|---|---|---|
| June 2014 | 6.2 | 7.6 |
| July 2014 | 3.1 | 2.5 |
| August 2014 | 0.6 | |
| October 2014 | | 0.3 |
| December 2014 | 1.6 | 8.0 |
| **Total** | **11.5** | **18.4** |

Accordingly, the fees incurred for this were $10,867.50 (11.5 hours at $425/hr = $4887.50; 18.4 hours at $325/hour = $5,980.00).

11.     Plaintiff incurred the following fees in connection with the preparation of briefing on the Motion for Contempt Order (including the Reply Brief and Opposition to Defendants' *Ex Parte* Application) and efforts to meet and confer with Defendants' counsel prior to filing the Motion:

| Month | Mr. Poole | Mr. Price |
|---|---|---|
| April 2015 | 8.5 | 46.2 |
| May 2015 | 5.5 | 45.3 |
| June 2015 | 29.2 | 130 |
| July 2015 | 5.9 | |
| **Total** | **49.1** | **221.5** |

Accordingly, the fees incurred for this were $92,855.00 (49.1 hours at $425/hr = $20867.00; 221.5 hours at $325/hour = $71,987.50).  However, whereas Plaintiff's Motion was granted as to one issue and denied as to another, Plaintiff's instant Application seeks only 50% of the fees incurred in connection with the Motion, for a total of $46,427.50.

12.     True and correct copies of the billing entries for the hours indicated in paragraphs 10 and 11 are attached hereto as **Exhibit 7**.

POOLE■SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

**DECLARATION OF SAMUEL R.W. PRICE IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO CONTEMPT ORDER**

13.     Finally, I have expended 8.0 hours in preparation of the Application for Award of Attorneys' Fees, and anticipates another 4.0 hours in preparing a Reply Brief to the anticipated opposition from Defendants for a total of $3,900.

14.     In total, the amount requested by Plaintiff as an award of attorneys' fees to compensate for Defendants' contempt is $61,195.00.  Given the circumstances of the Motion, including among other things the extremely technical nature of the issues underlying the Motion and the need to clearly articulate those technical issues to the Court in a limited brief, repeated meet and confer efforts with Defendants' counsel, and the need to oppose Defendants' baseless *Ex Parte* Application (Doc. No. 66), the request for attorneys' fees is reasonable and should be awarded to Plaintiffs.  (*Id.*)


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of September, 2015.


 /s/ Samuel R.W. Price

Samuel R.W. Price

POOLE■SHAFFERY

400 SOUTH HOPE STREET, SUITE 1100, LOS ANGELES, CA 90071
TELEPHONE: (213) 439-5390   FACSIMILE: (213) 439-0183

DECLARATION OF SAMUEL R.W. PRICE IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO CONTEMPT ORDER

EXHIBIT "1"



June 27,2014

Dear Customer:

Proof-of-delivery letters are being provided for the following shipments:

| | |
|---|---|
| **770377319766** | CLOQUET,MN |
| **770377325978** | ALBUQUERQUE,NM |
| **770377333818** | WILSON,NC |
| **770377341518** | LONG ISLAND CITY,NY |
| **770377347777** | SALT LAKE CITY,UT |
| **770377370569** | TORONTO,ON |
| **770377390939** | JERSEY CITY,NJ |
| **770377394235** | Los Angeles,CA |

You may save or print this Batch Signature Proof of Delivery file for your records.

Thank you for choosing FedEx.

FedEx
1.800.GoFedEx 1.800.463.3339



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377319766**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | A.PANTALA | Delivery location: | CLOQUET, MN |
| Service type: | FedEx Standard Overnight | Delivery date: | Jun 23, 2014 11:19 |
| Special Handling: | Deliver Weekday | | |
| | Adult Signature  Required | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770377319766 | Ship date: | Jun 20, 2014 |
| | | Weight: | 0.5 lbs/0.2 kg |
| **Recipient:** | | **Shipper:** | |
| CLOQUET, MN US | | Valencia, CA US | |
| **Reference** | | 2012-3293 | |

Thank you for choosing FedEx.



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377325978**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | B.MAULLEN | Delivery location: | ALBUQUERQUE, NM |
| Service type: | FedEx Standard Overnight | Delivery date: | Jun 24, 2014 12:12 |
| Special Handling: | Deliver Weekday | | |
| | Adult Signature  Required | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770377325978 | Ship date: | Jun 20, 2014 |
| | | Weight: | 0.5 lbs/0.2 kg |

| | |
|---|---|
| **Recipient:** | **Shipper:** |
| ALBUQUERQUE, NM US | Valencia, CA US |

| | |
|---|---|
| **Reference** | 2012-3293 |

Thank you for choosing FedEx.



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377333818**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered to:** | Residence |
| **Signed for by:** | J.BOUNDS | **Delivery location:** | WILSON, NC |
| **Service type:** | FedEx Standard Overnight | **Delivery date:** | Jun 24, 2014 13:28 |
| **Special Handling:** | Deliver Weekday | | |
| | Residential Delivery | | |
| | Adult Signature  Required | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 770377333818 | **Ship date:** | Jun 20, 2014 |
| | | **Weight:** | 1.0 lbs/0.5 kg |
| **Recipient:** | | **Shipper:** | |
| WILSON, NC US | | Valencia, CA US | |
| **Reference** | | 2012-3293 | |

Thank you for choosing FedEx.



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377341518**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | J.JONATHAN | Delivery location: | LONG ISLAND CITY, NY |
| Service type: | FedEx Standard Overnight | Delivery date: | Jun 25, 2014 12:16 |
| Special Handling: | Deliver Weekday | | |
| | Adult Signature  Required | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770377341518 | Ship date: | Jun 20, 2014 |
| | | Weight: | 0.5 lbs/0.2 kg |

**Recipient:**
LONG ISLAND CITY, NY US

**Shipper:**
Valencia, CA US

**Reference**                    2012-3293

Thank you for choosing FedEx.



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377347777**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | K.KMINSON | Delivery location: | SALT LAKE CITY, UT |
| Service type: | FedEx Standard Overnight | Delivery date: | Jun 23, 2014 12:57 |
| Special Handling: | Deliver Weekday | | |
| | Adult Signature  Required | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770377347777 | Ship date: | Jun 20, 2014 |
| | | Weight: | 0.5 lbs/0.2 kg |

| | |
|---|---|
| **Recipient:** | **Shipper:** |
| SALT LAKE CITY, UT US | Valencia, CA US |

| | |
|---|---|
| **Reference** | 2012-3293 |

Thank you for choosing FedEx.



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377370569**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | .GABBY | Delivery location: | TORONTO, ON |
| Service type: | FedEx International Priority | Delivery date: | Jun 23, 2014 11:25 |
| Special Handling: | Deliver Weekday | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770377370569 | Ship date: | Jun 20, 2014 |
| | | Weight: | 1.0 lbs/0.5 kg |

| | |
|---|---|
| **Recipient:** | **Shipper:** |
| TORONTO, ON CA | VALENCIA, CA US |

| | |
|---|---|
| **Reference** | 2012-3293 |

Thank you for choosing FedEx.



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377390939**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered to:** | Receptionist/Front Desk |
| **Signed for by:** | .ARNOLD | **Delivery location:** | JERSEY CITY, NJ |
| **Service type:** | FedEx Standard Overnight | **Delivery date:** | Jun 23, 2014 09:53 |
| **Special Handling:** | Deliver Weekday | | |
| | Adult Signature  Required | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 770377390939 | **Ship date:** | Jun 20, 2014 |
| | | **Weight:** | 2.0 lbs/0.9 kg |
| **Recipient:** | | **Shipper:** | |
| JERSEY CITY, NJ US | | Valencia, CA US | |
| **Reference** | | 2012-3293 | |

Thank you for choosing FedEx.



June 27,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **770377394235**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | C.HENRY | Delivery location: | Los Angeles, CA |
| Service type: | FedEx Standard Overnight | Delivery date: | Jun 23, 2014 09:17 |
| Special Handling: | Deliver Weekday | | |
| | Adult Signature  Required | | |

Signature image is available. In order to view image and detailed information, the shipper or payor account number of the shipment must be provided.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770377394235 | Ship date: | Jun 20, 2014 |
| | | Weight: | 2.0 lbs/0.9 kg |

| | |
|---|---|
| **Recipient:** | **Shipper:** |
| Los Angeles, CA US | Valencia, CA US |

| **Reference** | 2012-3293 |
|---|---|

Thank you for choosing FedEx.

# POOLE ❖ SHAFFERY

A T T O R N E Y S   A T   L A W

Writer's email: dpoole@pooleshaffery.com

June 20, 2014

***VIA FEDERAL EXPRESS***

Metro Supply Company
50-02 23rd Street
Long Island City, NY 11101

Attention: Charlie Lisa

Re:  **NOTICE TO CEASE AND DESIST**
     **Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.***
     USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR

Dear Mr. Lisa,

Please be advised that this law firm represents Gilsulate International, Inc. ("Gilsulate"). You are hereby given notice by Gilsulate that it has determined that certain information that you are currently publishing on Metro Supply Company's website (and which may be contained in other literature that you are distributing) regarding DriTherm International, Inc.'s ("DriTherm") product "DriTherm" and Gilsulate's product "Gilsulate®500XR" is false and misleading and provides a basis for Gilsulate to prosecute claims for false advertising against Metro Supply Company under Section 43(a) of the Lanham Act (15 U.S.C. §§ 1051 et seq.), and for trade libel, intentional interference with economic advantage, and violations of other state statutes.

On May 29, 2014, United States District Court Judge, the Hon. Ronald S.W. Lew, ordered the entry of Judgment for Permanent Injunction (the "Injunction") against DriTherm International, Inc. ("DTI"), and its owner, Jared Sandman, because of various representations that had been made by DTI, Sandman, and others on DTI's behalf regarding DriTherm's technical specifications, and physical and performance properties, which were determined to be unsupported by valid testing. Significantly, the representations regarding the installed density of 60-62 lbs/ft$^3$ and thermal conductivity of 0.58[1] at 100°F and 0.68 at 300°F were found to not be supported by expert testing of the DriTherm product. The Injunction specifically prohibits DTI and Sandman from making numerous other representations about DriTherm and about Gilsulate®500XR. A true and accurate copy of the Injunction is attached hereto.

The Injunction was issued as the result of a lawsuit filed in 2013 by Gilsulate after DTI and Sandman had failed to comply with cease and desist letters from two federal agencies (NASA and the U.S. Army Corps of Engineers) and from Gilsulate instructing DTI to stop misrepresenting certain matters regarding the DriTherm and Gilsulate®500XR products.

The Injunction issued against DTI and Sandman requires, among other things, that they may not represent the installed density of the DriTherm product to be less than 80 lbs/ft$^3$ (or 76 lbs/ft$^3$ for the Illinois-sourced material) and may not represent the thermal conductivity to be other than 0.99 at 100°F

---

[1] Measured in Btu-in/hr-ft$^2$°F

Metro Supply Company
Notice to Cease & Desist
Re: <u>Gilsulate International, Inc. v. DriTherm International, Inc., etc., *et al.*</u>
June 20, 2014
Page 2

and 1.36 at 300°F (or 0.87 at 100°F and 1.25 at 300°F for the Illinois-sourced material) without new, valid testing from an independent laboratory.

Although you are not a party to the Injunction, you are now hereby charged with knowledge that you are currently publishing certain information that was the subject of the federal lawsuit against DTI and Sandman, that has been stipulated by DTI and Sandman to be unsupported by valid testing, and that DTI and Sandman are specifically prohibited from continuing to publish under the terms of the Injunction.

Based on the information we have reviewed, we have determined that your website[2] currently contains the following representations that are false and misleading and have been prohibited under the terms of the Injunction:

- [Dritherm compacts] "to form a strong (12,000 PSF) block of cohesively bonded particles"

- "Certified 100% hydrophobic; Less than 0.02% moisture"

You are directed to immediately cease and desist from publishing the above enumerated statements and information on your website and in any other format. Please advise us of your corrective action to remove this information and your intent to cease distributing any materials containing such information or anything else prohibited by the terms of the Injunction by June 30, 2014. If the specified information is not removed or we have not heard from you in this regard by June 30, 2014, Gilsulate intends to pursue all of its legal remedies to address the continued publication of false information.

If you have any questions in this regard, please feel free to call the undersigned or Samuel Price at (213) 439-5390.

Sincerely,

David S. Poole

Enclosures (2)

cc:               Gilsulate International, Inc. (via email only)

courtesy copies to:   James C. Hildebrand, Esq.
                      Jared Sandman, DriTherm International, Inc.

---

[2] Appearing at: http://metrosupplycollc.com/dri-therm-underground-insulation.html (see enclosed)

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

GILSULATE INTERNATIONAL, INC., a California corporation,

               Plaintiff,

vs.

DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,

               Defendants.

Case No.: 2:13-cv-01012-RSWL-JPR
Judge: Hon. Ronald S.W. Lew

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

     Plaintiff Gilsulate International, Inc. and defendants Dritherm International, Inc. and Jared Sandman consent as follows:

     WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") is a California corporation with its principal place of business in the State of California;

     WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a New Jersey corporation with its principal place of business in the state of New Jersey;

WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the State of New York and is an owner, shareholder, officer, director, manager, representative, and/or agent of Defendant DTI;

WHEREAS, Gilsulate and DTI are competitors in the market for insulation and corrosion protection products, which are used to provide thermal insulation and corrosion protection for underground piping systems, geothermal distribution, storage tanks, and other metal structures;

WHEREAS, Gilsulate manufactures a product that is marketed and sold under the name "Gilsulate®500XR";

WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

WHEREAS, on February 12, 2013, Plaintiff commenced this action in which it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade libel, intentional interference with economic advantage, and for violations of California Business and Professions Code §§ 17200 and 17500 against Defendants;

WHEREAS, Plaintiff alleges in the action that Defendants have, among other things, made representations regarding the nature, character, and quality of DriTherm, including disseminating information regarding the product's technical specifications and performance capabilities, which are unsupported by valid testing;

WHEREAS, Defendants have advertised that the installed density of DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that installed densities of DriTherm are greater than the value advertised;

WHEREAS, Defendants have advertised that the thermal conductivity of DriTherm is K = 0.58 at 100°F and K = 0.68 at 300°F, but expert analysis in this case has determined that thermal conductivity of DriTherm is greater than the value advertised;

WHEREAS, Defendants have made other statements in their advertising materials and elsewhere about DriTherm and Gilsulate products that are not supported by the evidence in this case;

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

WHEREAS, Plaintiff and Defendants have entered into a separate written Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

WHEREAS, the parties' Settlement Agreement provides, among other things, that the Court may enter a permanent injunction against Defendants in a form similar in all material respects to the form of injunction attached as an exhibit to the parties' Stipulation for Entry of Judgment For Permanent Injunction filed in this action; and

WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable harm:

Now therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this Court has jurisdiction over the subject matter of this action and over the parties hereto and ORDERS as follows:

1. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about DTI and the DriTherm product:

a. Any INSTALLED DENSITY for DriTherm unless the specifications are supported by APPROPRIATE DENSITY TESTING.

As used herein, INSTALLED DENSITY shall mean the density of DriTherm after installation and compaction under a minimum load of 400 pounds per square foot ("psf"), whether identified as "installed," "compacted," "in-use," "in-place," "in-situ," or any similar terminology.

As used herein, APPROPRIATE DENSITY TESTING shall mean all of the following:

i.    Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

    1.  Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

    2.  Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard $0.1 \text{ ft}^3$ mold. The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

    3.  Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

ii.    Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b.  Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c.  Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

    -  Quincy, IL:        $76 \text{ lb/ft}^3$

4

| | - Marble Falls, TX: | 80 lb/ft$^3$ |
|---|---|---|
| | - Marblehill, GA: | 80 lb/ft$^3$ |
| | - Adams, MA: | 80 lb/ft$^3$ |
| | - Lucerne Valley, CA: | 80 lb/ft$^3$ |

d. The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e. Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

i. Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

ii. Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

f. Unless APPROPRIATE THERMAL CONDUCTIVITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for THERMAL CONDUCTIVITY of DriTherm shall be as follows:

- Quincy, IL:            0.87 Btu-in/hr-ft$^2$°F at 100°F
                         1.25 Btu-in/hr-ft$^2$°F at 300°F
- Marble Falls, TX:      0.99 Btu-in/hr-ft$^2$°F at 100°F
                         1.36 Btu-in/hr-ft$^2$°F at 300°F
- Marblehill, GA:        0.99 Btu-in/hr-ft$^2$°F at 100°F
                         1.36 Btu-in/hr-ft$^2$°F at 300°F
- Adams, MA:             0.99 Btu-in/hr-ft$^2$°F at 100°F
                         1.36 Btu-in/hr-ft$^2$°F at 300°F
- Lucerne Valley, CA:    0.99 Btu-in/hr-ft$^2$°F at 100°F
                         1.36 Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal conductivity values determined by standard reference guides, based on APPROPRIATE DENSITY TESTING.

g. The complete, unabridged reports from any testing used to support representations of THERMAL CONDUCTIVITY shall be in writing, and provided to GILSULATE within thirty (30) days of making any representations of THERMAL CONDUCTIVITY. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

h. Any product performance characteristics for DriTherm that are not determined through valid, appropriate testing, using a test methodology established by a recognized testing agency or body, provided that such a standardized testing methodology exists, and performed by an independent, third party testing laboratory.

i. That DriTherm is to be load bearing, unless supported by appropriate testing performed by an independent, third party laboratory.

j.  That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

k.  That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

l.  That DriTherm is certified to be 100% hydrophobic.

m. That DriTherm is the most hydrophobic loose-fill product on the market.

n.  That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

o.  That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p.  That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

q.  That DriTherm is the only product of its kind rated for soils in below freezing conditions.

r.  That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

s.  That DriTherm provides or creates a positive vapor barrier.

t.  That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

i. That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

j. False or misleading statements regarding the composition of Gilsulate®500XR.

k. That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

l. That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

m. That delivery times for Gilsulate®500XR are or may be an issue.

n. That Gilsulate®500XR has a large carbon footprint.

o. That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That the installed density of Gilsulate®500XR is not 40-42 lb/ft$^3$.

3. IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

a. That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b. That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4. IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5. The Court shall retain jurisdiction to enforce the terms of this Order.

The Clerk shall close this action.

IT IS SO ORDERED.

DATED: 5/29/2014

RONALD S.W. LEW
_____
HON. RONALD S.W. LEW
Senior U.S. District Judge

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**



- Home
- About MSC
- Shop Online
- Our Manufacturers
- Newest Products
- Product Literature
- Product Listing
- PVC Fitting Charts
- Locations
- Export
- Contact MSC
- Customer Forms
- Site Map
- INSULATION
- FIRESTOPPING
- ABATEMENT
- MOLD CLEANER
- ACOUSTICAL

## METRO SUPPLY COMPANY

A Supplier of Mechanical Insulation Products





"Insulating New York & New Jersey One PIPE at a Time!" ™

# DRITHERM INTERNATIONAL

## UNDERGROUND PIPE INSULATION & CORROSION PROTECTION



The function of DriTherm® is to provide both insulation and corrosion protection in a field applied system. DriTherm is installed directly around piping to form a dense, closed cell barrier, between piping and the surrounding soil. Once installed to specified dimensions, the product self compacts upon backfill to form a strong (12,000 PSF) block of cohesively bonded particles that prevent air and moisture passage to the carrier piping.

Typical DriTherm® applications include: High pressure steam/condensate, hot & chill water piping, and industrial processing piping. When compared to traditional products, a DriTherm system can be as much as 30% less in total installed cost, with no compromise in thermal efficiency or longevity.

Features:

1. 100% Self-Compacting: No mechanical compaction required.
2. Environmentally friendly & nontoxic.
3. Cost effective: 25% to 40% less installed cost.
4. Certified 100% hydrophobic: Less than 0.02% moisture

DriTherm® is an excellent alternative to pre-insulated piping systems because it can be applied to existing systems, adapted to unknown field conditions, and is available on very short notice from one of our five factories. It also offers better thermal efficiency than pre-insulated systems and it's excellent load bearing capabilities make it suitable for applications under roads or overhead structures.



*New Jersey*
**(973)-237-1551**

*New York City*
**(718)-383-0117**



STORE HOURS
Mon-Fri
6am - 5:15pm



Case 2:13-cv-01012-RSWL-JPR   Document 88   Filed 09/08/15   Page 29 of 146   Page ID #:2767

**METRO SUPPLY COMPANY**                                          NJ (973)-237-1551
**Owens Corning Mechanical Fiberglass Pipe Insulation Distributor**        NY (888)-75-METRO
**INSULATION / FIRESTOPPING / ABATEMENT / HVAC,**                  sales@metro-supply-co.com

Copyright © 2014 Web Site Design by Web.com Group, Inc.

# POOLE ■ SHAFFERY

A T T O R N E Y S   A T   L A W

Writer's email: dpoole@pooleshaffery.com

June 20, 2014

### *VIA FEDERAL EXPRESS*

Kijoda Sales
2719 Lemel Circle, Suite 10
Salt Lake City, UT 84115

Attention: Larry Holmes

Re:   **NOTICE TO CEASE AND DESIST**
      **Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.***
      USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR

Dear Mr. Holmes,

Please be advised that this law firm represents Gilsulate International, Inc. ("Gilsulate"). You are hereby given notice by Gilsulate that it has determined that certain information that you are currently publishing on Kijoda Sales' website (and which may be contained in other literature that you are distributing) regarding DriTherm International, Inc.'s ("DriTherm") product "DriTherm" and Gilsulate's product "Gilsulate®500XR" is false and misleading and provides a basis for Gilsulate to prosecute claims for false advertising against Kijoda Sales under Section 43(a) of the Lanham Act (15 U.S.C. §§ 1051 et seq.), and for trade libel, intentional interference with economic advantage, and violations of other state statutes.

On May 29, 2014, United States District Court Judge, the Hon. Ronald S.W. Lew, ordered the entry of Judgment for Permanent Injunction (the "Injunction") against DriTherm International, Inc. ("DTI"), and its owner, Jared Sandman, because of various representations that had been made by DTI, Sandman, and others on DTI's behalf regarding DriTherm's technical specifications, and physical and performance properties, which were determined to be unsupported by valid testing. Significantly, the representations regarding the installed density of 60-62 lbs/ft$^3$ and thermal conductivity of 0.58[1] at 100°F and 0.68 at 300°F were found to not be supported by expert testing of the DriTherm product. The Injunction specifically prohibits DTI and Sandman from making numerous other representations about DriTherm and about Gilsulate®500XR. A true and accurate copy of the Injunction is attached hereto.

The Injunction was issued as the result of a lawsuit filed in 2013 by Gilsulate after DTI and Sandman had failed to comply with cease and desist letters from two federal agencies (NASA and the U.S. Army Corps of Engineers) and from Gilsulate instructing DTI to stop misrepresenting certain matters regarding the DriTherm and Gilsulate®500XR products.

The Injunction issued against DTI and Sandman requires, among other things, that they may not represent the installed density of the DriTherm product to be less than 80 lbs/ft$^3$ (or 76 lbs/ft$^3$ for the Illinois-sourced material) and may not represent the thermal conductivity to be other than 0.99 at 100°F

---

[1] Measured in Btu-in/hr-ft$^2$°F

Kijoda Sales
Notice to Cease & Desist
Re:  Gilsulate International, Inc. v. DriTherm International, Inc., etc., *et al.*
June 20, 2014
Page 2

and 1.36 at 300°F (or 0.87 at 100°F and 1.25 at 300°F for the Illinois-sourced material) without new, valid testing from an independent laboratory.

Although you are not a party to the Injunction, you are now hereby charged with knowledge that you are currently publishing certain information that was the subject of the federal lawsuit against DTI and Sandman, that has been stipulated by DTI and Sandman to be unsupported by valid testing, and that DTI and Sandman are specifically prohibited from continuing to publish under the terms of the Injunction.

Based on the information we have reviewed, we have determined that the "Manufacturers Represented" page of your website[2] currently contains the following representations that are false and misleading and have been prohibited under the terms of the Injunction:

- "Federal spec approvals."

- "Temperature ranges from cryogenic to high-temperature steam and condensate."

You are directed to immediately cease and desist from publishing the above enumerated statements and information on your website and in any other format. Please advise us of your corrective action to remove this information and your intent to cease distributing any materials containing such information or anything else prohibited by the terms of the Injunction by June 30, 2014.  If the specified information is not removed or we have not heard from you in this regard by June 30, 2014, Gilsulate intends to pursue all of its legal remedies to address the continued publication of false information.

If you have any questions in this regard, please feel free to call the undersigned or Samuel Price at (213) 439-5390.

Sincerely,

David S. Poole

Enclosures (2)

cc:                    Gilsulate International, Inc. (via email only)

courtesy copies to:    James C. Hildebrand, Esq.
                       Jared Sandman, DriTherm International, Inc.

---

[2] Appearing at: http://kijoda.com/styled/index.html (see enclosed)

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC., a California corporation, | Case No.: 2:13-cv-01012-RSWL-JPR |
| | Judge: Hon. Ronald S.W. Lew |
| Plaintiff, | |
| vs. | |
| | **JUDGMENT FOR STIPULATED PERMANENT INJUNCTION** |
| DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff Gilsulate International, Inc. and defendants Dritherm International, Inc. and Jared Sandman consent as follows:

WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") is a California corporation with its principal place of business in the State of California;

WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a New Jersey corporation with its principal place of business in the state of New Jersey;

WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the State of New York and is an owner, shareholder, officer, director, manager, representative, and/or agent of Defendant DTI;

WHEREAS, Gilsulate and DTI are competitors in the market for insulation and corrosion protection products, which are used to provide thermal insulation and corrosion protection for underground piping systems, geothermal distribution, storage tanks, and other metal structures;

WHEREAS, Gilsulate manufactures a product that is marketed and sold under the name "Gilsulate®500XR";

WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

WHEREAS, on February 12, 2013, Plaintiff commenced this action in which it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade libel, intentional interference with economic advantage, and for violations of California Business and Professions Code §§ 17200 and 17500 against Defendants;

WHEREAS, Plaintiff alleges in the action that Defendants have, among other things, made representations regarding the nature, character, and quality of DriTherm, including disseminating information regarding the product's technical specifications and performance capabilities, which are unsupported by valid testing;

WHEREAS, Defendants have advertised that the installed density of DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that installed densities of DriTherm are greater than the value advertised;

WHEREAS, Defendants have advertised that the thermal conductivity of DriTherm is $K = 0.58$ at $100°F$ and $K = 0.68$ at $300°F$, but expert analysis in this case has determined that thermal conductivity of DriTherm is greater than the value advertised;

WHEREAS, Defendants have made other statements in their advertising materials and elsewhere about DriTherm and Gilsulate products that are not supported by the evidence in this case;

1   WHEREAS, Plaintiff and Defendants have entered into a separate written

2   Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

3   WHEREAS, the parties' Settlement Agreement provides, among other things,

4   that the Court may enter a permanent injunction against Defendants in a form

5   similar in all material respects to the form of injunction attached as an exhibit to the

6   parties' Stipulation for Entry of Judgment For  Permanent Injunction filed in this

7   action; and

8   WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable

9   harm:

10   Now therefore,

11   **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this

12   Court has jurisdiction over the subject matter of this action and over the parties

13   hereto and ORDERS as follows:

14

15   1. DTI, its officers, agents, servants, employees, and attorneys, and any other

16   persons who are in active concert or participation therewith, are hereby

17   enjoined from stating or communicating, in the advertising or promotional

18   materials or activities for DTI, any of the following claims in form or in

19   substance about DTI and the DriTherm product:

20

21   a. Any INSTALLED DENSITY for DriTherm unless the
       specifications are supported by APPROPRIATE DENSITY
22     TESTING.

23
       As used herein, INSTALLED DENSITY shall mean the density
24     of DriTherm after installation and compaction under a minimum
       load of 400 pounds per square foot ("psf"), whether identified as
25     "installed," "compacted," "in-use," "in-place," "in-situ," or any
       similar terminology.
26

27
       As used herein, APPROPRIATE DENSITY TESTING shall
28     mean all of the following:

3

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

i.  Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

1.  Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

2.  Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard 0.1 ft$^3$ mold. The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

3.  Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

ii.  Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b.  Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c.  Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

-  Quincy, IL:              76 lb/ft$^3$

4

- Marble Falls, TX: 80 lb/ft$^3$
- Marblehill, GA: 80 lb/ft$^3$
- Adams, MA: 80 lb/ft$^3$
- Lucerne Valley, CA: 80 lb/ft$^3$

d. The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e. Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

i. Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

ii. Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

f. Unless APPROPRIATE THERMAL CONDUCTIVITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for THERMAL CONDUCTIVITY of DriTherm shall be as follows:

- Quincy, IL:            0.87 Btu-in/hr-ft$^2$°F at 100°F

                                       1.25 Btu-in/hr-ft$^2$°F at 300°F

- Marble Falls, TX:     0.99 Btu-in/hr-ft$^2$°F at 100°F

                                       1.36 Btu-in/hr-ft$^2$°F at 300°F

- Marblehill, GA:      0.99 Btu-in/hr-ft$^2$°F at 100°F

                                       1.36 Btu-in/hr-ft$^2$°F at 300°F

- Adams, MA:          0.99 Btu-in/hr-ft$^2$°F at 100°F

                                       1.36 Btu-in/hr-ft$^2$°F at 300°F

- Lucerne Valley, CA:   0.99 Btu-in/hr-ft$^2$°F at 100°F

                                       1.36 Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal conductivity values determined by standard reference guides, based on APPROPRIATE DENSITY TESTING.

g. The complete, unabridged reports from any testing used to support representations of THERMAL CONDUCTIVITY shall be in writing, and provided to GILSULATE within thirty (30) days of making any representations of THERMAL CONDUCTIVITY. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

h. Any product performance characteristics for DriTherm that are not determined through valid, appropriate testing, using a test methodology established by a recognized testing agency or body, provided that such a standardized testing methodology exists, and performed by an independent, third party testing laboratory.

i. That DriTherm is to be load bearing, unless supported by appropriate testing performed by an independent, third party laboratory.

j.  That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

k.  That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

l.  That DriTherm is certified to be 100% hydrophobic.

m. That DriTherm is the most hydrophobic loose-fill product on the market.

n.  That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

o.  That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p.  That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

q.  That DriTherm is the only product of its kind rated for soils in below freezing conditions.

r.  That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

s.  That DriTherm provides or creates a positive vapor barrier.

t.  That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

i. That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

j. False or misleading statements regarding the composition of Gilsulate®500XR.

k. That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

l. That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

m. That delivery times for Gilsulate®500XR are or may be an issue.

n. That Gilsulate®500XR has a large carbon footprint.

o. That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That the installed density of Gilsulate®500XR is not 40-42 lb/ft$^3$.

3. IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

a. That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b. That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4. IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5. The Court shall retain jurisdiction to enforce the terms of this Order.

The Clerk shall close this action.

IT IS SO ORDERED.

DATED: 5/29/2014

RONALD S.W. LEW
_____
HON. RONALD S.W. LEW
Senior U.S. District Judge

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

# KIJODA Sales
## Wanna loosen your rusty nuts?

Here is a listing of manufacturers represented by KIJODA Sales:

CORTEC CORPORATION, ST PAUL, MN A full range of corrosion inhibitors to protect ferrous and non-ferrous metals, including formulations to protect combinations of metals. ISO 9001 and ISO 14001 certified. High performance water-based coatings. Metal cleaners and degreasers. Water treatment products to prevent scaling, protect boilers during layup, increase efficiency in sewage treatment plants and lagoons. Equipment layup, indoor/outdoor. short/long-term protection. Migrating corrosion inhibitors (MCIs) for protection of rebar in concrete against corrosion from salts.

DESIGN TANKS, SIOUX FALLS, SD. Fiberglass above ground tanks to 30,000 gallons. Highly corrosive chemicals or clean/dirty water storage.

DRITHERM, INC, Jersey City, NJ. In-the-trench poured in place pipe insulation. Federal spec approvals. Organic, non-corrosive, and does not absorb water. Temperature ranges from cryogenic to high-temperature steam and condensate. Very cost- effective, offering 25% to 40% lower installed cost.

FIB=R-DOR, NORTH LITTLE ROCK, AR. Custom built fiberglass man doors for corrosive or high-moisture areas. Non-corrosive and do not absorb water. Guaranteed against failure from corrosion for twenty years. UL rated fire doors from 20 to 90 minutes.
NEPTUNE RESEARCH INC, LAKE PARK, FL. Pipe repair/reinforcement tapes. Fast cure times. Will seal 60 psi liquid "on the fly." High pressure/high temperature versions available. Will cure under water. Engineering services available,

PHOENIX/OMNEX CONTROL SYSTEMS, Offers the ability to wire remote devices (level sensor, etc.) to a terminal block in the field and to have the signal reliably reappear at a terminal block where you need it, No cables or conduit. Secure and robust. Discrete or
HARRISBURG, PA. analog signals. Ranges to 20 miles (line of sight).2.4 GHz ethernet radios with 802.11 connectivity. Extend existing PLC networks or CCTV/IP camera systems.

RESOLITE FRP COMPOSITES, MEMPHIS, TN. Fiberglass reinforced plastic composite panels for siding and roofing. Opaque or translucent. Broad range of weights and profiles. Featuring Tred-Safe WALKABLE panels for roofing and siding.

PURCHEM ENVIRONMENTAL AND SUPPLY, Environmentally friendly cleaners and degreasers that clean well and are not hazardous to you or your employees. Patented asphalt cleaners. Dust control products.
SPRING GLEN, NV.

© 2011 Larry Holmes   Contact Me

# POOLE ▓ SHAFFERY

A T T O R N E Y S   A T   L A W

Writer's email: dpoole@pooleshaffery.com

June 20, 2014

**_VIA FEDERAL EXPRESS_**

J.D. Acers Company
1510 12th St.
Cloquet, MN 55720

Attention: Terry Acers

      Re:    **NOTICE TO CEASE AND DESIST**
            **Gilsulate International, Inc. v. Dritherm International, Inc., etc., _et al._**
            USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR

Dear Mr. Acers,

      Please be advised that this law firm represents Gilsulate International, Inc. ("Gilsulate"). You are hereby given notice by Gilsulate that it has determined that certain information that you are currently publishing on J.D. Acers' website (and which may be contained in other literature that you are distributing) regarding DriTherm International, Inc.'s ("DriTherm") product "DriTherm" and Gilsulate's product "Gilsulate®500XR" is false and misleading and provides a basis for Gilsulate to prosecute claims for false advertising against J.D. Acers under Section 43(a) of the Lanham Act (15 U.S.C. §§ 1051 et seq.), and for trade libel, intentional interference with economic advantage, and violations of other state statutes.

      On May 29, 2014, United States District Court Judge, the Hon. Ronald S.W. Lew, ordered the entry of Judgment for Permanent Injunction (the "Injunction") against DriTherm International, Inc. ("DTI"), and its owner, Jared Sandman, because of various representations that had been made by DTI, Sandman, and others on DTI's behalf regarding DriTherm's technical specifications, and physical and performance properties, which were determined to be unsupported by valid testing. Significantly, the representations regarding the installed density of 60-62 lbs/ft$^3$ and thermal conductivity of 0.58[1] at 100°F and 0.68 at 300°F were found to not be supported by expert testing of the DriTherm product. The Injunction specifically prohibits DTI and Sandman from making numerous other representations about DriTherm and about Gilsulate®500XR. A true and accurate copy of the Injunction is attached hereto.

      The Injunction was issued as the result of a lawsuit filed in 2013 by Gilsulate after DTI and Sandman had failed to comply with cease and desist letters from two federal agencies (NASA and the U.S. Army Corps of Engineers) and from Gilsulate instructing DTI to stop misrepresenting certain matters regarding the DriTherm and Gilsulate®500XR products.

      The Injunction issued against DTI and Sandman requires, among other things, that they may not represent the installed density of the DriTherm product to be less than 80 lbs/ft$^3$ (or 76 lbs/ft$^3$ for the Illinois-sourced material) and may not represent the thermal conductivity to be other than 0.99 at 100°F

---

[1] Measured in Btu-in/hr-ft$^2$°F

J.D. Acers Company
Notice to Cease & Desist
Re: <u>Gilsulate International, Inc. v. DriTherm International, Inc., etc., *et al.*</u>
June 20, 2014
Page 2

and 1.36 at 300°F (or 0.87 at 100°F and 1.25 at 300°F for the Illinois-sourced material) without new, valid testing from an independent laboratory.

Although you are not a party to the Injunction, you are now hereby charged with knowledge that you are currently publishing certain information that was the subject of the federal lawsuit against DTI and Sandman, that has been stipulated by DTI and Sandman to be unsupported by valid testing, and that DTI and Sandman are specifically prohibited from continuing to publish under the terms of the Injunction.

Based on the information we have reviewed, we have determined that your website[2] currently contains the following representation which is false and misleading and has been prohibited under the terms of the Injunction:

[Dritherm compacts] "to form a strong (12,000 PSF) block of cohesively bonded particles"

You are directed to immediately cease and desist from publishing the above information on your website and in any other format. Please advise us of your corrective action to remove this information and your intent to cease distributing any materials containing such information or anything else prohibited by the terms of the Injunction by June 30, 2014. If the specified information is not removed or we have not heard from you in this regard by June 30, 2014, Gilsulate intends to pursue all of its legal remedies to address the continued publication of false information.

If you have any questions in this regard, please feel free to call the undersigned or Samuel Price at (213) 439-5390.

Sincerely,

David S. Poole

Enclosures (2)

cc:                Gilsulate International, Inc. (via email only)

courtesy copies to:  James C. Hildebrand, Esq.
                     Jared Sandman, DriTherm International, Inc.

---

[2] Appearing at: http://www.jdacers.com/products.html (see enclosed)

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC., a California corporation,<br><br>                Plaintiff,<br>    vs.<br><br>DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.: 2:13-cv-01012-RSWL-JPR<br>Judge: Hon. Ronald S.W. Lew<br><br><br>**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION** |

      Plaintiff Gilsulate International, Inc. and defendants Dritherm International, Inc. and Jared Sandman consent as follows:

      WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") is a California corporation with its principal place of business in the State of California;

      WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a New Jersey corporation with its principal place of business in the state of New Jersey;

1    WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the

2 State of New York and is an owner, shareholder, officer, director, manager,

3 representative, and/or agent of Defendant DTI;

4    WHEREAS, Gilsulate and DTI are competitors in the market for insulation

5 and corrosion protection products, which are used to provide thermal insulation and

6 corrosion protection for underground piping systems, geothermal distribution,

7 storage tanks, and other metal structures;

8    WHEREAS, Gilsulate manufactures a product that is marketed and sold under

9 the name "Gilsulate®500XR";

10    WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

11    WHEREAS, on February 12, 2013, Plaintiff commenced this action in which

12 it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade

13 libel, intentional interference with economic advantage, and for violations of

14 California Business and Professions Code §§ 17200 and 17500 against Defendants;

15    WHEREAS, Plaintiff alleges in the action that Defendants have, among other

16 things, made representations regarding the nature, character, and quality of

17 DriTherm, including disseminating information regarding the product's technical

18 specifications and performance capabilities, which are unsupported by valid testing;

19    WHEREAS, Defendants have advertised that the installed density of

20 DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that

21 installed densities of DriTherm are greater than the value advertised;

22    WHEREAS, Defendants have advertised that the thermal conductivity of

23 DriTherm is K = 0.58 at 100°F and K = 0.68 at 300°F, but expert analysis in this

24 case has determined that thermal conductivity of DriTherm is greater than the value

25 advertised;

26    WHEREAS, Defendants have made other statements in their advertising

27 materials and elsewhere about DriTherm and Gilsulate products that are not

28 supported by the evidence in this case;

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

WHEREAS, Plaintiff and Defendants have entered into a separate written Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

WHEREAS, the parties' Settlement Agreement provides, among other things, that the Court may enter a permanent injunction against Defendants in a form similar in all material respects to the form of injunction attached as an exhibit to the parties' Stipulation for Entry of Judgment For Permanent Injunction filed in this action; and

WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable harm:

Now therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this Court has jurisdiction over the subject matter of this action and over the parties hereto and ORDERS as follows:

1. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about DTI and the DriTherm product:

   a. Any INSTALLED DENSITY for DriTherm unless the specifications are supported by APPROPRIATE DENSITY TESTING.

   As used herein, INSTALLED DENSITY shall mean the density of DriTherm after installation and compaction under a minimum load of 400 pounds per square foot ("psf"), whether identified as "installed," "compacted," "in-use," "in-place," "in-situ," or any similar terminology.

   As used herein, APPROPRIATE DENSITY TESTING shall mean all of the following:

i.   Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

1.   Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

2.   Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard 0.1 ft$^3$ mold.  The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

3.   Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

ii.  Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b.  Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c.  Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

-   Quincy, IL:              76 lb/ft$^3$

4

- Marble Falls, TX:        80 lb/ft$^3$
- Marblehill, GA:          80 lb/ft$^3$
- Adams, MA:               80 lb/ft$^3$
- Lucerne Valley, CA:      80 lb/ft$^3$

d. The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e. Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

i.   Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

ii.  Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

f.  Unless APPROPRIATE THERMAL CONDUCTIVITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for THERMAL CONDUCTIVITY of DriTherm shall be as follows:

- Quincy, IL:              0.87 Btu-in/hr-ft$^2$°F at 100°F

                                1.25 Btu-in/hr-ft$^2$°F at 300°F

- Marble Falls, TX:    0.99 Btu-in/hr-ft$^2$°F at 100°F

                                1.36 Btu-in/hr-ft$^2$°F at 300°F

- Marblehill, GA:     0.99 Btu-in/hr-ft$^2$°F at 100°F

                                1.36 Btu-in/hr-ft$^2$°F at 300°F

- Adams, MA:         0.99 Btu-in/hr-ft$^2$°F at 100°F

                                1.36 Btu-in/hr-ft$^2$°F at 300°F

- Lucerne Valley, CA:  0.99 Btu-in/hr-ft$^2$°F at 100°F

                                1.36 Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal conductivity values determined by standard reference guides, based on APPROPRIATE DENSITY TESTING.

g.  The complete, unabridged reports from any testing used to support representations of THERMAL CONDUCTIVITY shall be in writing, and provided to GILSULATE within thirty (30) days of making any representations of THERMAL CONDUCTIVITY. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

h.  Any product performance characteristics for DriTherm that are not determined through valid, appropriate testing, using a test methodology established by a recognized testing agency or body, provided that such a standardized testing methodology exists, and performed by an independent, third party testing laboratory.

i.  That DriTherm is to be load bearing, unless supported by appropriate testing performed by an independent, third party laboratory.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

j. That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

k. That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

l. That DriTherm is certified to be 100% hydrophobic.

m. That DriTherm is the most hydrophobic loose-fill product on the market.

n. That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

o. That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

q. That DriTherm is the only product of its kind rated for soils in below freezing conditions.

r. That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

s. That DriTherm provides or creates a positive vapor barrier.

t. That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

i.  That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

j.  False or misleading statements regarding the composition of Gilsulate®500XR.

k.  That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

l.  That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

m. That delivery times for Gilsulate®500XR are or may be an issue.

n.  That Gilsulate®500XR has a large carbon footprint.

o.  That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p.  That the installed density of Gilsulate®500XR is not 40-42 lb/ft$^3$.

3.  IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

a.  That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b.  That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4. IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5. The Court shall retain jurisdiction to enforce the terms of this Order.

The Clerk shall close this action.

IT IS SO ORDERED.

DATED: 5/29/2014

RONALD S.W. LEW
_____
HON. RONALD S.W. LEW
Senior U.S. District Judge

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

# James D. Acers Company, Inc.

**Your Steam Specialty Leader since 1981!**

| Home | About | News | Products | Services | Contact Us |

**PRODUCTS**

 **VELAN STEAM TRAPS**

Velan steam traps enjoy a long and rich history.  Manufactured first in 1950, the Velan steam trap has remained the high quality product it first was.  The only major change to the Velan steam trap came about in 1987, when the company was sold to Plenty Limited. Velan steam traps were then traded under the Plenty Steam Products name for 15 years until 2002, when it was reacquired by Velan Valves UK.

The Velan steam trap line offers bimetallic steam traps, float and thermostatic steam traps, piston operated steam traps and thermodynamic steam traps.  To learn more about Velan Steam Traps, click the above icon or visit www.velansteamtraps.com.

 (corporate site)

Velan is one of the world's leading manufacturers of industrial steel valves with twelve specialized manufacturing plants, including five in Canada and U.S.A., four in Europe, and three in Asia. Velan employs over 1,500 people, 75% of which are located in North America. They owe much of their success to the capability, experience and dedication of their employees who have made quality and innovation the cornerstone of Velan since its inception in 1950. Velan is the largest manufacturer of industrial steel gate, globe and check valves in the world. They also offer an advanced line of highly competitive industrial ball valves with metal and resilient seats, Torqseal triple offset butterfly valves, as well as high-performance all stainless steel knife gate valves. Their valves are supplied for a broad range of applications in the power generation, chemical and petrochemical, oil and gas, pulp and paper, mining, cryogenic, and ship-building industries. They concentrate on one business—designing, manufacturing and marketing advanced technology steel valves in a broad range of types and sizes.

 **ADVANCED THERMAL CORP.**

Advance Thermal Corp. is the single largest and most experienced manufacturer of removable insulation covers. With 3 fully equipped manufacturing facilities, strategically located throughout North America in Illinois, Texas and Connecticut, quality insulation blankets can be manufactured quickly and efficiently for a complete array of industrial equipment.

 **TechLite**

TechLite is a "state of the art" insulation material. It is a flexible foam produced from melamine resin (a thermoset of the aminoplastics group). The three dimensional structure of the foam is made up of a microscopic, slender skeletal structure that delivers excellent insulation properties.

As a result of this unique structure and inherent nature of the design. TechLite offers some outstanding properties, such as High Temperature Resistance, Low Bacterial Growth, 25/50 fire Rating, ASTM C-1410, and Outstanding Fabrication Qualities.

 **DriTherm**

The function of DriTherm® is to provide both pipe insulation and corrosion protection in a field applied system. DriTherm® is installed directly around piping to form a dense, closed cell barrier, between piping and the surrounding soil. Once installed to specified dimensions, the product self compacts upon backfill to form a strong

(12,000 PSF) block of cohesively bonded particles that prevent air, water, moisture passage to the carrier piping.



**ProMag**

State of the Art Magnetic Liquid Level Indicators are a Direct Replacement for Less Reliable Devices and provide a Lifetime of Safe Liquid Level Indication. Wide Variety of Accessories such as Liquid Level Switches, Transmitters, and other Liquid Level, Mass, Density, and Flow Devices.

| Home | About | News | Products | Services | Contact Us |
|------|-------|------|----------|----------|------------|

Legal Notice | Privacy Policy                                    © 2006 James D. Acers Company. All rights reserved.

# POOLE ▊ SHAFFERY

A T T O R N E Y S   A T   L A W

Writer's email: dpoole@pooleshaffery.com

June 20, 2014

***VIA FEDERAL EXPRESS***

GlassCell Isofab
1000 Martin Grove
Toronto, Ontario M9W 4V8
Canada

Attention: Ross Wilson

Re:   **NOTICE TO CEASE AND DESIST**
      **Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.***
      USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR

Dear Mr. Wilson,

Please be advised that this law firm represents Gilsulate International, Inc. ("Gilsulate"). You are hereby given notice by Gilsulate that it has determined that certain information that you are currently publishing on Glasscell Isofab's website (and which may be contained in other literature that you are distributing) regarding DriTherm International, Inc.'s ("DriTherm") product "DriTherm" and Gilsulate's product "Gilsulate®500XR" is false and misleading and provides a basis for Gilsulate to prosecute claims for false advertising against Glasscell Isofab, and for trade libel, intentional interference with economic advantage, and violations of other state statutes.

On May 29, 2014, United States District Court Judge, the Hon. Ronald S.W. Lew, ordered the entry of Judgment for Permanent Injunction (the "Injunction") against DriTherm International, Inc. ("DTI"), and its owner, Jared Sandman, because of various representations that had been made by DTI, Sandman, and others on DTI's behalf regarding DriTherm's technical specifications, and physical and performance properties, which were determined to be unsupported by valid testing. Significantly, the representations regarding the installed density of 60-62 lbs/ft$^3$ and thermal conductivity of 0.58[1] at 100°F and 0.68 at 300°F were found to not be supported by expert testing of the DriTherm product. The Injunction specifically prohibits DTI and Sandman from making numerous other representations about DriTherm and about Gilsulate®500XR. A true and accurate copy of the Injunction is attached hereto.

The Injunction was issued as the result of a lawsuit filed in 2013 by Gilsulate after DTI and Sandman had failed to comply with cease and desist letters from two federal agencies (NASA and the U.S. Army Corps of Engineers) and from Gilsulate instructing DTI to stop misrepresenting certain matters regarding the DriTherm and Gilsulate®500XR products.

The Injunction issued against DTI and Sandman requires, among other things, that they may not represent the installed density of the DriTherm product to be less than 80 lbs/ft$^3$ (or 76 lbs/ft$^3$ for the Illinois-sourced material) and may not represent the thermal conductivity to be other than 0.99 at 100°F and 1.36 at 300°F (or 0.87 at 100°F and 1.25 at 300°F for the Illinois-sourced material) without new,

---

[1] Measured in Btu-in/hr-ft$^2$°F

Glasscell Isofab
Notice to Cease & Desist
Re:  Gilsulate International, Inc. v. DriTherm International, Inc., etc., *et al.*
June 20, 2014
Page 2

valid testing from an independent laboratory.

Although you are not a party to the Injunction, you are now hereby charged with knowledge that you are currently publishing certain information that was the subject of the federal lawsuit against DTI and Sandman, that has been stipulated by DTI and Sandman to be unsupported by valid testing, and that DTI and Sandman are specifically prohibited from continuing to publish under the terms of the Injunction.

Based on the information we have reviewed, we have determined that your website[2] currently contains the following representations that are false and misleading and have been prohibited under the terms of the Injunction:

### *DriTherm Specification Data Sheet*

- "It is recommended for application temperatures between –275°F and +480°F"
- "PHYSICAL PROPERTIES
  - Thermal Conductivity: (ASTM C 177) K=0.58 btu/hr/ft$^2$ °F/ in (100°F) and K=0.68 at 300°F
  - Temperature Range: -273°F to 480°F (250°C)
  - Bulk Density: 60 – 62 lbs. per cubic feet (CF) installed
  - Load Bearing: up to 12,000 lbs. per square feet
  - Electrical Resistivity: R=10 14 OHMS-CM
  - Dielectric Constant: 2.7
  - Friction Coefficient: 0.35 ± 0.04
  - Water / Moisture Resistance: Withstands 10 ft. hydrostatic head of water for minimum of 14 days with moisture gain less than 0.02%"
- "Each DriTherm particle is certified 100% Hydrophobic."
- "Federal Approval: DriTherm has been approved for new construction on military bases and federal institutions by the following user agencies:
  - Corps of Engineers
  - Naval Facilities Engineering
  - Department of the Air Force
  - Veterans Administration"
- "DriTherm is packaged in forty-five 50-lb. bags per pallet (37.5 CF).  It is also packaged in 40 CF Super Sacks which have a bottom discharge chute for quick dispensing."

---

[2] Appearing at: http://www.glasscellisofab.com/sheets/underground/data_sheets/DRITHERM.pdf (see enclosed)

Glasscell Isofab
Notice to Cease & Desist
Re:  Gilsulate International, Inc. v. DriTherm International, Inc., etc., *et al.*
June 20, 2014
Page 3

You are directed to immediately cease and desist from publishing the above enumerated statements and information on your website and in any other format. Please advise us of your corrective action to remove this information and your intent to cease distributing any materials containing such information or anything else prohibited by the terms of the Injunction by June 30, 2014.  If the specified information is not removed or we have not heard from you in this regard by June 30, 2014, Gilsulate intends to pursue all of its legal remedies to address the continued publication of false information.

If you have any questions in this regard, please feel free to call the undersigned or Samuel Price at (213) 439-5390.

Sincerely,

David S. Poole

Enclosures (2)

cc:                          Gilsulate International, Inc. (via email only)

courtesy copies to:    James C. Hildebrand, Esq.
                               Jared Sandman, DriTherm International, Inc.

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.: 2:13-cv-01012-RSWL-JPR<br>Judge:  Hon. Ronald S.W. Lew<br><br><br>**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION** |

        Plaintiff Gilsulate International, Inc. and defendants Dritherm International, Inc. and Jared Sandman consent as follows:

        WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") is a California corporation with its principal place of business in the State of California;

        WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a New Jersey corporation with its principal place of business in the state of New Jersey;

WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the State of New York and is an owner, shareholder, officer, director, manager, representative, and/or agent of Defendant DTI;

WHEREAS, Gilsulate and DTI are competitors in the market for insulation and corrosion protection products, which are used to provide thermal insulation and corrosion protection for underground piping systems, geothermal distribution, storage tanks, and other metal structures;

WHEREAS, Gilsulate manufactures a product that is marketed and sold under the name "Gilsulate®500XR";

WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

WHEREAS, on February 12, 2013, Plaintiff commenced this action in which it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade libel, intentional interference with economic advantage, and for violations of California Business and Professions Code §§ 17200 and 17500 against Defendants;

WHEREAS, Plaintiff alleges in the action that Defendants have, among other things, made representations regarding the nature, character, and quality of DriTherm, including disseminating information regarding the product's technical specifications and performance capabilities, which are unsupported by valid testing;

WHEREAS, Defendants have advertised that the installed density of DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that installed densities of DriTherm are greater than the value advertised;

WHEREAS, Defendants have advertised that the thermal conductivity of DriTherm is K = 0.58 at 100°F and K = 0.68 at 300°F, but expert analysis in this case has determined that thermal conductivity of DriTherm is greater than the value advertised;

WHEREAS, Defendants have made other statements in their advertising materials and elsewhere about DriTherm and Gilsulate products that are not supported by the evidence in this case;

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

WHEREAS, Plaintiff and Defendants have entered into a separate written Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

WHEREAS, the parties' Settlement Agreement provides, among other things, that the Court may enter a permanent injunction against Defendants in a form similar in all material respects to the form of injunction attached as an exhibit to the parties' Stipulation for Entry of Judgment For Permanent Injunction filed in this action; and

WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable harm:

Now therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this Court has jurisdiction over the subject matter of this action and over the parties hereto and ORDERS as follows:

1. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about DTI and the DriTherm product:

   a. Any INSTALLED DENSITY for DriTherm unless the specifications are supported by APPROPRIATE DENSITY TESTING.

   As used herein, INSTALLED DENSITY shall mean the density of DriTherm after installation and compaction under a minimum load of 400 pounds per square foot ("psf"), whether identified as "installed," "compacted," "in-use," "in-place," "in-situ," or any similar terminology.

   As used herein, APPROPRIATE DENSITY TESTING shall mean all of the following:

i. Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

1. Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

2. Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard 0.1 ft$^3$ mold. The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

3. Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

ii. Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b. Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c. Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

- Quincy, IL:          76 lb/ft$^3$

4

- Marble Falls, TX: 80 lb/ft$^3$
- Marblehill, GA: 80 lb/ft$^3$
- Adams, MA: 80 lb/ft$^3$
- Lucerne Valley, CA: 80 lb/ft$^3$

d. The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e. Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

i. Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

ii. Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

f.  Unless APPROPRIATE THERMAL CONDUCTIVITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for THERMAL CONDUCTIVITY of DriTherm shall be as follows:

- Quincy, IL:  0.87 Btu-in/hr-ft$^2$°F at 100°F
  1.25 Btu-in/hr-ft$^2$°F at 300°F
- Marble Falls, TX:  0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F
- Marblehill, GA:  0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F
- Adams, MA:  0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F
- Lucerne Valley, CA:  0.99 Btu-in/hr-ft$^2$°F at 100°F
  1.36 Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal conductivity values determined by standard reference guides, based on APPROPRIATE DENSITY TESTING.

g.  The complete, unabridged reports from any testing used to support representations of THERMAL CONDUCTIVITY shall be in writing, and provided to GILSULATE within thirty (30) days of making any representations of THERMAL CONDUCTIVITY.  Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

h.  Any product performance characteristics for DriTherm that are not determined through valid, appropriate testing, using a test methodology established by a recognized testing agency or body, provided that such a standardized testing methodology exists, and performed by an independent, third party testing laboratory.

i.  That DriTherm is to be load bearing, unless supported by appropriate testing performed by an independent, third party laboratory.

j. That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

k. That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

l. That DriTherm is certified to be 100% hydrophobic.

m. That DriTherm is the most hydrophobic loose-fill product on the market.

n. That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

o. That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

q. That DriTherm is the only product of its kind rated for soils in below freezing conditions.

r. That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

s. That DriTherm provides or creates a positive vapor barrier.

t. That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

i. That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

j. False or misleading statements regarding the composition of Gilsulate®500XR.

k. That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

l. That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

m. That delivery times for Gilsulate®500XR are or may be an issue.

n. That Gilsulate®500XR has a large carbon footprint.

o. That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That the installed density of Gilsulate®500XR is not 40-42 lb/ft$^3$.

3. IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

a. That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b. That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

9

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4. IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5. The Court shall retain jurisdiction to enforce the terms of this Order.

The Clerk shall close this action.

IT IS SO ORDERED.

DATED: 5/29/2014

RONALD S.W. LEW
_____
HON. RONALD S.W. LEW
Senior U.S. District Judge

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

# DRITHERM® SPECIFICATION DATA SHEET

## 1. PRODUCT NAME

**DriTherm®**

Underground Pipe Insulation/Corrosion Protection

## 2. MANUFACTURER

DriTherm Incorporated
375 Route 10 – Suite 100
Whippany, NJ 07981-2104

Phone: (800) 343-4188
Phone: (973) 428-0478
Fax: (973) 428-3391

E-mail: info@dritherm.com
URL: www.dritherm.com





## 3. PRODUCT DESCRIPTION

**Basic Use:** DriTherm is used to insulate/corrosion protect underground piping/tanks/structures. It is poured around underground pipes to isolate these from moist/wet soils while providing highly efficient thermal insulation. The DriTherm formula has been used successfully for District Heating/Cooling applications including: steam, condensate return, hot & chilled water, oil and chemicals, compressed air, etc. It is used for new construction projects and is ideally suited for repairing existing systems that have experienced increased energy loss/corroded piping.

**Composition and Materials:** DriTherm is manufactured using 100% Calcium Carbonate particles which have been chemically modified to completely repel water / moisture. Each particle contains a cohesive surface which allows for a complete and enduring bond once installed and backfilled. All DriTherm particles are less than 5 micron in size.

**Product History:** DriTherm is a uniquely formulated product/system that has been continuously manufactured using the same specification since 1967 without change. A long documented track record of customer satisfaction exists with the DriTherm product. Over 4.5 million cubic feet (equivalent to over 300 miles of piping) of DriTherm formula product have been installed almost exclusively in North America with installations in Caribbean countries, South America, Europe, North Africa, and Japan as well, with excellent results reported.

**Limitations:** DriTherm can only be used around underground pipes, tanks, and structures. It is not intended for use on above ground applications. It is recommended for application temperatures between –275°F and +480°F (higher temperatures possible – consult mfgr.) and should not be used where moving or permanent water will be in direct contact with it unless sub-drainage is installed.

## 4. PHYSICAL PROPERTIES

- Thermal Conductivity: (ASTM C 177)
  K=0.58 btu/hr/ft² °F/in (100°F) and K=0.68 at 300°F
- Temperature Range: ¯273°F to 480°F (250°C)
- Bulk Density: 60 – 62 lbs. per cubic feet (CF) installed
- Load Bearing: up to 12,000 lbs. per square feet
- Electrical Resistivity: R=$10^{14}$ OHMS-CM
- Dielectric Constant: 2.7
- Friction Coefficient: 0.35 ± 0.04
- Water/Moisture Resistance: Withstands 10 ft. hydrostatic head of water for minimum of 14 days with moisture gain less than 0.02%
- Completely Non-Toxic – User Friendly
- Environmentally Safe

**Product Features:** One product insulates both hot and cold pipes. A free flowing, self-compacting material - pour from bag/sack and backfill. Completely inert - will not affect piping materials.

Each DriTherm particle is certified 100% Hydrophobic. DriTherm contains no fillers or Perlite – each bag/sack contains only 100% waterproof insulation.

No costly Cathodic or additional protection required to prevent pipe corrosion. When installed, individual particles form closed cell bonds with each other effectively preventing air, water, moisture penetration to piping system. No long term degradation from normal soil constituents.

**Federal Approval:** DriTherm has been approved for new construction on military bases and federal institutions by the following user agencies:
- Corps of Engineers
- Naval Facilities Engineering
- Department of the Air Force
- Veterans Administration

## 5. INSTALLATION

**Preparation:**
- Excavate trench to minimum dimensions.
- Install pipe anchors, guides, and supports as required.
- Install piping and test for leaks
- Remove any debris from trench base

**Forming:**
- Prepare drywall sideforms (if necessary) to specified vertical height.
- Install and secure forms rigidly to specified horizontal width.

**Product Installation:**
- Apply Bitumastic and mineral wool where required.
- Pour DriTherm to required dimensions.
- Cover DriTherm with 4-6 mil Polyfilm.
- Place empty bags / sacks over DriTherm.

**Backfilling:**
- Manually / gently install first 4 – 6" of clean backfill.
- Mechanically complete backfilling to project specs.

## 6. AVAILABILITY AND COST

Product Availability: Available from the following factory manufacturing locations:

| | |
|---|---|
| Lucerne Valley, CA 92356 | Fort Dodge, IA 50501 |
| Marblehill, GA 30145 | Adams, MA 01220 |
| Quincy, IL 62301 | Marble Falls, TX 78654 |

DriTherm is packaged in forty-five 50-lb. bags per pallet (37.5 CF) and shipped in full pallet lots only. It is also packaged in 40 CF Super Sacks which have a bottom discharge chute for quick dispensing. Product stock is maintained at all factory and distributor locations. Shipments are usually made within 24 hrs.

Costs: DriTherm is sold by the cubic feet (CF) and economically priced. Call (800) 343-4188 for current pricing.

## 7. WARRANTY

DriTherm, Inc. warrants for a period of (1) year after the date of delivery that the products sold by DriTherm, Inc. will be of like grade and quality to and in accordance with DriTherm, Inc.'s published data sheet for such products. Refer to engineering manual / technical brochure for warranty limitations and owner responsibility.



### DRITHERM ENVELOPE DIMENSIONS IN INCHES

| Nom. Pipe Dia. | -100°F to 100°F | | | 101°F to 230°F | | | 231°F to 305°F | | | 306°F to 400°F | | | 401°F to 480°F | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | X | Y | Z | X | Y | Z | X | Y | Z | X | Y | Z | X | Y | Z |
| 1 | 3 | 2 | 4 | 3 | 2 | 4 | 3 | 2 | 4 | 3 | 2 | 4 | 4 | 2 | 5 |
| 2 | 3 | 2 | 4 | 3 | 2 | 4 | 3 | 2 | 4 | 4 | 2 | 5 | 4 | 2 | 5 |
| 3 | 3 | 2 | 5 | 3 | 2 | 5 | 4 | 2 | 5 | 4 | 2 | 5 | 4 | 2 | 5 |
| 4 | 4 | 2 | 5 | 4 | 2 | 5 | 4 | 2 | 5 | 5 | 2 | 6 | 5 | 2 | 6 |
| 5 | 4 | 3 | 5 | 4 | 3 | 5 | 4 | 3 | 6 | 5 | 3 | 6 | 5 | 3 | 7 |
| 6 | 4 | 3 | 5 | 4 | 3 | 6 | 4 | 3 | 6 | 5 | 3 | 6 | 5 | 3 | 7 |
| 8 | 4 | 3 | 6 | 5 | 3 | 7 | 6 | 3 | 7 | 6 | 3 | 8 | 6 | 4 | 8 |
| 10 | 4 | 3 | 6 | 5 | 3 | 7 | 6 | 3 | 7 | 6 | 3 | 8 | 6 | 4 | 8 |
| 12 | 4 | 3 | 6 | 6 | 4 | 8 | 6 | 4 | 8 | 7 | 4 | 9 | 7 | 4 | 10 |
| 14 | 5 | 4 | 6 | 6 | 4 | 8 | 7 | 4 | 8 | 7 | 4 | 9 | 7 | 4 | 10 |
| 16 | 5 | 4 | 6 | 6 | 4 | 9 | 7 | 4 | 9 | 8 | 4 | 10 | 8 | 5 | 10 |
| 18 | 5 | 4 | 6 | 7 | 4 | 9 | 7 | 4 | 9 | 8 | 4 | 10 | 8 | 5 | 10 |
| 20 | 5 | 4 | 7 | 7 | 4 | 9 | 8 | 4 | 10 | 9 | 4 | 10 | 9 | 5 | 10 |
| 24 | 5 | 4 | 7 | 7 | 4 | 9 | 8 | 4 | 10 | 10 | 4 | 12 | 10 | 5 | 12 |

## 8. MAINTENANCE

None required.

## 9. TECHNICAL SERVICES

Complete engineering services are available including: system layout, component design (CAD drawings), volume calculations, computerized heat load calculations, and start up training of installation crew. No charge (ordinarily) for technical assistance to specifying engineers / customers.

**Technical Sales Agents:**
Over 20 representatives service all of North America.
Call (800) 343-4188 for nearest agent.

## 10. AVAILABLE LITERATURE

- Product Brochure
- Engineering Manual
- Specifications from website / CD
- Cad drawings from website / CD
- Reference History Data

© 2002 DriTherm Incorporated

# POOLE ■ SHAFFERY

A T T O R N E Y S   A T   L A W

Writer's email: dpoole@pooleshaffery.com

June 20, 2014

***VIA FEDERAL EXPRESS***

Engineered Fluid Systems
1011 Parkside Drive
Wilson, NC 27896

Attention: Curt Winbourne

Re:     **NOTICE TO CEASE AND DESIST**
        **Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.***
        USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR

Dear Mr. Winbourne,

Please be advised that this law firm represents Gilsulate International, Inc. ("Gilsulate"). You are hereby given notice by Gilsulate that it has determined that certain information that you are currently publishing on Engineered Fluid Systems' website (and which may be contained in other literature that you are distributing) regarding DriTherm International, Inc.'s ("DriTherm") product "DriTherm" and Gilsulate's product "Gilsulate®500XR" is false and misleading and provides a basis for Gilsulate to prosecute claims for false advertising against Engineered Fluid Systems under Section 43(a) of the Lanham Act (15 U.S.C. §§ 1051 et seq.), and for trade libel, intentional interference with economic advantage, and violations of other state statutes.

On May 29, 2014, United States District Court Judge, the Hon. Ronald S.W. Lew, ordered the entry of Judgment for Permanent Injunction (the "Injunction") against DriTherm International, Inc. ("DTI"), and its owner, Jared Sandman, because of various representations that had been made by DTI, Sandman, and others on DTI's behalf regarding DriTherm's technical specifications, and physical and performance properties, which were determined to be unsupported by valid testing. Significantly, the representations regarding the installed density of 60-62 lbs/ft$^3$ and thermal conductivity of 0.58[1] at 100°F and 0.68 at 300°F were found to not be supported by expert testing of the DriTherm product. The Injunction specifically prohibits DTI and Sandman from making numerous other representations about DriTherm and about Gilsulate®500XR. A true and accurate copy of the Injunction is attached hereto.

The Injunction was issued as the result of a lawsuit filed in 2013 by Gilsulate after DTI and Sandman had failed to comply with cease and desist letters from two federal agencies (NASA and the U.S. Army Corps of Engineers) and from Gilsulate instructing DTI to stop misrepresenting certain matters regarding the DriTherm and Gilsulate®500XR products.

The Injunction issued against DTI and Sandman requires, among other things, that they may not represent the installed density of the DriTherm product to be less than 80 lbs/ft$^3$ (or 76 lbs/ft$^3$ for the Illinois-sourced material) and may not represent the thermal conductivity to be other than 0.99 at 100°F

---

[1] Measured in Btu-in/hr-ft$^2$°F

Engineered Fluid Systems
Notice to Cease & Desist
Re:  Gilsulate International, Inc. v. DriTherm International, Inc., etc., et al.
June 20, 2014
Page 2

and 1.36 at 300°F (or 0.87 at 100°F and 1.25 at 300°F for the Illinois-sourced material) without new, valid testing from an independent laboratory.

Although you are not a party to the Injunction, you are now hereby charged with knowledge that you are currently publishing certain information that was the subject of the federal lawsuit against DTI and Sandman, that has been stipulated by DTI and Sandman to be unsupported by valid testing, and that DTI and Sandman are specifically prohibited from continuing to publish under the terms of the Injunction.

Based on the information we have reviewed, we have determined that your website[2] currently contains links to pages with the following representations that are false and misleading and have been prohibited under the terms of the Injunction:

1.  _Dritherm: Pour In Place Insulation Product Overview_[3]

   • "form[s] a strong (12,000 PSF) block of cohesively bonded particles that retard air, water, moisture, passage to the carrier piping." (p. 4)

   • "40 cubic feet (2400 lbs) super sacks" (p. 5)

   • "45 bags per pallet/ 37.5 CF" (p. 5)

   • "used typically for piping in the service range of cryogenic (-273°) to + 480°F." (p. 6)

   • "DriTherm is approved for new construction by the following Federal Agencies

        Department of Defense

        Corps of Engineers FCGS 02695

        Naval Facilities Engineering Command NFGS 02694

        Department of the Air Force ETL 88-6

        Veterans Administration Section 750" (p. 7)

   • "Only pour in place insulation of its kind to pass a 14 day 10 ft head of water test with less than 0.02% moisture gain." (p. 7)

   • "Once installed and backfilled, a DriTherm installation will support up to 12,000 PSF, which is greater than most, if not all, natural soils." (p. 12)

   • The entire "testimonial" attributed to NASA (p. 14)

2.  _Dritherm Sample Specification_[4]

   • "INSULATION: Provide a Class C Heat Distribution system consisting of 100 percent chemically modified calcium carbonate particles, all less than 10 microns, which is

---

[2] Appearing at: http://www.engineeredfluidsystems.com/dri-therm-insulation (enclosed)
[3] Appearing at: http://www.engineeredfluidsystems.com/PDF/DriTherm/DriTherm%20Overview%20Presentation.pdf (enclosed)
[4] Appearing at: http://www.engineeredfluidsystems.com/PDF/DriTherm/DriTherm%20Sample%20Spec%20Sheet.doc (enclosed)

Engineered Fluid Systems
Notice to Cease & Desist
Re:  Gilsulate International, Inc. v. DriTherm International, Inc., etc., *et al.*
June 20, 2014
Page 3

        manufacturer certified to be Hydrophobic. The particles shall cohesively bond with each other to form a closed-cell compacted mass that will effectively isolate pipe surfaces from air, water, moisture, and chemicals." (p. 1)

- "Insulation manufacturer must provide documentation of completion of Corps of Engineers 10 ft. head of water test (14 days - less than 1% moisture gain)." (p. 2)

- "Physical Properties:

    1. Thermal Conductivity: K = 0.58 Btu/hr.ft$^2$ °F/in.  @ 100 °F K = 0.68 Btu/hr.ft$^2$ °F/in.  @ 300 °F

    2. Temperature Range: Cryogenic (-273 pF) to 480 °F (250pC)

    3. Bulk Density: 60 - 62 lbs. /cu. ft.

    4. Load Bearing: Up to 12,000 lbs. / sq. ft.

    5. Electrical Resistivity: R = 10$^{14}$ Ohms/cm/cm

    6. Dielectric Constant: 2.7

    7. Friction Coefficient: 0.35 plus or minus 0.04

    8. Waterproof: Certified 100% Hydrophobic

    9. Vapor Barrier: Closed cell insulation - vapor proof to -273 °F"  (p. 2)

        You are directed to immediately cease and desist from publishing the above enumerated statements and information on your website and in any other format. Please advise us of your corrective action to remove this information and your intent to cease distributing any materials containing such information or anything else prohibited by the terms of the Injunction by June 30, 2014.  If the specified information is not removed or we have not heard from you in this regard by June 30, 2014, Gilsulate intends to pursue all of its legal remedies to address the continued publication of false information.

        If you have any questions in this regard, please feel free to call the undersigned or Samuel Price at (213) 439-5390.

                      Sincerely,

                      David S. Poole

Enclosures (4)

cc:               Gilsulate International, Inc. (via email only)

courtesy copies to:    James C. Hildebrand, Esq.
                     Jared Sandman, DriTherm International, Inc.

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

GILSULATE INTERNATIONAL, INC., a California corporation,

                    Plaintiff,

vs.

DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,

                    Defendants.

Case No.: 2:13-cv-01012-RSWL-JPR
Judge: Hon. Ronald S.W. Lew

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

      Plaintiff Gilsulate International, Inc. and defendants Dritherm International, Inc. and Jared Sandman consent as follows:

      WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") is a California corporation with its principal place of business in the State of California;

      WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a New Jersey corporation with its principal place of business in the state of New Jersey;

WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the State of New York and is an owner, shareholder, officer, director, manager, representative, and/or agent of Defendant DTI;

WHEREAS, Gilsulate and DTI are competitors in the market for insulation and corrosion protection products, which are used to provide thermal insulation and corrosion protection for underground piping systems, geothermal distribution, storage tanks, and other metal structures;

WHEREAS, Gilsulate manufactures a product that is marketed and sold under the name "Gilsulate®500XR";

WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

WHEREAS, on February 12, 2013, Plaintiff commenced this action in which it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade libel, intentional interference with economic advantage, and for violations of California Business and Professions Code §§ 17200 and 17500 against Defendants;

WHEREAS, Plaintiff alleges in the action that Defendants have, among other things, made representations regarding the nature, character, and quality of DriTherm, including disseminating information regarding the product's technical specifications and performance capabilities, which are unsupported by valid testing;

WHEREAS, Defendants have advertised that the installed density of DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that installed densities of DriTherm are greater than the value advertised;

WHEREAS, Defendants have advertised that the thermal conductivity of DriTherm is K = 0.58 at 100°F and K = 0.68 at 300°F, but expert analysis in this case has determined that thermal conductivity of DriTherm is greater than the value advertised;

WHEREAS, Defendants have made other statements in their advertising materials and elsewhere about DriTherm and Gilsulate products that are not supported by the evidence in this case;

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

WHEREAS, Plaintiff and Defendants have entered into a separate written Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

WHEREAS, the parties' Settlement Agreement provides, among other things, that the Court may enter a permanent injunction against Defendants in a form similar in all material respects to the form of injunction attached as an exhibit to the parties' Stipulation for Entry of Judgment For  Permanent Injunction filed in this action; and

WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable harm:

Now therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this Court has jurisdiction over the subject matter of this action and over the parties hereto and ORDERS as follows:

1. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about DTI and the DriTherm product:

   a. Any INSTALLED DENSITY for DriTherm unless the specifications are supported by APPROPRIATE DENSITY TESTING.

   As used herein, INSTALLED DENSITY shall mean the density of DriTherm after installation and compaction under a minimum load of 400 pounds per square foot ("psf"), whether identified as "installed," "compacted," "in-use," "in-place," "in-situ," or any similar terminology.

   As used herein, APPROPRIATE DENSITY TESTING shall mean all of the following:

i.  Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

1.  Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

2.  Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard 0.1 ft$^3$ mold.  The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

3.  Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

ii.  Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b.  Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c.  Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

-  Quincy, IL:                76 lb/ft$^3$

- Marble Falls, TX: 80 lb/ft$^3$
- Marblehill, GA: 80 lb/ft$^3$
- Adams, MA: 80 lb/ft$^3$
- Lucerne Valley, CA: 80 lb/ft$^3$

d. The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e. Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

  i. Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

  ii. Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

  iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

f. Unless APPROPRIATE THERMAL CONDUCTIVITY
TESTING is performed within forty-five (45) days of the
issuance of this Injunction, the published values for THERMAL
CONDUCTIVITY of DriTherm shall be as follows:

- Quincy, IL:              0.87 Btu-in/hr-ft$^2$°F at 100°F
                            1.25 Btu-in/hr-ft$^2$°F at 300°F

- Marble Falls, TX:        0.99 Btu-in/hr-ft$^2$°F at 100°F
                            1.36 Btu-in/hr-ft$^2$°F at 300°F

- Marblehill, GA:          0.99 Btu-in/hr-ft$^2$°F at 100°F
                            1.36 Btu-in/hr-ft$^2$°F at 300°F

- Adams, MA:               0.99 Btu-in/hr-ft$^2$°F at 100°F
                            1.36 Btu-in/hr-ft$^2$°F at 300°F

- Lucerne Valley, CA:      0.99 Btu-in/hr-ft$^2$°F at 100°F
                            1.36 Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal
conductivity values determined by standard reference guides,
based on APPROPRIATE DENSITY TESTING.

g. The complete, unabridged reports from any testing used to
support representations of THERMAL CONDUCTIVITY shall
be in writing, and provided to GILSULATE within thirty (30)
days of making any representations of THERMAL
CONDUCTIVITY. Each report shall be submitted to
GILSULATE along with a cover letter identifying the specific
represented value that is supported by the testing report.

h. Any product performance characteristics for DriTherm that are
not determined through valid, appropriate testing, using a test
methodology established by a recognized testing agency or body,
provided that such a standardized testing methodology exists,
and performed by an independent, third party testing laboratory.

i. That DriTherm is to be load bearing, unless supported by
appropriate testing performed by an independent, third party
laboratory.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

j. That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

k. That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

l. That DriTherm is certified to be 100% hydrophobic.

m. That DriTherm is the most hydrophobic loose-fill product on the market.

n. That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

o. That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

q. That DriTherm is the only product of its kind rated for soils in below freezing conditions.

r. That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

s. That DriTherm provides or creates a positive vapor barrier.

t. That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

i. That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

j. False or misleading statements regarding the composition of Gilsulate®500XR.

k. That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

l. That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

m. That delivery times for Gilsulate®500XR are or may be an issue.

n. That Gilsulate®500XR has a large carbon footprint.

o. That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That the installed density of Gilsulate®500XR is not 40-42 lb/ft$^3$.

3. IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

a. That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b. That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

9

c. That DTI will provide revised product literature that fully complies with the Injunction;

d. That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e. That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f. That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4. IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5. The Court shall retain jurisdiction to enforce the terms of this Order.

The Clerk shall close this action.

IT IS SO ORDERED.

DATED: 5/29/2014

RONALD S.W. LEW
_____
HON. RONALD S.W. LEW
Senior U.S. District Judge

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

Case 2:13-cv-01012-RSWL-JPR   Document 88   Filed 09/08/15   Page 85 of 146   Page ID
#:2823

Home (/)  Product Lines  Industries Served (/industries-served)  Membership (/memberships)  About (/about)

fluid ()

Contact (/contact)



Case 2:13-cv-01012-RSWL-JPR   Document 88   Filed 09/08/15   Page 86 of 146   Page ID #:2824

# Introducing "DriWrap" Hydrophobic Aerogel Blanket Insulation



### DriWrap Hydrophobic Blanket Insulation

**DriWrap™ is a revolutionary hydrophobic aerogel type insulation and corrosion protection blanket designed for demanding applications. DriWrap™ is a super insulation with low thermal conductivity, low water absorption, and high strength. Corrosion under insulation (CUI) is reduced by creating a water resistant/vapor breathable barrier which allows moisture to evaporate away. Applications include thermal piping and tanks in above and below grade applications from -273°F up to 1250°F.**

### DriTherm Pour-In-Place Underground Insulation

**DriTherm™ is a field applied hydrophobic powder type insulation and corrosion protection product designed for below grade applications. First brought to market in 1967 as Protexulate, DriTherm™ remains one of the most cost effective and environmentally friendly methods of insulating underground thermal systems. Our self-compacting product insulates and protects all types of thermal systems from -273°F up to 480°F.**

### Dritherm Engineering Expertise

**Dritherm International Inc. provides industry leading engineering expertise. Dritherm Engineers are experienced researchers available for system design, product selection, and thermal investment payback consultations.**

Download additional information about DriWrap with the links provided
below:

DriWrap Data Sheet (http://www.dritherm.com/Literature/DriWrap
/DriWrap_Data_Sheet_0213.pdf)

DriWrap Sample Specification

DriWrap Installation Sheet (http://dritherm.com/Literature/DriWrap
/DriWrap_Installation_Sheet_1212.pdf)

DriWrap Accessories (http://dritherm.com/Html/Products/Accessories.html)

DriWrap Applications (http://dritherm.com/Html/Applications.html)

Download additional information about DriTherm® with the links
provided below:

DriTherm Data Sheet (http://www.dritherm.com/Literature/DriTherm
/DriTherm_Data_Sheet_1212.pdf)

DriTherm® Installation Sheet (http://www.engineeredfluidsystems.com/PDF/DriTherm
/DriTherm%20Installation%20Overview.pdf)

DriTherm Sample Specification (http://www.engineeredfluidsystems.com/PDF/DriTherm
/DriTherm%20Sample%20Spec%20Sheet.doc)

DriTherm Material Estimator (http://www.dritherm.com/Html/Material_Estimator.html)

DriTherm Product Comparator (http://www.dritherm.com/Html/Products
/DT_Product_Comparator.html)

DriTherm Applications (http://www.dritherm.com/Html/Applications.html)

Case Studies (http://www.dritherm.com/Html/Case_Studies.html)

DriTherm® Overview Presentation (http://www.engineeredfluidsystems.com/PDF/DriTherm
/DriTherm%20Overview%20Presentation.pdf)

## Links list

Home (/)

Product Lines (#)

Industries Served (/industries-

served)

Membership (/memberships)

About (/about)

Contact (/contact)

## Recent News

New Product Released
(/announcements/quisque-rutrum)
22-Mar-2011

Engineered Fluid Systems Launches
New Web Site (/announcements
/insulated-pipe-information-site)
21-Mar-2011

## Subscribe

Full Name

Email Address

Enter Word Verification in box below

Subscribe

## Follow Us

Facebook

(http://facebook.com

/adobebc)

Twitter (http://twitter.com

/adobebc)

Copyright © 2011 www.engineeredfluidsystems.com. All rights reserved.

Home (/)   Contact (/contact)   Web By Rusty Hook (http://www.rustyhook.net)



*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

# DriTherm®: Pour In Place Insulation
## Product Overview



Created: July 16, 2008

*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

# Contents



- About Us
- Product Overview
- DriTherm Features
- Installation Procedures
- FAQs
- Testimonials

# About Us

- DriTherm International Inc. was founded in 1991 as a manufacturer of pour in place underground insulation.

- In 1991 DriTherm International Inc. acquired the proprietary Protexulate formula manufactured since 1967 is and rebrands it as **_DriTherm®._**

- Over the next 4 years DriTherm International Inc. developed 5 manufacturing locations and enough capacity to supply North America and began exporting to South America, the Middle East, the Caribbean, Europe, North Africa, and Japan.

- Since 1991 DriTherm International Inc. has grown to become one of the largest distributor of pour-in-place insulation in the US with a customer base which includes 4 federal agencies, Colleges, Universities, Municipalities, Hospitals, and Heavy Industry.

- DriTherm maintains a global sales network with over 45 agencies.

- **Mission Statement:** To provide customers with the service they deserve, a product that meets their expectations, and in the most professional and expedient manner possible.

www.DriTherm.com



# Product Overview

- The function of DriTherm® is to provide both insulation and corrosion protection in a field applied system. DriTherm is installed directly from it's packaging around underground piping to form a dense, closed cell, barrier between the piping and the surrounding soil. Once installed to specified dimensions, the product self compacts with the weight of backfill to form a strong (12,000 PSF) block of cohesively bonded particles that retard air, water, moisture, passage to the carrier piping.

- Typical DriTherm® applications include High Pressure Steam/Condensate, Hot & Chill Water piping, and many unique applications where DriTherm's unique combination of hydrophobicity and insulating properties may be utilized.

- When compared to traditional products, a DriTherm system can be as much as 40% less in total installed cost, with no compromise in thermal efficiency or longevity.

**DRITHERM INTERNATIONAL INC.**

*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

# Product Overview cont.

- DriTherm is packaged in either 50 lb. bags or 40 cubic feet (2400 lbs) super sacks. Product packaged in 50 lb. bags are shipped on pallets (45 bags per pallet/ 37.5 CF). Palletized 50 lbs bags are typically used for small or hard to reach jobs where as the super sacks are used for larger jobs with access to moving equipment.



- DriTherm® is manufactured and stocked at (5) facilities located in California, Georgia, Illinois, Massachusetts, and Texas.  Typically a truckload of material can by shipped within 24 to 48hrs notice.

- Most common method of shipping is via flatbed trucks with LTL shipments typically going in closed van type trucks.



- DriTherm is completely **Nontoxic and environmentally safe**. Its primary ingredients are commonly used in food and medicine



*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

# DriTherm Features

- DriTherm is a dry, free flowing manufactured product that is formulated from a single inorganic compound and surface treated to allow each particle to become completely waterproof. It is inert, non-toxic, non-flammable, and completely free of asbestos. It does not require any mixing or curing whatsoever. It is completely compatible with all materials used typically for piping in the service range of **cryogenic (-273°) to + 480° F.**

- Once installed and backfilled DriTherm becomes a ***unique***, closed cell, barrier between the piping system and surrounding soil which effectively prevents water/moisture/air passage through it. Underground pipes/tanks are placed in a dry, stable environment.





# DriTherm Features cont.

- DriTherm is approved for new construction by the following Federal Agencies:

  > Department of Defense - Corps of Engineers - FCGS 02695
  >
  > Naval Facilities Engineering Command - NFGS 02694
  >
  > Department of the Air Force-ETL - 88-6
  >
  > Veterans Administration - Section 750



- High Thermal Efficiency 80 - 90% BTU retention.

- 25 to 40% lower system installed cost.

- Completely Nontoxic and Environmentally Safe.

- 100% self compacting: No mechanical compaction required.

-  Over 4 million cubic feet of same formula (DriTherm) product has been satisfactorily installed in North America since 1967 (40+ years)

- Only pour in place insulation of its kind to pass a 14 day 10 ft head of water test with less than 0.02% moisture gain.

# Installation Procedure

**Preparation:**

1. Excavate trench to minimum dimensions.
2. Install sub-drainage if specified.
3. Install anchors, guides, and temporary supports as required.
4. Install piping & test for leaks.
5. Compact and stabilize base of trench to assure support system.
6. Verify dimensional spacing to ensure proper envelop size.



DRITHERM INTERNATIONAL INC.

"The longest Continuously Manufactured Underground Pipe Insulation on the Market"

# Installation Procedure cont.

**Forming:**

1. Remove any temporary standing water in trench.

2. Prepare side forms to vertical height requirement of specifications.

3. Install and secure forms rigidly to horizontal width requirement of specifications.

4. Apply Bitumastic and mineral wool where required

5. Verify dimensional spacing to ensure proper envelop size.







"The longest Continuously Manufactured
Underground Pipe Insulation on the Market"

# Installation Procedure cont.



**Installation:**

1. Pour DriTherm to appropriate dimensions.

2. If necessary, knife DriTherm to eliminate all voids beneath pipes.

3. Cover DriTherm with polyfilm.

4. Carefully place empty bags/sacks over polyfilm.



www.DriTherm.com



*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

# Installation Procedure cont.

**Backfilling:**

1. Manually/ gently install first four to six inches of clean backfill from as close to pipe elevation as possible.

2. Mechanically or manually complete backfilling to specified dimensions.

3. If compaction of backfill is required, install a minimum of 8 – 12 inches of clean backfill before using mechanical compaction equipment.



**DRITHERM IS SELF COMPACTING. DO NOT MECHANICALLY COMPACT THE DRITHERM PRODUCT.**



"The longest Continuously Manufactured Underground Pipe Insulation on the Market"

# FAQ's

*How is thermal expansion handled in a DriTherm system?*

Thermal expansion occurs at elbows, expansion loops, and z bends, is handled through the use of a 4 - 6 lb. density mineral wool product, wrapped around the pipe at the point of lateral growth.

*Is DriTherm environmentally safe and non-hazardous to installers?*

DriTherm is completely environmentally safe and will not damage eco-systems when installed properly. DriTherm is non hazardous to installers. PPE - dust masks are recommended to be worn when installing because fine particles can be irritating.

*Can it be stored outdoors?*

Super Sacks can, because they are made from a tough, water resistant, polypropylene material. DriTherm packaged in 50 lb. paper bags should not be stored outside unless no rain is expected.

*How much weight will DriTherm support?*

Once installed and backfilled, a DriTherm installation will support up to 12,000 PSF, which is greater than most, if not all, natural soils.



DRITHERM INTERNATIONAL INC.

*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

# FAQ's cont.

### Can DriTherm be used to repair other types of systems?

Yes. Consult DriTherm, Inc. for full details and information. Generally, on a pre-insulated type of system, the outer jacket is removed and the carrier pipe repaired. Then, with both ends plugged up with refractory cement, the DriTherm is installed over the carrier pipe to minimum dimensions, continuing over the outer jacket of the pre-insulated system for several feet.

### Is Cathodic Protection required with a DriTherm system?

No. DriTherm has an Electrical Resistivity of 10 -14 OHMS/CM, which is the same value as most plastics used for electrical resistance. Because it is closed cell, no air, water, or moisture will pass through a properly installed DriTherm installation. Corrosion cannot occur in the absence of air, water, moisture, or electric current.

### How much labor is required for a typical DriTherm installation?

Using 50 lb. bags a 3 - 4 man team can usually install 750 - 900 cubic feet of product per day, including the placement of the forms (dropped in place), polyfilm (rolled across top), and layer of empty bags. Using Super Sacks, a 2 man crew can install 1000 - 1200 cubic feet per day depending on site conditions and access.

 www.DriTherm.com



"The longest Continuously Manufactured
Underground Pipe Insulation on the Market"

# Testimonials

- *"This is to confirm the information I relayed to you concerning the installation of approximately 2000 lineal feet of high pressure steam line from our building 27 to the Network Training and Test Facility (NTTF). This installation has been completely satisfactory and, in fact, during the 1976 thermal scan of the Goddard Space Flight Center, this particular length of steam line was not evident on the photographs, thereby attesting to the insulation qualities of the material used."* **NASA – Greenbelt, MD**

- *"Since 1993 DriTherm has been installed on our underground hot oil, steam and condensate piping based on the recommendations of a corrosion engineer at a local firm. Prior to the installation of DriTherm, our underground piping was installed using pre-insulated systems, as well as field applied insulation, with mixed results. The Authority has installed over 20,000 CF of DriTherm on over 2,500 LF of piping since being introduced to the product. We feel that it is a product that will prevent corrosion and provide thermal efficiency when installed properly."* **New York Power Authority – White Plains, NY**

- *"The excavated lines were installed about five years earlier using 'DriTherm' as the insulation/corrosion protection system. We were surprised, and delighted, to discover the condition was 'like new", with no surface corrosion on either line."* **Sandia National Laboratories – Albuquerque, NM**

- *"We feel that the DriTherm system is cost effective as well as easy and fast to install. It has performed well on the installations that we have."* **Department of the Army – Fort Knox, KY**



# Testimonials

- *"We used about 10,000 cubic feet of Dritherm insulation supplied in super sacks at the ConocoPhillips Borger Texas Refinery.  Changes in a process upgrade called for heat tracing of 70,000 feet of existing piping.  Portions of this piping were underground—especially at road crossings.  For the underground portions we had to uncover the existing lines, install and test the heat trace, then put on an insulation and backfill the trench.  The Dritherm helped us immensely by limiting the amount of time we had to keep the trench open.  We were able to schedule shipments so that the trucks would pull in right when we were ready to install the insulation.  We simply swung the super sacks over the trenches and dumped in the Dritherm.  Leveled off the top and laid the bags on top.  Then we covered it up.  The Dritherm proved to be a real cost saver for us.  The time to install was much shorter than if conventional insulation was used.  We also didn't have to worry about having the right size for the different pipe sizes as Dritherm is definitely one size fits all.  I had never heard of Dritherm before this use.  More or less stumbled on it during a web search.  The local sales rep then came out and explained the material to us as well as the methods of installation.  Using Dritherm was definitely a good move."* **Scott Brinkmeyer, P.E. 2/8/08**



*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

# End of Presentation

For more information please visit <u>www.dritherm.com</u>

Or call us direct at 1-800-343-4188

 www.DriTherm.com

# DRITHERM INTERNATIONAL INC.

*"The longest Continuously Manufactured Underground Pipe Insulation on the Market"*

## MATERIAL SAFETY DATA SHEET

### SECTION 1 - PRODUCT IDENTIFICATION AND USE

| | | | |
|---|---|---|---|
| Manufacturer's Name: | DriTherm International, Inc. | Telephone # | (973) 808-2255 |
| Address: | 339 Changebridge Road – Suite 1B<br>Pine Brook, NJ 07058-9516 | CAS # | 1317-650-3 |
| Product: | DriTherm (Modified Calcium Carbonate) | | |
| Chemical Formula: | CaCO3 | | |

### SECTION 2 - HAZARDOUS INGREDIENTS

Hazardous Materials Identification System

| Category | Rating |
|---|---|
| Health Hazard | 1 |
| Flammability Hazard | 0 |
| Reactivity Hazard | 0 |
| Personal Protection | E |

| Ingredients | Percentage (w/w) | CAS Number | Exposure Limits | |
|---|---|---|---|---|
| Calcium Carbonate | >95-98 | 1317-650-3 | ACGIHTLV: | Total Dust 10.0 mg./m3<br>Respirable dust<br>5.0 mg / m3 |
| | | | OSHAPEL: | Total dust 15 mg/m3<br>TWA Respirable dust<br>5.0 mg/m3 TWA |
| Magnesium Carbonate | 1-2 | 546-93-0 | | |
| Silica, quartz | <0.2 | 1406-60-7 | ACGIHTLV:<br>OSHAPEL: | 0.1 mg/m3 respirable<br>0.1 mg/m3 Respirable<br>TWA |

This product is surface treated with stearic acid (CAS#57-11-4)

### SECTION 3 - PHYSICAL AND CHEMICAL CHARACTERISTICS

| | | |
|---|---|---|
| Density (dry): 2.71 g/ml | Specific Gravity (wet): N/A | Reactivity in Water: NONE |
| Solubility in Water: NEGLIGIBLE | Appearance and Odor: WHITE POWDER | |

### SECTION 4 - FIRE AND EXPLOSION HAZARD DATA

| | | |
|---|---|---|
| Flash Point: NON-FLAMMABLE | Special Firefighting Procedures: NONE | Unusual Fire and Explosion Hazards: NONE |

### SECTION 5 - REACTIVITY DATA

| | | |
|---|---|---|
| Stability: STABLE | Hazardous Decomposition Products: NONE | Hazardous Polymerization: WILL NOT OCCUR |

## MATERIAL SAFETY DATA SHEET

### SECTION 6 - TOXICOLOGICAL PROPERTIES AND HEALTH HAZARD DATA

EFFECTS AND HAZARDS OF ACUTE OVEREXPOSURE

| | |
|---|---|
| Effects and Hazards of Inhalation | Can be irritating to the respiratory tract. Symptoms include sneezing and slight nose irritation. |
| Effects and Hazards of Eye Contact | Mild irritation. Symptoms include watering and irritation. |
| Effects and Hazards of Skin Contact | No effect |
| Effects and Hazards of Ingestion | Ingestion of very large quantities may result in intestinal obstruction and/or constipation. Considered to be of very low toxicity. |

EFFECTS AND HAZARDS OF CHRONIC EXPOSURE

IARC found limited evidence for human carcinogenicity of the crystalline silica ingredient only. Limited evidence means a "casual" interpretation is credible, but alternative explanations such as chance, bias or confounding effects could not be adequately excluded. The DriTherm® product typically contains less than 1% by weight of crystalline silica. At the present level of expertise of medical research, there is no direct evidence that crystalline silica at these levels in limestones constitutes a health risk.

### SECTION 7 - PREVENTATIVE MEASURES

| | |
|---|---|
| HANDLING | If engineering controls and work practices are not effective in controlling exposure to the material, then wear suitable personal protective equipment including NIOSH or OSHA approved dust respirators. |
| STORAGE CONDITIONS | Store in closed containers in a dry place separate from incompatible materials. |
| SPILL & LEAK PROCEDURES | Respiratory protection should be worn by those in cleanup operation to protect from airborne dust. Measures should be taken to reduce airborne dust during cleanup operations. |
| DISPOSAL | Calcium carbonate is not a hazardous material under RCRA and may be disposed of as industrial waste. |

### SECTION 8 - FIRST AID MEASURES

| | |
|---|---|
| TREATMENT FOR INHALATION (Breathing) | Remove source of contamination or move victim to fresh air. Obtain medical advice if required. |
| TREATMENT FOR EYE CONTACT | Immediately flush the contaminated eye(s) with lukewarm gently flowing water, for 10 minutes, by the clock, holding the eyelid(s) open. If irritation persists, obtain medical advice immediately. |
| TREATMENT FOR SKIN CONTACT | If irritation occurs, flush area with lukewarm, gently running water for at least 10-minutes. If irritation persists, obtain medical advice immediately. |
| TREATMENT FOR INGESTION (Swallowing) | Never give anything by mouth if victim is rapidly losing consciousness or is unconscious or convulsing. Rinse mouth thoroughly with water. DO NOT INDUCE VOMITING. Have victim drink 8 to 10 oz. (240 to 300 ml) of water to dilute material in stomach. Obtain medical advice immediately. |

### SECTION 9 - PREPARATION DATE OF MSDS

| | |
|---|---|
| Prepared by: M.C. Musto<br>Date: Nov 15, 2005 | The information contained herein has been compiled by technically knowledgeable personnel from sources which DriTherm International, Inc. considers reliable. This information is accurate to the best of our knowledge. Before using this product the foregoing MSDS and the product label should be read carefully. The information contained herein relates only to the specific material indicated above and does not relate to use in combination with any other material or in any process. Customers are encouraged to conduct their own tests concerning the use of this product as the manner and conditions of use and handling may involve additional considerations. DriTherm International, Inc. assumes no responsibility for any damages, losses, injuries or consequential damages which may result from the use or misuse of this product and the recipient assumes all such risks. |

 www.DriTherm.com

# SAMPLE SPECIFICATION

## SECTION 15261

## UNDERGROUND PIPE INSULATION

**Part-1      GENERAL**

**1.01        SECTION INCLUDES**

A.      Mineral powder pipe insulation

B.      Accessories

**1.02        SUBMITTALS**

A.      Product Data: Submit data on Hydrophobic underground pipe insulation.

B.      Manufacturer's Installation Instructions.

**1.03        QUALITY ASSURANCE**

A.      Advise insulation manufacturer of time and work schedule sufficiently in advance to allow for observation.

B.      Consult insulation manufacturer's technical manual for additional information.

**1.04        QUALIFICATIONS**

A.      Installer:  Company specializing in the work of this section with minimum three years experience.

**1.05        DELIVERY, STORAGE AND HANDLING**

A.      Deliver, store and protect products.

**PART-2      PRODUCTS**

**2.01        ACCEPTABLE MANUFACTURER:**
         DriTherm International Inc.
         2500 Plaza 5
         Harborside Financial Center
         Jersey City, NJ 07311
         (800)343-4188 / (973)808-2255 / www.dritherm.com

**2.02        INSULATION**

A.      Provide a Class C Heat Distribution system consisting of 100 percent chemically modified calcium carbonate particles, all less than 10 microns, which is manufacturer certified to be Hydrophobic. The particles shall cohesively bond with each other to form a closed-cell compacted mass that will effectively isolate pipe surfaces from air, water, moisture, and chemicals.

B.      Material shall be inert, compatible with metals and plastics, and shall not be affected by normal soil constituents.

UNDERGROUND PIPE INSULATION      15261-1

# SAMPLE SPECIFICATION

C.      Material shall be non-flammable, non-toxic, and meet OSHA safety standards.

D.      Insulation manufacturer must provide documentation of completion of Corps of Engineers 10 ft. head of water test (14 days - less than 1% moisture gain).

E.      Insulation must be free flowing and self-compacting.

F.      Physical Properties:

1.      Thermal Conductivity:    K = 0.58 Btu/hr.ft$^2$ °F/in.  @ 100 °F
                                 K = 0.68 Btu/hr.ft$^2$ °F/in.  @ 300 °F

2.      Temperature Range:       Cryogenic (-273 °F) to 480 °F (250 °C)

3.      Bulk Density:            60 - 62 lbs. /cu. ft.

4.      Load Bearing:            Up to 12,000 lbs. / sq. ft.

5.      Electrical Resistivity:  R = 10$^{14}$ Ohms/cm/cm

6.      Dielectric Constant:     2.7

7.      Friction Coefficient:    0.35 plus or minus 0.04

8.      Waterproof:              Certified 100% Hydrophobic

9.      Vapor Barrier:           Closed cell insulation - vapor proof to -273 °F

## 2.03      ACCESSORIES

A.      Mineral Fiber Cushion: Flexible type, 4 – 6 lb. density – mineral wool or inorganic glass. Thickness as recommended by insulation manufacturer.

B.      Polyethylene Sheet:   4 - 6 mil thick

C.      Coatings:

1.      For pipe temperature up to 400 degrees F: Kop-Coat Super Service Black Bitumastic coal tar.

2.      For pipe temperatures 400 degrees F and higher: Silicone Grease.

## PART-3      EXECUTION

## 3.01      EXAMINATION

A.      Verify trenching dimension including clearances under the piping are as required to receive the work.

B.      Verify the base of the trench contains un-disturbed earth. If fill dirt is required it must be compacted to resemble original trench base conditions. Sand / crushed stone / pea gravel is not allowed as trench base material or backfill.

UNDERGROUND PIPE INSULATION       15261-2

2

# SAMPLE SPECIFICATION

C.        Verify piping is supported, anchored and guided as specified

D.        Verify piping systems have been tested and accepted.

**3.02      INSTALLATION - GENERAL**

A.        Install products in accordance with manufacturer's recommendations.

**3.04      MINERAL FIBER CUSHION**

A.        Where expansion loops or changes in pipe direction are provided to allow for pipe expansion, wrap the piping at the point of movement with 4 to 6 lb. density mineral fiber cushion to allow free movement of the pipes within the cushion. Place the fiber cushion so as to not come in contact with earth, pipe supports, anchors, guides, or any other surface that makes direct contact with the surrounding soil. Tape / tie mineral fiber cushion in place.

B.        Follow the insulation manufacturer's recommendations as to extent and thickness of coverage.

C.        Insulation dimensions are increased in mineral fiber cushion areas except for the dimension between multiple pipes. Consult manufacturer for details.

**3.05      COATINGS**

A.        Apply coatings to supports, manhole face, concrete, metal and other materials in contact with the piping system that extend through and beyond the insulation, to prevent entrance of water by capillary action. Apply coating to concrete surfaces used in conjunction with pipe supports, anchors and guides in direct contact with the insulation. Apply coating just prior to placing the insulation. Coating must be sufficiently tacky to allow the insulation to bond to it.

**3.06      INSULATION**

A.        Except for pipes within manholes and valve pits, encase all underground piping with specified insulation.

B.        Pour the insulation within the drywall forms. Make certain no voids exist beneath closely spaced pipes – knife if necessary. Provide additional support and rigidity to the forms by placing earth backfill on the outside of the forms alternately with the placing of the insulation.

C.        Once the insulation has been installed to specified dimensions, place polyethylene sheet over the top of the material. Place empty insulation bags or sacks over the polyfilm to protect the material during the backfilling operation. Leave forms in place.

END OF SECTION

UNDERGROUND PIPE INSULATION      15261-3

3

# POOLE ■ SHAFFERY

A T T O R N E Y S   A T   L A W

Writer's email: dpoole@pooleshaffery.com

June 20, 2014

**_VIA FEDERAL EXPRESS_**

All American Supply
301 Eubank SE
Albuquerque, NM 87123

Attention: Amy Adams

Re:     **NOTICE TO CEASE AND DESIST**
         **_Gilsulate International, Inc. v. Dritherm International, Inc., etc., et al._**
         USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR

Dear Ms. Adams,

Please be advised that this law firm represents Gilsulate International, Inc. ("Gilsulate"). You are hereby given notice by Gilsulate that it has determined that certain information that you are currently publishing on All American Supply's website (and which may be contained in other literature that you are distributing) regarding DriTherm International, Inc.'s ("DriTherm") product "DriTherm" and Gilsulate's product "Gilsulate®500XR" is false and misleading and provides a basis for Gilsulate to prosecute claims for false advertising against All American Supply under Section 43(a) of the Lanham Act (15 U.S.C. §§ 1051 et seq.), and for trade libel, intentional interference with economic advantage, and violations of other state statutes.

On May 29, 2014, United States District Court Judge, the Hon. Ronald S.W. Lew, ordered the entry of Judgment for Permanent Injunction (the "Injunction") against DriTherm International, Inc. ("DTI"), and its owner, Jared Sandman, because of various representations that had been made by DTI, Sandman, and others on DTI's behalf regarding DriTherm's technical specifications, and physical and performance properties, which were determined to be unsupported by valid testing. Significantly, the representations regarding the installed density of 60-62 lbs/ft$^3$ and thermal conductivity of 0.58[1] at 100°F and 0.68 at 300°F were found to not be supported by expert testing of the DriTherm product. The Injunction specifically prohibits DTI and Sandman from making numerous other representations about DriTherm and about Gilsulate®500XR. A true and accurate copy of the Injunction is attached hereto.

The Injunction was issued as the result of a lawsuit filed in 2013 by Gilsulate after DTI and Sandman had failed to comply with cease and desist letters from two federal agencies (NASA and the U.S. Army Corps of Engineers) and from Gilsulate instructing DTI to stop misrepresenting certain matters regarding the DriTherm and Gilsulate®500XR products.

The Injunction issued against DTI and Sandman requires, among other things, that they may not represent the installed density of the DriTherm product to be less than 80 lbs/ft$^3$ (or 76 lbs/ft$^3$ for the Illinois-sourced material) and may not represent the thermal conductivity to be other than 0.99 at 100°F

---

[1] Measured in Btu-in/hr-ft$^2$°F

All American Supply
Notice to Cease & Desist
Re:  Gilsulate International, Inc. v. DriTherm International, Inc., etc., et al.
June 20, 2014
Page 2

and 1.36 at 300°F (or 0.87 at 100°F and 1.25 at 300°F for the Illinois-sourced material) without new, valid testing from an independent laboratory.

Although you are not a party to the Injunction, you are now hereby charged with knowledge that you are currently publishing certain information that was the subject of the federal lawsuit against DTI and Sandman, that has been stipulated by DTI and Sandman to be unsupported by valid testing, and that DTI and Sandman are specifically prohibited from continuing to publish under the terms of the Injunction.

Based on the information we have reviewed, we have determined that your website[2] currently contains links to pages with the following representations that are false and misleading and have been prohibited under the terms of the Injunction:

1.  *DriTherm Specification Data Sheet*[3]

   • "It is recommended for application temperatures between –275°F and +480°F"

   • "PHYSICAL PROPERTIES

      · Thermal Conductivity: (ASTM C 177) K=0.58 btu/hr/ft$^2$ °F/ in (100°F) and K=0.68 at 300°F

      · Temperature Range: -273°F to 480°F (250°C)

      · Bulk Density: 60 – 62 lbs. per cubic feet (CF) installed

      · Load Bearing: up to 12,000 lbs. per square feet

      · Electrical Resistivity: R=10 14 OHMS-CM

      · Dielectric Constant: 2.7

      · Friction Coefficient: 0.35 ± 0.04

      · Water / Moisture Resistance: Withstands 10 ft. hydrostatic head of water for minimum of 14 days with moisture gain less than 0.02%"

   • "Each DriTherm particle is certified 100% Hydrophobic."

   • "Federal Approval: DriTherm has been approved for new construction on military bases and federal institutions by the following user agencies:

      · Corps of Engineers

      · Naval Facilities Engineering

      · Department of the Air Force

      · Veterans Administration"

   • "DriTherm is packaged in forty-five 50-lb. bags per pallet (37.5 CF).  It is also

---

[2] Appearing at: http://allamericansupply.net/products.html (enclosed)
[3] Appearing at: http://allamericansupply.net/pdf/dritherm.pdf (enclosed)

All American Supply
Notice to Cease & Desist
Re:  Gilsulate International, Inc. v. DriTherm International, Inc., etc., *et al.*
June 20, 2014
Page 3

                         packaged in 40 CF Super Sacks which have a bottom discharge chute for quick dispensing."

       You are directed to immediately cease and desist from publishing the above enumerated statements and information on your website and in any other format. Please advise us of your corrective action to remove this information and your intent to cease distributing any materials containing such information or anything else prohibited by the terms of the Injunction by June 30, 2014.  If the specified information is not removed or we have not heard from you in this regard by June 30, 2014, Gilsulate intends to pursue all of its legal remedies to address the continued publication of false information.

       If you have any questions in this regard, please feel free to call the undersigned or Samuel Price at (213) 439-5390.

                    Sincerely,

                    David S. Poole

Enclosures (3)

cc:               Gilsulate International, Inc. (via email only)

courtesy copies to:    James C. Hildebrand, Esq.
                          Jared Sandman, DriTherm International, Inc.

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GILSULATE INTERNATIONAL, INC., a California corporation,<br><br>          Plaintiff,<br><br>   vs.<br><br>DRITHERM INTERNATIONAL, INC., a New Jersey corporation; JARED SANDMAN, an individual; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.: 2:13-cv-01012-RSWL-JPR<br>Judge: Hon. Ronald S.W. Lew<br><br>**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION** |

      Plaintiff Gilsulate International, Inc. and defendants Dritherm International, Inc. and Jared Sandman consent as follows:

      WHEREAS, Plaintiff GILSULATE INTERNATIONAL, INC. ("Gilsulate" or "Plaintiff") is a California corporation with its principal place of business in the State of California;

      WHEREAS, Defendant DRITHERM INTERNATIONAL, INC. ("DTI") is a New Jersey corporation with its principal place of business in the state of New Jersey;

WHEREAS, Defendant JARED SANDMAN ("Sandman") is a citizen of the State of New York and is an owner, shareholder, officer, director, manager, representative, and/or agent of Defendant DTI;

WHEREAS, Gilsulate and DTI are competitors in the market for insulation and corrosion protection products, which are used to provide thermal insulation and corrosion protection for underground piping systems, geothermal distribution, storage tanks, and other metal structures;

WHEREAS, Gilsulate manufactures a product that is marketed and sold under the name "Gilsulate®500XR";

WHEREAS, DTI's product is marketed and sold under the name "DriTherm";

WHEREAS, on February 12, 2013, Plaintiff commenced this action in which it asserts claims for false advertising under Section 43 (a) of the Lanham Act, trade libel, intentional interference with economic advantage, and for violations of California Business and Professions Code §§ 17200 and 17500 against Defendants;

WHEREAS, Plaintiff alleges in the action that Defendants have, among other things, made representations regarding the nature, character, and quality of DriTherm, including disseminating information regarding the product's technical specifications and performance capabilities, which are unsupported by valid testing;

WHEREAS, Defendants have advertised that the installed density of DriTherm is 60-62 lbs/ft$^3$, but expert analysis in this case has determined that installed densities of DriTherm are greater than the value advertised;

WHEREAS, Defendants have advertised that the thermal conductivity of DriTherm is K = 0.58 at 100°F and K = 0.68 at 300°F, but expert analysis in this case has determined that thermal conductivity of DriTherm is greater than the value advertised;

WHEREAS, Defendants have made other statements in their advertising materials and elsewhere about DriTherm and Gilsulate products that are not supported by the evidence in this case;

WHEREAS, Plaintiff and Defendants have entered into a separate written Settlement Agreement and Release ("Settlement Agreement") to resolve this action;

WHEREAS, the parties' Settlement Agreement provides, among other things, that the Court may enter a permanent injunction against Defendants in a form similar in all material respects to the form of injunction attached as an exhibit to the parties' Stipulation for Entry of Judgment For Permanent Injunction filed in this action; and

WHEREAS, if an injunction is not issued, Plaintiff may suffer irreparable harm:

Now therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this Court has jurisdiction over the subject matter of this action and over the parties hereto and ORDERS as follows:

1. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about DTI and the DriTherm product:

   a. Any INSTALLED DENSITY for DriTherm unless the specifications are supported by APPROPRIATE DENSITY TESTING.

   As used herein, INSTALLED DENSITY shall mean the density of DriTherm after installation and compaction under a minimum load of 400 pounds per square foot ("psf"), whether identified as "installed," "compacted," "in-use," "in-place," "in-situ," or any similar terminology.

   As used herein, APPROPRIATE DENSITY TESTING shall mean all of the following:

i.  Testing performed by an independent, third party testing laboratory that is certified or accredited to perform the test methods being performed, irrespective of the modifications to the ASTM standard:

1.  Testing of DriTherm in accordance with ASTM D1895, method C, modified to the equivalent of 400 psf;

2.  Testing of DriTherm in accordance with ASTM D4253 (maximum) Method 1A and ASTM D4254 (minimum) Method A using the standard 0.1 ft$^3$ mold. The only modification to these test standards will be the use of a non-woven geotextile placed beneath the surcharge base plate to prevent loss of the sample during the vibration phase of the ASTM D4253 test. The advertised or specified INSTALLED DENSITY must not be less than the value calculated for an 85% density index (using ASTM D4253, equation 6) where the minimum and maximum densities are the results of the ASTM D4254 and ASTM D4253 tests, respectively; or

3.  Testing of DriTherm in accordance with ASTM D2435, at the resulting density of the material after the application of a surcharge load of not less than 400 psf.

ii.  Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

b.  Defendants are entitled to advertise additional densities provided such densities are supported by APPROPRIATE DENSITY TESTING adjusted for additional loads.

c.  Unless APPROPRIATE DENSITY TESTING is performed within forty-five (45) days of the issuance of this Injunction, the published values for INSTALLED DENSITY of DriTherm shall not be represented as less than:

- Quincy, IL:  76 lb/ft$^3$

-   Marble Falls, TX:          80 lb/ft$^3$
-   Marblehill, GA:            80 lb/ft$^3$
-   Adams, MA:                 80 lb/ft$^3$
-   Lucerne Valley, CA:        80 lb/ft$^3$

d. The complete, unabridged reports from any testing used to support representations of INSTALLED DENSITY or any other densities shall be provided to GILSULATE in writing within thirty (30) days of making any such representations. Each report shall be submitted to GILSULATE along with a cover letter identifying the specific represented value that is supported by the testing report.

e. Any THERMAL CONDUCTIVITY value for DriTherm unless it is specific to each source of the DriTherm material and is determined through APPROPRIATE THERMAL CONDUCTIVITY TESTING.

As used herein, THERMAL CONDUCTIVITY shall mean the thermal conductivity value of the DriTherm material at its INSTALLED DENSITY, represented in units of Btu-in/hr-ft$^2$°F at approximately 100°F and 300°F.

As used herein, APPROPRIATE THERMAL CONDUCTIVITY TESTING shall mean:

i.  Testing performed by an independent, third party testing laboratory that is certified or accredited in the actual test method that is to be performed.

ii. Testing of samples from each source of the DriTherm material, which samples are to be randomly selected from production runs of DriTherm that have been packaged for sale.

iii. Testing performed in accordance with ASTM C177, at the INSTALLED DENSITY as determined by APPROPRIATE DENSITY TESTING as set forth herein.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

f.  Unless APPROPRIATE THERMAL CONDUCTIVITY
    TESTING is performed within forty-five (45) days of the
    issuance of this Injunction, the published values for THERMAL
    CONDUCTIVITY of DriTherm shall be as follows:

-   Quincy, IL:              0.87 Btu-in/hr-ft$^2$°F at 100°F
                             1.25 Btu-in/hr-ft$^2$°F at 300°F
-   Marble Falls, TX:        0.99 Btu-in/hr-ft$^2$°F at 100°F
                             1.36 Btu-in/hr-ft$^2$°F at 300°F
-   Marblehill, GA:          0.99 Btu-in/hr-ft$^2$°F at 100°F
                             1.36 Btu-in/hr-ft$^2$°F at 300°F
-   Adams, MA:               0.99 Btu-in/hr-ft$^2$°F at 100°F
                             1.36 Btu-in/hr-ft$^2$°F at 300°F
-   Lucerne Valley, CA:      0.99 Btu-in/hr-ft$^2$°F at 100°F
                             1.36 Btu-in/hr-ft$^2$°F at 300°F

Alternatively, Defendants can advertise estimated thermal
conductivity values determined by standard reference guides,
based on APPROPRIATE DENSITY TESTING.

g.  The complete, unabridged reports from any testing used to
    support representations of THERMAL CONDUCTIVITY shall
    be in writing, and provided to GILSULATE within thirty (30)
    days of making any representations of THERMAL
    CONDUCTIVITY.  Each report shall be submitted to
    GILSULATE along with a cover letter identifying the specific
    represented value that is supported by the testing report.

h.  Any product performance characteristics for DriTherm that are
    not determined through valid, appropriate testing, using a test
    methodology established by a recognized testing agency or body,
    provided that such a standardized testing methodology exists,
    and performed by an independent, third party testing laboratory.

i.  That DriTherm is to be load bearing, unless supported by
    appropriate testing performed by an independent, third party
    laboratory.

**JUDGMENT FOR STIPULATED PERMANENT INJUNCTION**

1
2
3

j.  That DriTherm is designed to support underground piping without the need for permanent supports, unless supported by appropriate testing performed by an independent, third party laboratory and analysis.

4
5

k.  That DriTherm has superior thermal insulating properties as compared to Gilsulate®500XR.

6
7

l.  That DriTherm is certified to be 100% hydrophobic.

8
9

m. That DriTherm is the most hydrophobic loose-fill product on the market.

10
11
12

n.  That the so-called "10-Foot Head of Water Test" was devised by the Army Corps of Engineers or is recognized by the Army Corps of Engineers, any federal agency, or any other recognized testing body or organization as a testing standard.

13
14
15

o.  That the DriTherm formula sold as of the date of this Injunction meets the current UFGS standard for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

16
17
18
19

p.  That DriTherm meets non-existent, abandoned, or obsolete classification specifications, including, but not limited to UFGS letter classification system or soil conditions, NFGS, outdated UFGS, FCGS, ETL standards, or VA standards.

20
21

q.  That DriTherm is the only product of its kind rated for soils in below freezing conditions.

22
23
24

r.  That DriTherm is suitable for use in below-freezing or cryogenic applications, unless supported by appropriate testing performed by an independent, third party laboratory.

25

s.  That DriTherm provides or creates a positive vapor barrier.

26
27

t.  That DriTherm is an equal alternative to or replacement for Gilsulate®500XR.

28

u. That DriTherm is approved by the Department of Defense, the Veterans Administration, the Army Corps of Engineers, any military branch, or any other federal government agency.

v. That the National Aeronautic and Space Administration (NASA) has endorsed or otherwise attested to the insulation qualities of DriTherm.

2. DTI, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation therewith, are hereby enjoined from stating or communicating, in the advertising or promotional materials or activities for DTI, any of the following claims in form or in substance about Gilsulate or the Gilsulate®500XR product:

a. Any representations regarding the performance properties of Gilsulate®500XR that are false or misleading.

b. That the Gilsulate product has changed formula since being introduced in the marketplace.

c. That Gilsulate's customers do not have any way of knowing the track record of the Gilsulate product they receive, or when it was invented.

d. That the Gilsulate product has large inter-particle friction which allows moisture ingress and requires mechanical compaction.

e. That Gilsulate®500XR absorbs water.

f. That Gilsulate®500XR is not waterproof and relies on the heat of the piping system to remain dry.

g. That Gilsulate®500XR is or has been reported to gain up to 4.54% moisture when exposed to wet conditions.

h. That the DriTherm is safer than the Gilsulate product.

JUDGMENT FOR STIPULATED PERMANENT INJUNCTION

i. That Gilsulate®500XR contains fractured silica, harsh chemicals, or fillers that may cause skin abrasions or respiratory problems.

j. False or misleading statements regarding the composition of Gilsulate®500XR.

k. That Gilsulate®500XR is difficult to rod vibrate or otherwise install.

l. That Gilsulate®500XR requires twice the labor and time to properly install as compared to DriTherm.

m. That delivery times for Gilsulate®500XR are or may be an issue.

n. That Gilsulate®500XR has a large carbon footprint.

o. That Gilsulate®500XR does not meet the current UFGS for Pre-Engineered Underground Heat Distribution Systems (33.61.13) (effective August 2010).

p. That the installed density of Gilsulate®500XR is not 40-42 lb/ft$^3$.

3. IT IS FURTHER ORDERED THAT, within ten (10) days of the issuance of this Injunction, DTI will provide written notification to all independent distributors identified in the Parties' Settlement Agreement, by certified mail or similar method requiring a return receipt, as follows:

a. That DTI has been enjoined by the United Stated District Court for the Central District of California from engaging in certain conduct and making certain representations regarding DriTherm and Gilsulate®500XR, along with which a copy of this Injunction issued by the Court is to be provided;

b. That, as a condition of distributing or selling the product, the distributors, representatives, and sales persons must fully comply with all of the terms of the Injunction;

9

c.  That DTI will provide revised product literature that fully complies with the Injunction;

d.  That the distributors, representatives, and sales persons must immediately destroy all printed materials that do not fully comply with the terms of the Injunction;

e.  That the distributors, representatives, and sales persons must immediately remove any information about DriTherm or Gilsulate products from the distributors', representatives', or sales persons' websites, and replace it only with newly prepared information to be provided by DTI; and

f.  That distributors, representatives, and sales persons are not authorized to develop or distribute any materials about DriTherm without obtaining prior approval from DTI.

4.  IT IS FURTHER ORDERED THAT DTI shall file with this Court and serve upon GILSULATE within forty-five (45) days after the issuance of this Injunction, an affidavit, sworn to under penalty of perjury, setting forth in detail the manner and form in which DTI has complied with this Injunction.

5.  The Court shall retain jurisdiction to enforce the terms of this Order.

The Clerk shall close this action.

IT IS SO ORDERED.

DATED: 5/29/2014

RONALD S.W. LEW
_____
HON. RONALD S.W. LEW
Senior U.S. District Judge



## Home | About Us | Products | Contact Us

## Our Products

Pick Your product.... ▾

**The Product Sheets Are In Adobe Acrobat**



**Free software for viewing and printing Adobe PDF files**

Adobe® Acrobat® Reader□ is free, and freely distributable, software that lets you view and print Adobe Portable Document Format (PDF) files on all major computer platforms, as well as fill in and submit PDF forms online.

---

**Pipe Insulation, Inserts And Mitered 90's, 45's And Tees**
Armaflex APT
Armaflex SST
Calcium Silicate
Fiberglass
Foamglass
Mineral Wool
Styrene
Urethane

**Accessories**
Adhesives
Aremco Adhesives/Coatings (Ceramic To 3500F Deg.)
CP-11 Vicryl Mastic
30-80 Vapor-Safe Coating
Glass Fabric
Respirators & Dust Masks
Sealants (Standard & High Temp.)
Tapes (ASJ, FSK, MBI, Duct, Foil, Stainless Steel, Copper, Lead)
Tools (Hand & Sheet Metal Equipment)

**Textiles**
Gloves
Mitts
Coats
Pants
Aprons
Boots
Leggins
Curtains Fire Entry Suits

**Insulating Pipe Supports**
Ameri-Shields
Armafix Insulation Pipe Hanger

**Fasteners**
Bands & Seals
Gripnails
Panduit Straps
Lacing Anchors & Washers
Refractory Anchors (304,316,330S,601Inconel)
Self Tapping Screws
Staples & Staple Guns
Stick Clips & Washers
Weld Pins & Washers
Wire

**Structural Board Insulations**
Cement Board
Marinite C (Conveyor Of Molten Metals)
Marinite I (Industrial)
Marinite M (Marine)
Marinite P (Platen Press)
Mineret (Structural)
Transite HT
Cs-85 Platen Press

**Rigid & Semi-Rigid Insulations**
Calcium Silicate Block
Ceramic Fiber Board
Fiberglass Board
Foamglas Block

**Jacketing & Fittings, 90's 45's, & Tees**
Aluminum Jacket
Aluminum Elbow
Stainless Steel
PVC

**Heating, Ventilating & Air Conditioning**
Adhesives
Cable Ties
Duct Board
Duct Liner
Duct Wraps (Plain & Faced)
Ez Turn Vane & Rail
2" & 4" Hollow Vane & Rail
4" Acoustivane
Hand Tools
Panduit Straps
Sealants
Sheet Metal Equipment
Staples & Staple Guns
Tapes (Fsk, Smacna, Threm-Lok & Others)
Tools

**Pads & Pad Supplies**
Aluminum Coated Cloth
Ceramic Fiber Blanket
Fiberglass High Density 1000' Mat
Fiberglass Cloth
Fiberglass Tape
Lacing Anchors & Washers
Fiberglass Lagging

---

Kiln Suits
Proximity Suits

**Acoustical**
Barriers
Absorbers
Decoupler
Convoluted Foam
Pyramid Foam
Mass Loaded Vinyl
Fiberglass Absorber
Sound Attenuaton Board

**Re ractories**
Anchors (Stainless Steel, Inconel, Ceramic)
Dense Castable
Insulating Castable
Insulating Cement
Ceramic Fiber Blanket
Ceramic Fiber Board
Ceramic Fiber Bulk
Ceramic Fiber Rope
Ceramic Fiber A-Blok Modules
Fiberglass Rope (Braided & Twisted)
Fiberglass Tape (Woven, Braided & Knit)
Fiberglass Tape w/ Pressure Sensitive Adhesive
3000 Degree Dense Fire Brick
Gunning Mixes
2300 Degree Insulating Fire Brick
2600 Degree Insulating Fire Brick
Min-K Microporous
Excelfrax Microporous
BTU Block
Mortar
Blu-Ram Plastic
Emerald-Ram Plastic
85-Ram HS Plastic
 0-Ram HS Plastic
Ramming Mixes
Rigidizer
Stainless Steel   eedles

Mineral Wool Board
Styrene Sheet

**Flexi le Insulations**
Armaflex Sheet & Roll
Tubing & Tape
Ceramic Fiber Blanket
Ceramic Fiber Rope
Fiberglass Blanket (Faced & Plain)
Fiberglass Blanket (High Temp.)
Fiberglass Rope (Twisted & Braided)
Fiberglass Tape (Woven, Braided, & Knit)
Gasketing
Silicone
Urethane

**nderground Insulation**
Insul-Pipe (Pre-Insulated Pipe)
Dritherm Direct Burial

Canvas Lagging
Pads, Custom Fabricated
Silicone Coated Cloth
Stainless & Inconel Mesh
Stainless Steel Wire

**oose & Molda le Insulations**
Insulating Cement
Ceramic Fiber Bulk
Urethane Foam (1-Component)
Urethane Foam 2-Component Kits
Urethane 2-Component Pourable

**Cruci les-Tu es & Parts**
Alumina
Clay Graphite
Starbide Silicon Carbide
Excel Silicon Carbide
Fused Silica
Macor, Valcor
 irconia
Crucible Care

**rease uct & Plenum Insulation**
Fyrewrap 2.0 (ICC)
Fyrewrap E  1.5
0.5 Plenum Wrap



**All American Suppl**
301 Eubank SE
Albuquerque,  M 8  123

Case 2:13-cv-01012-RSWL-JPR   Document 88   Filed 09/08/15   Page 125 of 146   Page ID #:2863

Phone 505-2   - 655 - Fax 505-2 2-24  5
Email:Buddy   allamericansupply.net

All Contents Copyright ©2004 All American Supply

# DRITHERM® SPECIFICATION DATA SHEET

## 1. PRODUCT NAME

**DriTherm®**
Underground Pipe Insulation/Corrosion Protection

## 2. MANUFACTURER

DriTherm Incorporated
375 Route 10 – Suite 100
Whippany, NJ 07981-2104

Phone: (800) 343-4188
Phone: (973) 428-0478
Fax:     (973) 428-3391

E-mail: info@dritherm.com
URL:     www.dritherm.com





## 3. PRODUCT DESCRIPTION

**Basic Use:** DriTherm is used to insulate/corrosion protect underground piping/tanks/structures. It is poured around underground pipes to isolate these from moist/wet soils while providing highly efficient thermal insulation. The DriTherm formula has been used successfully for District Heating/Cooling applications including: steam, condensate return, hot & chilled water, oil and chemicals, compressed air, etc. It is used for new construction projects and is ideally suited for repairing existing systems that have experienced increased energy loss/corroded piping.

**Composition and Materials:** DriTherm is manufactured using 100% Calcium Carbonate particles which have been chemically modified to completely repel water / moisture. Each particle contains a cohesive surface which allows for a complete and enduring bond once installed and backfilled. All DriTherm particles are less than 5 micron in size.

**Product History:** DriTherm is a uniquely formulated product/system that has been continuously manufactured using the same specification since 1967 without change. A long documented track record of customer satisfaction exists with the DriTherm product. Over 4.5 million cubic feet (equivalent to over 300 miles of piping) of DriTherm formula product have been installed almost exclusively in North America with installations in Caribbean countries, South America, Europe, North Africa, and Japan as well, with excellent results reported.

**Limitations:** DriTherm can only be used around underground pipes, tanks, and structures. It is not intended for use on above ground applications. It is recommended for application temperatures between −275°F and +480°F (higher temperatures possible – consult mfgr.) and should not be used where moving or permanent water will be in direct contact with it unless sub-drainage is installed.

## 4. PHYSICAL PROPERTIES

- Thermal Conductivity: (ASTM C 177)
  K=0.58 btu/hr/ft² °F/in (100°F) and K=0.68 at 300°F
- Temperature Range: ⁻273°F to 480°F (250°C)
- Bulk Density: 60 – 62 lbs. per cubic feet (CF) installed
- Load Bearing: up to 12,000 lbs. per square feet
- Electrical Resistivity: R=10¹⁴ OHMS-CM
- Dielectric Constant: 2.7
- Friction Coefficient: 0.35 ± 0.04
- Water/Moisture Resistance: Withstands 10 ft. hydrostatic head of water for minimum of 14 days with moisture gain less than 0.02%
- Completely Non-Toxic – User Friendly
- Environmentally Safe

**Product Features:** One product insulates both hot and cold pipes. A free flowing, self-compacting material - pour from bag/sack and backfill. Completely inert - will not affect piping materials.

Each DriTherm particle is certified 100% Hydrophobic. DriTherm contains no fillers or Perlite – each bag/sack contains only 100% waterproof insulation.

No costly Cathodic or additional protection required to prevent pipe corrosion. When installed, individual particles form closed cell bonds with each other effectively preventing air, water, moisture penetration to piping system. No long term degradation from normal soil constituents.

**Federal Approval:** DriTherm has been approved for new construction on military bases and federal institutions by the following user agencies:
- Corps of Engineers
- Naval Facilities Engineering
- Department of the Air Force
- Veterans Administration

## 5. INSTALLATION

### Preparation:
- Excavate trench to minimum dimensions.
- Install pipe anchors, guides, and supports as required.
- Install piping and test for leaks
- Remove any debris from trench base

### Forming:
- Prepare drywall sideforms (if necessary) to specified vertical height.
- Install and secure forms rigidly to specified horizontal width.

### Product Installation:
- Apply Bitumastic and mineral wool where required.
- Pour DriTherm to required dimensions.
- Cover DriTherm with 4-6 mil Polyfilm.
- Place empty bags / sacks over DriTherm.

### Backfilling:
- Manually / gently install first 4 – 6" of clean backfill.
- Mechanically complete backfilling to project specs.

## 6. AVAILABILITY AND COST

Product Availability: Available from the following factory manufacturing locations:

| | |
|---|---|
| Lucerne Valley, CA 92356 | Fort Dodge, IA 50501 |
| Marblehill, GA 30145 | Adams, MA 01220 |
| Quincy, IL 62301 | Marble Falls, TX 78654 |

DriTherm is packaged in forty-five 50-lb. bags per pallet (37.5 CF) and shipped in full pallet lots only. It is also packaged in 40 CF Super Sacks which have a bottom discharge chute for quick dispensing. Product stock is maintained at all factory and distributor locations. Shipments are usually made within 24 hrs.

Costs: DriTherm is sold by the cubic feet (CF) and economically priced. Call (800) 343-4188 for current pricing.

## 7. WARRANTY

DriTherm, Inc. warrants for a period of (1) year after the date of delivery that the products sold by DriTherm, Inc. will be of like grade and quality to and in accordance with DriTherm, Inc.'s published data sheet for such products. Refer to engineering manual / technical brochure for warranty limitations and owner responsibility.



### DRITHERM ENVELOPE DIMENSIONS IN INCHES

| Nom. Pipe Dia. | -100°F to 100°F | | | 101°F to 230°F | | | 231°F to 305°F | | | 306°F to 400°F | | | 401°F to 480°F | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | X | Y | Z | X | Y | Z | X | Y | Z | X | Y | Z | X | Y | Z |
| 1 | 3 | 2 | 4 | 3 | 2 | 4 | 3 | 2 | 4 | 3 | 2 | 4 | 4 | 2 | 5 |
| 2 | 3 | 2 | 4 | 3 | 2 | 4 | 3 | 2 | 4 | 4 | 2 | 5 | 4 | 2 | 5 |
| 3 | 3 | 2 | 5 | 3 | 2 | 5 | 4 | 2 | 5 | 4 | 2 | 5 | 4 | 2 | 5 |
| 4 | 4 | 2 | 5 | 4 | 2 | 5 | 4 | 2 | 5 | 5 | 2 | 6 | 5 | 2 | 6 |
| 5 | 4 | 3 | 5 | 4 | 3 | 5 | 4 | 3 | 6 | 5 | 3 | 6 | 5 | 3 | 7 |
| 6 | 4 | 3 | 5 | 4 | 3 | 5 | 4 | 3 | 6 | 5 | 3 | 6 | 6 | 3 | 7 |
| 8 | 4 | 3 | 5 | 5 | 3 | 7 | 5 | 3 | 7 | 6 | 3 | 8 | 6 | 4 | 8 |
| 10 | 5 | 3 | 7 | 5 | 3 | 7 | 6 | 3 | 7 | 6 | 3 | 8 | 6 | 4 | 8 |
| 12 | 4 | 3 | 6 | 6 | 4 | 8 | 6 | 4 | 8 | 7 | 4 | 9 | 7 | 4 | 10 |
| 14 | 5 | 4 | 6 | 6 | 4 | 8 | 7 | 4 | 8 | 7 | 4 | 9 | 7 | 4 | 10 |
| 16 | 5 | 4 | 6 | 6 | 4 | 8 | 7 | 4 | 9 | 8 | 4 | 10 | 8 | 5 | 10 |
| 18 | 5 | 4 | 6 | 7 | 4 | 9 | 7 | 4 | 9 | 8 | 4 | 10 | 8 | 5 | 10 |
| 20 | 5 | 4 | 7 | 7 | 4 | 9 | 8 | 4 | 10 | 9 | 4 | 10 | 9 | 5 | 10 |
| 24 | 5 | 4 | 7 | 7 | 4 | 9 | 8 | 4 | 10 | 10 | 4 | 12 | 10 | 5 | 12 |

## 8. MAINTENANCE

None required.

## 9. TECHNICAL SERVICES

Complete engineering services are available including: system layout, component design (CAD drawings), volume calculations, computerized heat load calculations, and start up training of installation crew. No charge (ordinarily) for technical assistance to specifying engineers / customers.

### Technical Sales Agents:
Over 20 representatives service all of North America.
Call (800) 343-4188 for nearest agent.

## 10. AVAILABLE LITERATURE

- Product Brochure
- Engineering Manual
- Specifications from website / CD
- Cad drawings from website / CD
- Reference History Data

© 2002 DriTherm Incorporated

**DRITHERM® SPECIFICATION DATA SHEET**

EXHIBIT "2"

**Samuel R.W. Price**

| | |
|---|---|
| **From:** | Samuel R.W. Price |
| **Sent:** | Thursday, July 03, 2014 12:29 PM |
| **To:** | Hildebrand, James C. (James.Hildebrand@leclairryan.com) |
| **Cc:** | David Poole (dpoole@pooleshaffery.com) |
| **Subject:** | Gilsulate v. DriTherm - Injunction issues |

Jim,

We have been very appreciative of your assistance in addressing and resolving issues regarding the injunction and wanted to touch base with you about a few of the DriTherm distributors.

We have no doubt that your office has advised DriTherm of all steps required to comply with the injunction, including the submission of notices each of its distributors.  Unfortunately, it does not appear that all of the distributors are taking the notice seriously.  Even though the injunction requires the distributors, as a condition of selling DriTherm, to remove any prior representations about DriTherm or Gilsulate from their websites (par. 3.e.), several have failed to do so.  Moreover, they are also continuing to publish information that was specifically addressed in the injunction or is otherwise unsupported.  To that end, our office sent out cease and desist letters pointing out the information that had been found to be factually inaccurate or unsupported by evidence and which should be removed.

At the present time, we understand that at least four distributors (although there may be more) are still publishing prior representations about DriTherm, including inaccurate or factually unsupported information: All American Supply; Engineered Fluid Systems; Glasscell Isofab; and Metro Supply.  These distributors have had nearly four weeks to comply since DriTherm's notice would have gone out in early June.  However, for one reason or another, they appear to be disregarding the notices from both DriTherm and Gilsulate and are continuing to publish information in violation of the injunction.

Given the failure of these distributors to comply with the requirements for selling DriTherm, we wanted to confirm that DriTherm is not, and will not be, selling any material to or through any of them.

We understand that the affidavit regarding compliance with the injunction next week, so we wanted to make you aware of this situation ahead of that.

Finally, Gilsulate truly has no desire to pursue any further litigation and was hopeful that these issues would have been fully resolved.  However, to the extent that certain distributors are continuing to publish false information and erroneous specifications, Gilsulate may be left with no option but to bring actions against them for false advertising.  Given that Mr. Sandman has a personal relationship with DriTherm's distributors, he may want to relay this information to them.  Hopefully any further litigation can be avoided.

We look forward to hearing from you.

Best regards,

**Samuel R.W. Price**
Counsel
sprice@pooleshaffery.com

# POOLE■SHAFFERY
### A T T O R N E Y S   A T   L A W

LOS ANGELES ■ SAN FRANCISCO ■ SANTA CLARITA ■ WALNUT CREEK ■ ORANGE COUNTY

25350 Magic Mountain Parkway ■ 2nd Floor ■ Santa Clarita ■ CA 91355
Phone 661.290.2991 ■ Fax 661.290.3338 ■ WWW.POOLESHAFFERY.COM

CONFIDENTIALITY NOTICE - This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain information that is confidential or legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving in any manner. Thank you.

EXHIBIT "3"

# POOLE █ SHAFFERY

ATTORNEYS AT LAW

Writer's email: sprice@pooleshaffery.com

July 25, 2014

**VIA EMAIL ONLY**
James.hildebrand@leclairryan.com

James C. Hildebrand, Esq.
LECLAIR RYAN LLP
725 S. Figueroa Street, Suite 350
Los Angeles, CA 90017

>       Re:     **Gilsulate International, Inc. v. Dritherm International, Inc., etc., _et al._**
>               USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR

Dear Jim:

We are writing in connection with a few outstanding issues of pertaining to DTI's compliance with the Injunction that we wanted to address with you.

**Distributor Non-Compliance**

As we previously explained, there are still several distributors that are refusing to cooperate or comply with demands to remove improper information, specifically All-American Supply, GlassCell Isofab, Engineered Fluid Systems, and Metro Supply Company. As to the first two, there has been no change to their websites since the Injunction was issued.

As for Engineered Fluid Systems, it continues to include prohibited claims about DriTherm on the main product page. While it appears that the company may have removed hyperlinks to some of the other offending pages, it has not actually removed the pages themselves from its website. Moreover, it appears that the company has actually added or reposted several other documents that contain prohibited information under the Injunction to its website, including the July 16, 2008 Product Overview, a 2005 Data Sheet, a 2006 Brochure, and a sample specification.

Finally, Metro Supply Company did make a few changes to its website to remove some of the specifically prohibited information, but it continues to advertise claims that are unsupported by testing, including the claim that DriTherm's "excellent load bearing capabilities make it suitable for applications under roads or overhead structures." We note that the Injunction (section 4.d.) requires the distributors to "immediately remove any information about DriTherm or Gilsulate products from [their] websites, and replace it only with newly prepared information to be provided by DTI[.]"

The following is a list of the pages that contain the prohibited information:

GlassCell Isofab Inc.
Spec Data Sheet: http://www.glasscellisofab.com/sheets/underground/data_sheets/DRITHERM.pdf

James C. Hildebrand
Re:  Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.*
July 25, 2014
Page 2

### All American Supply

Spec Data Sheet: http://www.allamericansupply.net/pdf/dritherm.pdf

### Metro Supply Company

http://metrosupplycollc.com/dri-therm-underground-insulation.html

### Engineered Fluid Systems

General information:
http://www.engineeredfluidsystems.com/dri-therm-insulation
Manual:
http://www.engineeredfluidsystems.com/PDF/DriTherm/DriTherm%20International%20Engineering%20Manual.pdf
Spec Data Sheet:
http://www.engineeredfluidsystems.com/PDF/DriTherm/DriTherm%20Specification%20Sheet.pdf
Overview Presentation (slide show):
http://www.engineeredfluidsystems.com/PDF/DriTherm/DriTherm%20Overview%20Presentation.pdf
Brochure (2006):
http://www.engineeredfluidsystems.com/PDF/DriTherm/DriTherm%20Brochure.pdf
Sample Specification:
http://www.engineeredfluidsystems.com/PDF/DriTherm/DriTherm%20Sample%20Spec%20Sheet.doc

Because these materials continue to appear online, several online document repository sites (such as docstoc.com) have added the prohibited materials to their library, thereby increasing the number of websites that are publishing this false information.

Based on the continued failure (or refusal) of these entities to comply with the requirements set forth in the Injunction, we must request the following from DTI:

1. Written confirmation that DTI is not, and will no longer be, selling DriTherm to or through any of these entities; and

2. Complete copies of the notices that were sent to each of these entities, along with the proof of delivery for each.

**DriTherm Testing**

James C. Hildebrand
Re:  Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.*
July 25, 2014
Page 3

James C. Hildebrand
Re:  <u>Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.*</u>
July 25, 2014
Page 4

James C. Hildebrand
Re:  Gilsulate International, Inc. v. Dritherm International, Inc., etc., *et al.*
July 25, 2014
Page 5

      We have been, and continue to be, appreciative of your assistance in addressing and resolving matters pertaining to the Injunction.  Obviously, the issues identified herein are extremely serious and go to the heart of the Injunction issued by the Court.  We look forward to a prompt response from Mr. Sandman.

                 Best regards,

                 Samuel R.W. Price

Enclosures (4):
        July 17, 2014, Correspondence from DTI to Gilsulate (7 pages)
        ASTM D2435/D2435M – 11 Standard (15 pages)
        April 30, 2014 Geotechnical Test Report (6 pages)
        Comparison of July 16 and April 30 test reports (4 pages)

cc:     Gilsulate International, Inc. – Via Email Only
       David S. Poole – Via Email Only

EXHIBIT "4"

LAW OFFICE

# NOTARO, MICHALOS & ZACCARIA P.C.

ANGELO NOTARO
PETER C. MICHALOS
JOHN ZACCARIA
NADER A. ABADIR
BRADLEY S. CORSELLO
AARON MILLER

PATENTS
TRADEMARKS
COPYRIGHTS

OF COUNSEL
FRANK J. COLUCCI
MILTON WOLSON

May 27, 2015

***FOR SETTLEMENT PURPOSES ONLY
PURSUANT TO FRE 408***

**Via Email Only**

Samuel R.W. Price, Esq.
Poole & Shaffery, LLP
400 South Hope Street
Suite 1100
Los Angeles, CA 90071

Re:   Gilsulate International, Inc.
                    v.
        Dritherm International, Inc., et, al.
        USDC, C.D. Cal. Case No. 2:13-cv-01012-RSWL-JPR
        Our Ref. J1283-001

Dear Sam:

        We are writing in response to your letter dated April 30, 2015, and in furtherance to our May 13 telephone call and your May 18 email.

        Dritherm International, Inc. and Jared Sandman (collectively "DTI") have fully complied with the Stipulated Injunction, and have gone above and beyond its requirements in an effort to end this dispute.  DTI stopped making prohibited representations, had the product tested repeatedly by certified laboratories, and notified certain third-parties of the injunction, all as required by the Stipulated Injunction.  Evidence of compliance has been provided to Gilsulate including delivery notices, test reports, and declarations of third-parties.

        DTI provided notice of the Stipulated Injunction to certain, named independent third-parties, in the form required by Section 3 of the Stipulated Injunction.  We provided copies of the notification letters with our letter and email to you of August 11, 2014.  Third-parties who may purchase DriTherm are all independent of DTI, they are not within DTI's control in any way, and DTI did not agree to police their behavior, exercise control over them, or to attempt to do so.  The Stipulated Injunction was based on the agreement and consent

EXHIBIT 45 Page 1 of 3

Samuel R.W. Price, Esq.
May 27, 2015
Page 2

of DTI, and DTI did not agree or consent to do anything more with respect to third-party customers than provide notification as provided Section 3.

Nevertheless, in an effort to finally resolve this dispute, DTI has provided a second notice by Federal Express to the third parties named in the settlement agreement, and to Iowa-Illinois Taylor Insulation and Allied Insulation Supply Company, identified in your April 30 letter but not identified in the settlement agreement. Copies of the second notification letter and the proof of delivery from Federal Express are enclosed as Exhibit A.

DTI has had DriTherm material tested repeatedly at its expense after the Stipulated Injunction in an attempt to amicably resolve Gilsulate's issues regarding the testing procedure. To be clear, however, it has always been DTI's position that the Dritherm material was tested in accordance with the Stipulated Injunction. Geotesting Express ("GTX"), an accredited independent laboratory, performed three rounds of testing of DriTherm under the ASTM D2435 standard, in June 2014, in February 2015, and in March 2015. Precision Measurements and Instruments Corp. ("PMIC"), an accredited independent laboratory, performed thermal conductivity testing of DriTherm under the ASTM C177 standard.

With respect to DriTherm quotations, the information in your April 30 letter is obsolete. The most recent DriTherm quotation cited in your April 30 letter is dated December 16, 2014, over five months ago, and before the retesting of DriTherm in February 2015, the results of which have been provided to Gilsulate and counsel. DTI's current practice with respect to the calculation of volume in DriTherm quotes is that volume is calculated using the reported density under a load of 400 psf, individually for each DriTherm source, according to the GTX reports of tests conducted on February 16, 2015 (for the Quincy facility) and February 27, 2015 (for the other four locations). While DTI disagrees that it is prohibited from quoting DriTherm based on a no-load density of 65 psf after the first round of testing by GTX, there surely is no basis for seeking a contempt order based on practices that have changed.

Further, as you know, Gilsulate first raised its issue relating to the representations of no-load densities in its letter of September 5, 2014 and notice of violation of September 30, 2014. DTI responded to those letters on September 15, 2014 and October 14, 2014. Gilsulate has unreasonably delayed in bringing a motion concerning DriTherm quotations based on no-load densities to the prejudice of DTI, and any motion for contempt on that basis would be mitigated if not barred by laches. *Derek & Constance Lee Corp. v. Kim Seng Co.*, 467 Fed. Appx. 696, 698 (9th Cir. 2012).

With respect to the sampling of material at the Quincy facility used for the February 16, 2015 retesting by GTX, we enclose a supplemental declaration of Jeff Waack, Quality Control Manager, J.M. Huber Corp. (Exhibit B). The supplemental Waack declaration provides further information, not required by the Stipulated Injunction, concerning how

EXHIBIT 45 Page 2 of 3

Samuel R.W. Price, Esq.
May 27, 2015
Page 3

DriTherm is packaged at the Quincy facility and how the sample bag was selected for testing by GTX. The Waack declarations establish that the sample bag was randomly taken from a production run that had been packaged for sale. The practice at the Quincy location is to stencil the lot number on some, but not all, of the bags on a pallet. The bag of DriTherm removed from the pallet by Mr. Waack did not have a lot number stenciled on it. When Mr. Waack signed and dated the bag, he also wrote the lot number on the bag. There is no doubt that the sample was randomly selected from a production run of DriTherm that was packaged for sale, in compliance with Section 1 of the Stipulated Injunction.

As we stated during our May 13 telephone call and in prior communications, Gilsulate is misusing the Stipulated Injunction, by making continuous baseless complaints.

Further, DTI has serious concerns that Gilsulate is improperly brandishing the Stipulated Injunction to customers and to the trade, and is interfering with and competing unfairly with DriTherm International by, *inter alia*, by making false and misleading statements relating to DriTherm's properties and test results.

In the event Gilsulate files a motion for contempt, DTI reserves all rights and will seek appropriate relief, including an award of attorneys' fees and costs, and an adjustment and/or dissolution of the Stipulated Injunction.

Please call us if you wish to discuss this matter further.

Very truly yours,

John Zaccaria

Brad Corsello

JZ/bc
Enc.

EXHIBIT 45 Page 3 of 3

EXHIBIT "5"



# POOLE SHAFFERY
ATTORNEYS AT LAW



## David S. Poole

Partner
dpoole@pooleshaffery.com

400 S. Hope Street
Suite 1100
Los Angeles, CA 90071

## Overview

David Poole is a partner in the law firm of Poole & Shaffery, LLP. He specializes in civil litigation with a focus in the areas of complex business disputes, labor and employment, real property and environmental law. Mr. Poole received his B.A. in 1977 from U.C.L.A. and is a 1980 graduate of the University of Southern California, Gould School of Law. He was a Deputy Attorney General with the State of California, Department of Justice, in-house counsel with a large corporation and partner in a large national law firm before starting Poole & Shaffery, LLP in 1998.

Mr. Poole has extensive jury trial experience in both state and federal courts. He has taken cases to trial in California in Superior courts in the counties of Los Angeles, Orange, Riverside, San Bernardino, Kern, Santa Barbara, Ventura, Alameda, San Francisco, San Luis Obispo, San Joaquin, Tulare, Fresno and San Diego. He has also taken federal cases to trial in the United States District Courts for the Central, Eastern, Northern and Southern Districts of California and the United States District Court for Maryland. He has argued appellate matters before the California Courts of Appeal, the Supreme Court of the State of California and the Ninth Circuit Court of Appeals.

His representations have included defending and prosecuting claims on behalf of both domestic and international business entities and individuals in a variety of business, commercial, environmental, product liability, intellectual property, patent, trade secret, employment and real property matters. He has tried cases involving disputes in various industries including automotive, advertising, computer, entertainment, commercial real estate, industrial manufacturing, public utilities and military contracting.

He has written many articles on law related topics and is a frequent speaker and panelist at legal seminars and symposiums. He has served as a Judge Pro Tem in the Los Angeles Superior Court. He is a member of the Los Angeles County Bar Association, the Santa Clarita Valley Bar Association and the Business Law and Environmental Sections of the State Bar of California. He is active in the community and currently serves on boards for several non-profit entities.

Although a litigator and trial attorney, he will, where appropriate and possible, undertake significant efforts to resolve disputes at the outset to minimize the expenditure of attorney's fees. He is often involved in mediation and other forms of alternative dispute resolution. However, when trial is the best option or is necessitated, he is experienced and successful. As one trial judge stated of him on the record following a lengthy trial: "*The advocacy in this case was among the best I have ever seen in my career as a judge. . . . It was nothing short of brilliant.*" Los Angeles Superior Court, Official Transcript of Proceedings Case No. PC024246.

Mr. Poole has an AV rating from Martindale Hubbell and has been selected as a "Super Lawyer" by Key Professional Media, Inc. as featured in the Los Angeles Magazine in 2007, 2009, 2010, 2011, 2012, 2013, 2014 and 2015.

## Education

University of Southern California, Gould School of Law, Juris Doctor
University of California, Los Angeles, Bachelor of Arts, cum laude

**Bar and Court Admissions**

State Bar of California
United States District Courts
(Central, Southern, Eastern and Northern Districts)
United States Court of Claims
United States Supreme Court

---

**Recent Articles:**

"*A Fish Out of Water – The Corporate Executive as a Testifying Witness*", <u>Los Angeles County Bar Corporate Counsel Magazine</u> with Kathy Kellerman, Ph.D, Trial Behavior Consulting.

---

EXHIBIT "6"

# POOLE SHAFFERY
### ATTORNEYS AT LAW

Practices    **Attorneys**    Results    Contact Us    Home    **Phone: 888.595.5963**



**Samuel R.W. Price**
Counsel
sprice@pooleshaffery.com

**Santa Clarita Office**
25350 Magic Mountain Parkway
Second Floor
Santa Clarita, CA 91355
(661) 290-2991

**Los Angeles Office**
400 S. Hope Street
Suite 1100
Los Angeles, CA 90071
(213) 439-5390

[ VCard ]   [ Print ]

**Samuel R.W. Price**

**Education**

Boston College School of Law, Juris Doctor
Boston College, Bachelor of Arts in Film
Studies, *cum laude*

**Bar and Court Admissions**

State Bar of California
Commonwealth of Massachusetts
United States District Court (Central and
Southern Districts of California)

**Recent Articles by Samuel R.W. Price**

LITIGANTS BARRED FROM HAVING THEIR
CAKE AND EATING IT TOO

READY TO REMODEL? START WITH A
COURSE IN CAL-OSHA COMPLIANCE

The Holiday Party Is Over But Is an Employer's
Potential Liability?

A NEW FORM OF LIABILITY FOR
ELECTRONIC COMMUNICATIONS?

CALIFORNIA SUPREME COURT
ENCOURAGES RECREATIONAL 'BUMPING'
ON NEW YEAR'S EVE

LITIGANTS BARRED FROM HAVING THEIR
CAKE AND EATING IT TOO

THE NEW DODGER BLUE? THE TEAM'S
"BLUE"PRINT FOR MAJOR LEAGUE OWNERS

ARE CALIFORNIA EMPLOYERS ROUNDING
THEIR WAY INTO TROUBLE? WE'LL KNOW

## Samuel R.W. Price

Samuel R.W. Price is Counsel with Poole & Shaffery, LLP, where he focuses on civil litigation, representing both plaintiffs and defendants in complex business disputes and commercial litigation; intellectual property litigation; employment litigation; bankruptcy-related litigation; and construction, construction-defect, and construction defect-related product liability matters.

Mr. Price has represented clients in both state and federal courts throughout the State of California, in mediations and arbitrations, and in administrative hearings before the Contractors State License Board and the California Unemployment Insurance Appeals Board, among others.

Mr. Price has been repeatedly recognized by *Super Lawyers® Magazine* as a *Rising Star* in Business Litigation, an honor received by less than 2.5% of attorneys in the state.

In addition to civil litigation, Mr. Price also has extensive experience in bankruptcy, having represented both business entities and individuals in proceedings under Chapters 7, 11 and 13. He continues to represent both debtors and creditors in litigation arising out of bankruptcy proceedings.

Prior to practicing law, Mr. Price obtained considerable experience in the construction industry while providing project management and skilled trade services for a general contractor. He also spent several years as the marketing coordinator for an award-winning multimedia production company and was a freelance audio/visual technician for many nationally- and internationally-televised sports broadcasts.

Mr. Price maintains memberships in the Building Industry Association of Southern California, as well as the American and Los Angeles County Bar Associations. He is also a member of the Santa Clarita Valley Bar Association, for which he has served for several years on the Executive Board.

Attorneys » Samuel R.W. Price

**Practice Areas**

Bankruptcy

Business & Commercial Litigation

Construction Law

Employment law

General Counsel Services

Litigation

Product Liability

Real Estate Transactions & Litigation

## Representative Matters

Obtained judgment for a permanent injunction from the United States District Court for the Central District of California against seller of underground insulation material and its owner based on violations of the federal statute prohibiting false advertising (Lanham Act), arising from various marketplace misrepresentations regarding the product's technical specifications and performance properties.

Obtained dismissal of action against Fortune 500 company arising from alleged breach of contract for purchase of product components.

Successfully negotiated the dismissal of a plumbing contractor after extensive plumbing systems and pipes failed due to ongoing degradation and corrosion at a 1,084 unit residential complex.

Attained dismissal of federal action alleging alter ego liability and fraud against owner of international corporation that had defaulted on contractual obligation to vendor pursuant to motion arguing that all of defendant's alleged actions were strictly protected and could not form basis for complaint.

Member of team that negotiated a nominal settlement of claims against an exterior weather vapor barrier coating manufacturer in a $20M suit arising from allegations of defective construction of a large regional call center.

Defended large scale residential and multi-unit condominium complex developers against claims of defective construction, misrepresentations in the sale process, and fraud brought by

SOON ENOUGH

hundreds of tenants, homeowners and homeowners' associations.

Negotiated settlement of amounting to less than one-half of one percent of a $583K preferential transfer claim against a non-profit organization in a complex Chapter 11 proceeding.

Home | Site Map | Terms of Use | Privacy Policy | Website by Scorpion Design

© 2015 Poole & Shaffery, LLP All Rights Reserved